UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------X
                             :
UNITED STATES OF AMERICA,     :
                             :   24-MJ-481 (CLP)
         v.                   :
                             :   August 1, 2024
JACOB ISRAEL WALDEN,          :
                             :   Brooklyn, New York
              Defendant.      :
                             :
-----------------------------X


TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT
BEFORE THE HONORABLE SANKET J. BULSARA
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:          BREON PEACE, ESQ.
                             U.S. ATTORNEY
                             BY: LEONID SANDLAR, ESQ.
                             ASSISTANT U.S. ATTORNEY
                             271 Cadman Plaza East
                             Brooklyn, New York  11201


For the Defendant:           SAUL BIENENFELD, ESQ.
                             Bienenfeld Law
                             680 Central Ave, Suite 108
                             Cedarhurst, NY 11516




Court Transcriber:           ARIA SERVICES, INC.
                             c/o Elizabeth Barron
                             274 Hovey Road
                             Milo, ME 04463
                             Aria@leinen.net



Proceedings recorded by electronic sound recording,
transcript produced by transcription service

1          THE CLERK:  Criminal cause for arraignment

2  on a complaint, 24-MJ-481, United States v. Jacob

3  Israel Walden.

4          Counsel, starting with the government,

5  please state your appearances for the record.

6          MR. SANDLAR:  Good afternoon, your Honor.

7  Leonid Sandlar for the United States.

8          THE COURT:  Good afternoon.

9          MR. BIENENFELD:  Good afternoon, Judge.

10  Saul Bienenfeld, 680 Central Avenue, Cedarhurst, New

11  York, for the defendant.

12          THE COURT:  Okay.  Good afternoon.

13          And good afternoon, Mr. Walden.  Mr. Walden,

14  the reason that you're here today is because the

15  government has filed some criminal charges against you

16  in a document that's called an complaint, okay?  I'm

17  going to tell you first what your rights are and then

18  talk to you about what happens next in your case, but

19  I'll ask you first what I ask everyone who comes to our

20  court for the first time.

21          You have no trouble speaking or

22  understanding English, correct?

23          THE DEFENDANT:  Correct.

24          THE COURT:  Okay.  Mr. Walden, as someone

25  who has been charged in a federal criminal case, you

1    have certain rights that stay with you throughout your

2    case.  The first such right is your right to remain

3    silent.  That means you don't have to make a statement

4    at any time.  You don't have to speak to law

5    enforcement.  If you've spoken in the past and made a

6    statement in the past, you don't have to make a

7    statement in the future.  But if you do make a

8    statement, that statement can be used against you.

9              Do you understand that, sir?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Okay, all right.  You also have

12   a right to counsel, which is a right to a lawyer.  You

13   have a right to have that lawyer represent you at every

14   stage of your case from the time you're charged until

15   however your case ends, including any trial or any

16   appeal.  If you couldn't afford a lawyer, the Court

17   would appoint one for you.  If you wish to represent

18   yourself, you have the right to do that as well.

19             Do you understand your right to a lawyer,

20   sir?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Okay.  Is Mr. Bienenfeld --

23             Have I mis-pronounced your name?

24             MR. BIENENFELD:  Bienenfeld.

25             THE COURT:  Bienenfeld -- your lawyer, sir?

1              THE DEFENDANT:  Yes.

2              THE COURT:  Okay.  Counsel, have you had an

3    opportunity to review the complaint with Mr. Walden?

4              MR. BIENENFELD:  Yes, we've reviewed the

5    complaint.  I read it to him.

6              THE COURT:  Okay.  Mr. Walden, because the

7    government charged you in a document that's a

8    complaint, okay, which is basically where a law

9    enforcement officer swears out allegations against you,

10   you have the right to what's known as a preliminary or

11   probable cause hearing, okay?  That's a hearing where

12   the government has to put on evidence for the Court to

13   conclude that there's probable cause or basically that

14   there's a certain probability to conclude that you

15   committed the crimes they want to charge you with,

16   okay?

17              Now, in this courthouse, there may not be --

18   even when there's someone who is charged in a

19   complaint, there may not be a hearing, and that can be

20   for one of two reasons.  One reason can be that if the

21   government goes to a grand jury and gets an indictment

22   against you, the indictment becomes the charging

23   instrument and the complaint goes away.  And under an

24   indictment, there's no hearing like the one I just

25   described.

1          The second reason that there may not be a

2    hearing is, someone who is charged in a complaint, they

3    can decide after talking with their lawyer that they

4    wish to waive their -- such a hearing.

5          Do you understand what I've explained, sir?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Counsel, does your client have a

8    position on a hearing at this point?

9          MR. BIENENFELD:  Yes.  We're going to waive

10   the preliminary hearing.

11         THE COURT:  Okay.  The Court notes that Mr.

12   Walden is waiving his preliminary hearing.  Okay.

13         At this point, I'm going to remind the

14   government of its obligations under Brady v. Maryland

15   that pursuant to Federal Rule of Criminal Procedure 5f

16   and the cases that followed Brady, the government is

17   obligated to turn over to Mr. Walden any favorable

18   material information that relates to his guilt or to

19   his punishment, and it must do so with respect to such

20   information that's in its possession and do so as soon

21   as reasonably practicable.  I'll issue a written order

22   that more fully details these obligations and the

23   consequences for failure to comply but I just need the

24   government to confirm orally that it understands that

25   it has Brady obligations to Mr. Walden and will comply

1   with them.

2           MR. SANDLAR:  Yes, your Honor, we understand

3   our obligations and we plan to comply with them.

4           THE COURT:  Okay.  Anything else before I

5   proceed to bail from the government?

6           MR. SANDLAR:  Not from the government.

7           MR. BIENENFELD:  Nothing from the defense.

8           THE COURT:  Okay.  I understand that there's

9   an agreed-upon bail package with suretors, is that

10  correct?

11          MR. SANDLAR:  Correct, your Honor.

12          THE COURT:  Okay.  Counsel, because of the

13  nature of what your client has been charged with, he's

14  subject to what are colloquially known as the Adam

15  Walsh conditions that are specific to someone charged

16  with offenses like these.  My practice is in such a

17  case, because those conditions are rather detailed --

18  I'm going to give you the list of those conditions and

19  just have you review them with your client to make sure

20  she understands.  They're also on the last page of the

21  Pretrial Services report.  I'd also be asking the

22  suretors to read through them because they're going to

23  be suretors and these conditions matter to them.  So

24  why don't we begin with just having your client review

25  them.  If he's done that already, just let me know.

1          MR. BIENENFELD:  While you were in chambers,

2    I had an opportunity to go in the back and review them

3    with him page 5 of the report.

4          THE COURT:  Okay.

5          MR. BIENENFELD:  I do have some what I would

6    -- I have some tweak if it's possible to the

7    conditions.

8          THE COURT:  Okay.  Typically, with the Adam

9    Walsh conditions, it is difficult to do many tweaks,

10   but let me know what you are suggesting and let me hear

11   the government's view on it and Pretrial Services'.

12          MR. BIENENFELD:  First, we do not want an

13   ankle monitor or any other home detention locating

14   monitor.  He has an office that he has to travel to and

15   I would be making some motions later on that he does

16   have work outside in other states that he would have to

17   go to.  We also would like to add houses of worship,

18   synagogue, the ability for him to go and say prayers

19   three times a day as well as on Jewish holidays.

20          And then the condition, I believe it's 6,

21   that he can't be with his own children unless his wife

22   is there, she definitely needs some time alone where he

23   could watch the children and she just go out.  I would

24   like to just say that he is allowed to watch his own

25   children.  I understand that if it's someone else's

children, that a parent needs to be there.  But at
least his own children, to give his wife an opportunity
to be away from the house without the children or to
have to be in the house, and then he could just watch
the children without his spouse there, without the
mother of the children.  I'm limiting that to his own
children, obviously, Judge.

THE COURT:  Okay.  Can you just give me one
moment?  Okay, a couple of things.  Certainly there is
no problem with including religious -- and houses of
worship.  That's not an issue at all.

As for his own children, is there any
objection from the government?

MR. SANDLAR:  There is no objection from the
government.  The conduct, the criminal conduct pertains
to electronic communication with minors.  So far as
what's known to the government today, it does not
involve any conduct with minors, live minors if you
will, for lack of a better term.  So on that record
that's known to the government at this time, your
Honor, there's no objection.

THE COURT:  Okay.  Counsel, I struck the
part that says "including his own children" from number
6 and added the language, "This does not apply to his
own children," okay?

1        PRETRIAL SERVICES:  Your Honor?

2        THE COURT:  Yes.

3        PRETRIAL SERVICES:  (Ui) from Pretrial

4    Services.  Just two points with regard to the concerns

5    defense counsel with the home detention.

6        THE COURT:  I haven't gotten there yet.

7        PRETRIAL SERVICES:  Okay.  Your Honor, given

8    the nature of the charges, I understand that the

9    government is stating that it doesn't involve the

10   defendant's children.  But being that I believe all

11   five of the defendant's children are under the age of

12   18, we are still requesting that that condition be

13   added and that the children not be left alone with the

14   defendant and that they be -- that the defendant be

15   allowed to be around the children just with Ms. Walden

16   present.

17        THE COURT:  I understand and I appreciate

18   that that's a recommendation from Pretrial Services.

19   In light of the record here and the other substantial

20   conditions and the absence of prior criminal history,

21   I'm going to still -- I'm not going to apply condition

22   6 to his own children for now.  Obviously, if we learn

23   something else, the government or Pretrial Services can

24   come to the Court.

25        PRETRIAL SERVICES:  Your Honor, just to

1   clarify.  So the defendant still is unable to be around

2   children under the age of 18 but he can be around his

3   own children unsupervised.

4            THE COURT:  Correct.

5            PRETRIAL SERVICES:  Okay.

6            THE COURT:  Correct.  So I struck paragraph

7   6, the part that says "including his own children."

8   But paragraph 7 still applies, which means he couldn't

9   take his children to a playground because there would

10   be other children who would be there, so that's why

11   it's -- I think this basically means paragraph 6

12   strikes the language "including his own children" and I

13   added the sentence, "this does not include his own

14   children."

15            You were saying something?

16            MR. SANDLAR:  Just for the record, for

17   clarification, under 3142(c)(1)(B), which I understand

18   are the Adam Walsh conditions, they're triggered in

19   certain cases involving minor victims.  As I read it,

20   strictly speaking, mere possession of child

21   pornography, 2252(a)(4), is not one of the covered

22   offenses.  However, there's a big however which merits

23   inclusion, all of the conditions recommended by

24   Probation, which is the following:  As the complaint

25   alleges, there are actual victims in this case.  One of

1   them, just one of them is mentioned in --

2              THE COURT:  We're all over the place here

3   and I'm not sure what you're talking about right now in

4   the sense of, I'm dealing with the issues raised by

5   defendant's counsel, okay?  So don't bring up other

6   issues that are unrelated to that until I'm ready to do

7   so.  But the question -- why is that not covered, the

8   victim issue covered by paragraph 9?

9              MR. SANDLAR:  It is covered by paragraph 9.

10             THE COURT:  So then --

11             MR. SANDLAR:  As a legal basis, I wanted to

12   clarify with your Honor but I understood --

13             THE COURT:  But also, counsel is not

14   objecting to that condition.

15             MR. SANDLAR:  Correct.

16             THE COURT:  Okay, all right, so let's deal

17   with this in the order in which the issues were raised,

18   okay?

19             MR. SANDLAR:  Understood.

20             THE COURT:  All right.  Counsel, is there

21   any issue with the way I've crafted paragraph 6 at this

22   point?

23             MR. BIENENFELD:  No, and I appreciate that,

24   Judge.

25             THE COURT:  Okay.  Now, I am not going to

1  remove the location monitoring device because it's an

2  ankle monitor and frankly, in light of the fact that

3  your client is prohibited from going to certain places

4  and is subject to a travel restriction, that's the way

5  to enforce that.  So that I am -- the request to have

6  no ankle monitor and location monitoring is denied.  I

7  will of course add to paragraph 5 religious services

8  and observances.

9              MR. BIENENFELD:  And I note it says approved

10  and stationary employment.  I assume that he would have

11  to ask them to approve his office located in Woodmere,

12  I guess.  Is that your understanding, Judge?

13              THE COURT:  Yes.

14              MR. BIENENFELD:  Okay.  So it's just a

15  matter of getting the location approved.

16              THE COURT:  Exactly, and --

17              MR. BIENENFELD:  And then he could go to

18  work there.

19              THE COURT:  Exactly.  Frankly, it also means

20  that there's -- and the last clause of as approved is

21  if there are things that come up to your point that he

22  are not in this category, he can also get approved by

23  Pretrial Services, okay?

24              Now let's talk about the location

25  restriction that you were discussing.  I take it that

1    for now, there's no issue with the Southern District of
2    New York, New York City, and New Jersey.
3                 MR. BIENENFELD:  If we include New Jersey,
4    that would be very helpful.  Where is Rockland County?
5    Is that in the Southern District?
6                 THE COURT:  That is in the Southern District
7    of New York.
8                 MR. BIENENFELD:  Okay, then we're good
9    there, also.
10                 THE COURT:  Okay, all right.
11                 MR. BIENENFELD:  And I will be making a
12    request -- no, I won't, never mind, withdrawn.
13                 THE COURT:  Okay.  Anything else you want to
14    raise before I discuss this with your client?
15                 MR. BIENENFELD:  If there's any chance to
16    add Nebraska at this point, but I will talk to Pretrial
17    Services if there's isn't.  But that's where the most
18    -- the bulk of his business is and that's where the
19    nursing homes are.
20                 THE COURT:  Well, let me say the following:
21    I'm not going to approve Nebraska.  I will check the
22    box that says "as approved by Pretrial Services" so
23    that they know that if he's going to Nebraska, they
24    know when he is and that can be done.
25                 MR. BIENENFELD:  Thank you, Judge.

1           THE COURT:  So it gives you the carve-out to

2    seek that application as opposed to having to come to

3    court to do that.

4           MR. BIENENFELD:  Right.

5           THE COURT:  Okay, anything else in terms of

6    the -- I want to make sure -- did I tick all the ones

7    you wanted to raise?

8           MR. BIENENFELD:  I believe you did but just

9    give me one minute with my client.

10          THE COURT:  Yes.

11          (Mr. Bienenfeld is conferring with the

12   defendant.)

13          MR. BIENENFELD:  Judge?

14          THE COURT:  Yes.

15          MR. BIENENFELD:  I do want to add one more

16   thing that he would not need approval for, and that's

17   to go to twelve-step meetings, both -- let's just leave

18   it as twelve-step meetings because it's very helpful to

19   him at this point.

20          THE COURT:  So this is -- this is what I'm

21   actually going to do, which is if you look at the --

22   and Mr. Walden will have an opportunity to look at it,

23   as will you.  I'm going to strike item 5 in its

24   entirety but check the box on the bond form, which you

25   don't have in front of you, okay, which provides that

1    home detention includes religious service, substance

2    abuse, and mental health services.  That falls under

3    that rubric.

4            MR. BIENENFELD:  Okay.  We're not talking

5    about home detention where he can't leave the home.  He

6    can leave the home to go to his office if it's an

7    approved location by Pretrial Services.

8            THE COURT:  Let me explain -- home detention

9    is not home incarceration.

10           MR. BIENENFELD:  Right.

11           THE COURT:  So home detention permits -- he

12   is restricted to his residence, except for a large

13   category of items, court appearances, court

14   obligations, attorney visits, religious services,

15   medical appointments, employment, education, substance

16   abuse, and health services, and other activities

17   approved in advance by Pretrial Services, which is --

18   which means he can go and leave his home for those

19   purposes.  If he's going for some other purpose, he's

20   got to get Pretrial's approval.

21           MR. BIENENFELD:  Right.  And we're including

22   twelve-step meetings as part of mental health, correct?

23           THE COURT:  Yes.

24           MR. BIENENFELD:  Thank you, Judge.

25           THE COURT:  Okay.  Anything else?

1          MR. BIENENFELD:  It's a big ask but what
2    about health recreational activities such as golfing.
3          THE COURT:  That can be as approved by
4    Pretrial Services.  If there's something that, in their
5    discretion, they think is appropriate, then he will
6    apply to them, but I'm not going to give a blanket at
7    this point carve-out, okay?
8          MR. BIENENFELD:  Thank you.
9          THE COURT:  Anything else from the
10   government on these conditions?
11         MR. SANDLAR:  No, your Honor.
12         THE COURT:  Okay.  Mr. Walden, I'm prepared
13   to release you on bond provided that I am confident
14   that you understand the conditions on which you're
15   being released and the consequences of violating those
16   conditions, okay?  So if you have any questions about
17   either the conditions or the consequences, I will
18   explain them to you, okay?  Let me explain the
19   conditions.
20         There are standard conditions that apply to
21   everyone who is released on bond in this Court, which
22   means you have to appear for all court appearances.
23   You can't commit a federal, state, or local crime while
24   you're out on bail.  You can't change your residence or
25   phone number unless you inform everyone here in

1   writing.  That's your lawyer, that's the government,

2   that's Pretrial Services, and that's the Court.  You

3   can't possess a firearm, a destructive device, or

4   similar weapon, and you can't possess a narcotic drug

5   or controlled substance unless you have a doctor's

6   prescription.

7              Do you understand those standard conditions?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Okay.  You are subject to

10  additional conditions that are specific to you.  Those

11  are as follows:  Pretrial Services is supervising you,

12  which means they can randomly ask you to appear before

13  them, either give them a phone call at a certain time

14  or come to their offices at a date and time, or they

15  can appear at your home or work, and you've got to

16  comply with those requests.

17             You've got to surrender any passport.

18  You've got to surrender any passport.  Do you need a

19  moment?

20             THE DEFENDANT:  No, I'm sorry, I didn't hear

21  what you said.

22             THE COURT:  You have to surrender any

23  passport if you haven't surrendered it already and you

24  can't apply for any additional international travel

25  documents.  You're subject to a travel restriction,

1   which means you can't leave the following areas unless

2   Pretrial Services approves it:  That's New York City,

3   New Jersey, and what's known as the Southern District

4   of New York, which includes Manhattan, the Bronx,

5   Rockland County, and Westchester County, okay?

6           MR. BIENENFELD:  He lives in the Eastern

7   District.  I thought you also said Eastern District

8   before.

9           THE COURT:  He lives in --

10           MR. BIENENFELD:  He lives in Nassau County.

11           THE COURT:  Okay.  I'll check Long Island as

12   well.

13           MR. BIENENFELD:  Okay.

14           THE COURT:  So New York City, Long Island,

15   Westchester, Rockland, New Jersey, Manhattan, the

16   Bronx, basically all the boroughs, Long Island, New

17   Jersey, and Rockland and Westchester County are fine,

18   okay?  If you're traveling outside of those areas, you

19   need to get Pretrial Services' approval for that.  You

20   have to undergo evaluation and treatment for any mental

21   health condition and you're subject to what's known as

22   home detention, which is you'll have to wear an ankle

23   monitor and that means you can only leave your home for

24   certain things, which are court appearances, meeting

25   with your lawyer, religious services, medical

1    appointments, your job, any school, any mental health

2    or substance abuse services, or activities that

3    Pretrial approves.

4              Do you understand those conditions, sir?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Okay.  And in front of you are

7    -- what your lawyer has shown are what are known as

8    additional conditions, and the ones that apply to you

9    are from number 6 to the end.

10             Have you had a chance to review those?

11             MR. BIENENFELD:  We've reviewed it, Judge,

12   thank you.

13             THE COURT:  Okay.  Mr. Walden, do you have

14   any questions about any of those conditions?

15             THE DEFENDANT:  No.

16             THE COURT:  Okay.

17             PRETRIAL SERVICES:  Your Honor, I'm sorry to

18   interrupt, just one point.  With regard to the location

19   monitoring condition, given the defendant's finances

20   and financial history, I don't know if your Honor

21   stated it already or scratched it off, but we would ask

22   that the defendant pay for part or all of the costs of

23   the location monitoring program or as determined by

24   Pretrial Services.

25             THE COURT:  I thought that was -- that was

1  standard but if it's not explained -- that goes for any

2  monitoring on his computers as well as the ankle

3  monitor.  If he has a financial ability to pay, he'll

4  be required to do so.

5          PRETRIAL SERVICES:  Thank you.

6          MR. BIENENFELD:  No objection.

7          THE COURT:  Okay.  Mr. Walden, let me

8  explain to you the consequences of violating any of

9  these conditions or not coming to court.  First is --

10  let me just get organized.  First, if you don't come to

11  court or you violate a condition, I or another judge

12  could issue an arrest warrant for your arrest, and that

13  could lead to you being held without bail for the rest

14  of your case.  If you commit another crime while you're

15  out on bail, you're actually subject to three different

16  prosecutions.

17          One is the prosecution, the case that was

18  brought against you.  Second, you could be prosecuted

19  for any crime you commit in the future.  And third,

20  because you're out on bail, it's a separate and

21  independent federal offense to commit a crime while out

22  on bail.  If you're convicted of that, committing a

23  crime while out on bail -- sometimes that's called bail

24  jumping -- you could be -- that sentence would have to

25  be consecutive, which means come after any sentence you

1    might receive in this case or for any other case, for

2    any other crime that you might commit.

3               Do you understand that?

4               THE DEFENDANT:  Yes.

5               THE COURT:  Okay.  It's also a federal crime

6    to interfere with anyone who is a victim or witness in

7    your case.

8               Do you understand that?

9               THE DEFENDANT:  Yes.

10              THE COURT:  Okay.  The other thing is, there

11   are -- I understand that there are a couple of folks

12   who are coming on to serve as sureties in support of

13   your release, and they're signing on to a bond.  Is

14   that correct?

15              MR. BIENENFELD:  Just his wife, who is

16   present in the courtroom, I believe.

17              THE COURT:  Okay, just his wife as well as

18   Mr. Walden himself, correct?

19              MR. BIENENFELD:  Of course.

20              THE COURT:  Okay.  And a property is being

21   pledged in support of that bond, is that correct?

22              MR. BIENENFELD:  Correct.

23              THE COURT:  Okay.  So, Mr. Walden, you and

24   your wife are signing on to this $200,000 and pledging

25   your property in support of that bond.  What that

1  basically means is, if you violate one of these

2  conditions and don't come to court or don't come to

3  court, the government could seize the property without

4  actually having to do very much.  That's what it means

5  to pledge property in support of a bond, and in

6  addition, if the property didn't meet the $200,000

7  amount, the government could seek to collect from

8  either you or your wife up to any deficiency.

9            Do you understand that?

10           THE DEFENDANT:  Yes.

11           THE COURT:  Okay.  Do you have any questions

12 about either of those?  Any questions?

13           THE DEFENDANT:  No.

14           THE COURT:  Okay.  Is it Rochelle (ph)

15 Walden?  Could you come forward please?  You're just

16 going to be sworn in and then we're going to ask you

17 some questions, okay?

18           MR. BIENENFELD:  She will affirm if that's

19 okay.

20           THE COURT:  That's fine.

21           (Surety is affirmed.)

22           THE CLERK:  State your name for the record.

23 Speak into the microphone.

24           MS. WALDEN:  Rochelle Walden.

25           THE COURT:  Ms. Walden, what's your

1   relationship to Jacob Walden?

2          MS. WALDEN:  I'm his wife.

3          THE COURT:  Do you guys live together?

4          MS. WALDEN:  Yes.

5          THE COURT:  Okay.  And do you understand

6   that you're being asked to serve as a suretor on this

7   bond so that he can be released from court today?

8          MS. WALDEN:  Yes.

9          THE COURT:  Okay.  Just to make -- just to

10  make sure that you understand, what that means is, he's

11  subject to certain conditions and as a signatory, there

12  could be consequences to you based upon his conduct.

13         Do you understand that's what's happening

14  here?

15         MS. WALDEN:  Yes.

16         THE COURT:  Okay.  You're being also asked

17  to pledge a property that you own together in support

18  of that bond.

19         Do you understand that's the ask of you?

20         MS. WALDEN:  Yes.

21         THE COURT:  Okay.  So the consequences of

22  his conduct, violating a condition, could lead to the

23  government seizing that property.

24         Do you understand that?

25         MS. WALDEN:  Yes.

1          THE COURT:  Okay.  What do you do for work

2     or for income?

3          MS. WALDEN:  I'm a mommy.

4          THE COURT:  Okay.  And you and your husband,

5     what's your approximate monthly or yearly income?

6          MS. WALDEN:  I don't know.

7          THE COURT:  Okay.  Let me ask this and maybe

8     your lawyer knows.  What is the approximate equity in

9     the home?

10          MR. BIENENFELD:  The equity is probably

11     about $800,000.

12          THE COURT:  Okay.  Ms. Walden, do you

13     understand that if -- it's a $200,000 bond.  The reason

14     we ask about income or other assets is if the property

15     is not sufficient to cover the $200,000, the government

16     could seek to collect from you or your husband other

17     funds to cover that deficiency.

18          Do you understand that?

19          MS. WALDEN:  Yes.

20          THE COURT:  Okay.  And you understand that

21     he's been charged with certain federal crimes?

22          MS. WALDEN:  Yes.

23          THE COURT:  Okay.  And in light of

24     everything I've explained, are you still willing to be

25     a signatory on to the bond, even though it may have

1   financial consequences to you?

2           MS. WALDEN:  Yes.

3           THE COURT:  Okay.  Do you have any questions

4   at all for me about your obligations or any of the

5   conditions or anything at all?

6           MS. WALDEN:  I don't think so, no.

7           THE COURT:  Okay.  Here's what I'm going to

8   have you do.  There are a couple of places for you to

9   sign, okay?  There are five pages to this document and

10  the conditions are on page 1 and the last page, and the

11  places for you to sign are on pages 2 and 3, okay?  If

12  you have any questions after reading that, just let me

13  know, okay?  Ms. Walden, you may be seated unless you

14  have any questions.

15          MS. WALDEN:  Thank you.

16          THE COURT:  Okay, I make a couple of

17  findings.  I find that Ms. Rochelle Walden is an

18  appropriate suretor.  She understands the nature of her

19  obligations.  I also find that Mr. Walden understands

20  the conditions and the consequences if he were to

21  violate them, and I'm going to sign in the various

22  places so that he can be released.

23          Anything else from the government?

24          MR. SANDLAR:  Nothing else, your Honor.

25          THE COURT:  Anything else on behalf of Mr.

1    Walden?

2            MR. BIENENFELD:  Nothing.  Thank you for

3    your time, Judge.

4            THE COURT:  Okay.  I wish you all good

5    health and if you'd like a copy of the bond, you should

6    hang out for a moment, okay?

7                    * * * * * * *

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18     I certify that the foregoing is a correct

19 transcript from the electronic sound recording of the

20 proceedings in the above-entitled matter.

21

22

23

24

25 ELIZABETH BARRON           August 11, 2024