

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

CMM:LS
F. #2024R00485

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 13, 2025

<u>By E-mail and ECF</u>

The Honorable Gary R. Brown
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

>   Re:   United States v. Jacob Israel Walden
>         Criminal Docket No. 24-521 (GRB)

Dear Judge Brown:

The government respectfully submits this letter motion to request a permanent order of detention with respect to the defendant Jacob Walden. As further discussed below, the defendant, who was recently charged in a six-count Indictment for producing, receiving, accessing, and possessing child sexual abuse material, poses a significant danger to the community and is a flight risk. The defendant is currently scheduled to be arraigned on January 22, 2025. For the reasons set forth below, the government requests that the arraignment date be advanced and the Court enter a permanent order of detention.

I. <u>Background</u>

A. <u>Offense Conduct</u>

In September 2023, law enforcement officers identified Walden as a repeat purchaser of child sexual abuse material ("CSAM") from a large-scale production and distribution ring, which advertised, sold, and distributed CSAM to adult male buyers located in various locations within the United States and abroad. On April 21, 2024, on Walden's outbound international trip from John F. Kennedy International Airport, law enforcement officers conducted a lawful border inspection of the merchandise in Walden's possession, including an Apple iPhone. During the inspection, Walden declared the iPhone as his property and voluntarily provided his phone number and the password to unlock the iPhone. While conducting a preliminary manual search of the iPhone, law enforcement identified an electronic payment account that utilized the same display name as the one used to pay into an account linked to the CSAM ring. Advised by law enforcement agents that he had been identified as a subject during an ongoing investigation, Walden made incriminating statements showing his familiarity with the electronic payment accounts utilized by the CSAM distribution ring.

The agents seized the iPhone pursuant to border authority and later obtained a search warrant for the forensic extraction of the iPhone. A review of the extraction of the iPhone demonstrated the storage of approximately 23 images and 30 videos of child sexual abuse material on the device, as charged in the possession of child pornography count of the Indictment (Count Four). Investigators were able to identify, locate, and interview two of the victims depicted in some of the CSAM images and videos recovered from Walden's iPhone. The victims confirmed that they were of minor age when the content was created.

During the review of the extraction reports of Walden's iPhone, law enforcement also recovered an encrypted chat conversation in which Walden arranged for the purchase of two packages of CSAM from a foreign-based distributor. One of the packages that Walden purchased was advertised to include "4-19, FAMILY, SOLO, RAPE, MIXED" content. Upon proof of payment, the distributor transmitted the child pornography to Walden in a series of online links, which the defendant saved into his cloud storage account. The two packages of CSAM, the receipt of which is charged Count Three, contained at least 500 CSAM images and 5,000 CSAM videos, including videos depicting rape, bestiality, and the abuse of toddler-age children. Additional collections of CSAM recovered from two of Walden's cloud storage accounts pursuant to search warrant and totaling at least 20,500 files are charged in the two access with intent to view counts of the Indictment (Counts Five and Six).

During the investigation, law enforcement also identified at least 11 minor female victims, ages 14 to 17 years old, whom Walden contacted, paid, and enticed or attempted to entice to produce CSAM via social media from at least 2020 to 2024. Offense conduct involving two of these victims—Jane Doe #1 and Jane Doe #2—is charged in the two sexual exploitation of children counts of the Indictment (Counts One and Two). Jane Doe #1, who was 17 years old at the time that Walden enticed her, produced approximately 11 CSAM videos and 4 CSAM images for Walden. Jane Doe #2, who was 16 years old at the time, produced approximately 3 CSAM videos and 4 CSAM images for Walden. In his chat conversations with these victims, Walden insisted that he be addressed as "daddy," provided directions for what content the minors were to produce (e.g., "take off your top"), and paid the minors via electronic payment after he received the requested content. In forensic interviews, the victims confirmed that they were of minor age when Walden contacted them and recalled that Walden requested the victims to produce specific CSAM for him.

B. Procedural History

On July 31, 2024, Walden was arrested upon a complaint charging him with one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). See ECF No. 1. The complaint charged Walden with possession of at least two images of child pornography, which were recovered from defendant's iPhone and depicted a single identifiable victim. Id. On August 1, 2024, at the initial appearance before the Honorable Sanket J. Bulsara, Walden waived a preliminary hearing and was released on home detention with electronic location monitoring upon a $200,000 bond co-signed by his wife and secured by his primary residence. See ECF No. 7. At the recommendation of Pretrial Services, the court included conditions pursuant to the Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act"), including limits on Walden's contact with minors (except his own children), restrictions

on Walden's use of electronic devices, and the monitoring of his electronic devices by Pretrial Services ("cyber monitoring").  Id. at 5.

On September 5, 2024, Pretrial Services filed a violation of bail conditions after (i) cyber monitoring revealed that the defendant engaged in an electronic conversation via WhatsApp with an unknown female in which Walden offered money for sex in connection with another female's visit to Walden's home, and (ii) the defendant made an unauthorized stop at a Verizon store without obtaining permission from Pretrial Services.  At a violation hearing of September 6, 2024, the Honorable Joseph A. Marutollo found that Walden violated his conditions of release and modified certain Adam Walsh Act conditions.  Specifically, Judge Marutollo restricted visitors to Walden's residence (subject to limited exceptions), expanded restrictions on Walden's contact with minors to include his own children, and restricted Walden's use of WhatsApp.  See ECF No. 22 at 5.  At a subsequent status conference of September 20, 2024, the Honorable Robert M. Levy amended these conditions, permitting Walden's contact with his own children and allowing a wider category of visitors to Walden's residence (subject to certain restrictions).  See ECF No. 26 at 6.

On December 18, 2024, the grand jury returned an Indictment charging Walden with six counts relating to his production, receipt, possession, and access of child sexual abuse material.  See ECF No. 31.  At the time of the Indictment, the government expected to address detention at a soon-to-be-scheduled arraignment on the Indictment.  At the request of defense counsel, however, the arraignment on the Indictment was adjourned until January 22, 2025.  See ECF No. 32.  The government filed the instant application to address detention on an expedited schedule.

II.     Legal Standard

Under the Bail Reform Act, Title 18, United States Code, Section 3141 et seq., upon a government motion the court must hold a hearing "to determine whether any condition or combination of conditions . . . will reasonably assure the appearance of such person as required and the safety of any other person and the community" where the charged offense falls within a category of crimes set forth in Section 3142(f)(1), or where the defendant poses a serious risk of flight or obstruction of justice.  18 U.S.C. § 3142(f); see also United States v. Watkins, 940 F.3d 152, 158 (2d Cir. 2019).  The categories of crimes set forth in Section 3142(f)(1) include "any felony . . . that involves a minor victim."  See 18 U.S.C. § 3142(f)(1)(E).

If a detention hearing is warranted, federal courts are empowered to order a defendant's detention pending trial upon a determination that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e).  A finding of dangerousness must be supported by clear and convincing evidence.  See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995).  A finding of risk of flight must be supported by a preponderance of the evidence.  See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987).

A rebuttable presumption of dangerousness and risk of flight arises when, as here, a defendant is charged with serious offenses involving minor victims under Title 18, United States Code, Sections 2251 and 2252(a)(2).  See 18 U.S.C. § 3142(e)(3)(E).  The presumption

means that "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." Id.; see also United States v. Schulte, Case No. 21-3113(L), 2022 WL 1316210, at *2 (2d Cir. May 3, 2022) (summary order) ("[T]here is a rebuttable presumption in favor of detention in cases where, as here, there is probable cause to believe that the defendant committed an enumerated offense involving a minor victim"). In a presumption case, the burden is on the defendant to "com[e] forward with evidence that he does not pose a danger to the community or a risk of flight." United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001). Even if the defendant were to meet his burden of production, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." Id.

To determine whether the presumptions of dangerousness and flight are rebutted, the district court considers four factors: (1) the nature and circumstances of the crimes charged, "including whether the offense . . . involves a minor victim"; (2) the history and characteristics of the defendant; (3) the seriousness of the danger posed by the defendant's release; and (4) the weight of the evidence against the defendant. Id.; see also 18 U.S.C. § 3142(g). Under the Bail Reform Act, the government may proceed by proffer, and "[t]he rules of evidence do not apply in a detention hearing." Ferranti, 66 F.3d at 541-42.

### III. The Defendant Should Be Detained Pending His Trial

In view of the serious charges involving a minor victim returned by the grand jury, a detention hearing is well warranted, see 18 U.S.C. § 3142(f)(1)(E), and the statutory presumption of dangerousness and flight is entirely appropriate, see 18 U.S.C. § 3142(e)(3)(E). Even in the absence of a presumption, however, an analysis of the applicable statutory factors counsel in favor of detention pending trial given the predatory nature of the defendant's conduct, the strength of the evidence, and the substantial prison sentence that the defendant faces if convicted.

#### A. Nature and Circumstances of the Offense

The nature and circumstances of the charged crime and, as discussed below, the weight of the evidence strongly supports detention. The defendant is charged with one of the most serious federal crimes involving the sexual exploitation of children, and he has engaged in a pattern of disturbingly abusive behavior.

Specifically, Counts 1 and 2 of the Indictment charge the defendant with enticing two minors, Jane Doe #1 and Jane Doe #2 respectively, to produce sexually explicit materials for the defendant in exchange for payment. Jane Doe #1 was 17 years old, and Jane Doe #2 was 16 years old in the period in which Walden enticed them to produce CSAM for payment. As noted, however, the defendant's criminal conduct sweeps broader than these two counts: law enforcement identified at least 11 minor female victims, ages 14 to 17 years old, whom Walden contacted, paid, and enticed and/or attempted to entice to produce CSAM via social media from at least 2020 to 2024. And, in addition to enticing and attempting to entice minor females to produce CSAM for him directly, Walden was also a prolific purchaser of child sexual abuse material from online producers and distributors of CSAM, fueling demand for content that included the depiction of rape, bestiality, and the abuse of toddler-age children.

4

Accordingly, following the return of the Indictment, the defendant's criminal case is vastly different from August 1, 2024, when (then Magistrate) Judge Bulsara released the defendant following his arrest on a single-count complaint charging the possession of two images of child pornography depicting a single victim. As the extensive scope of Walden's criminal conduct has come into focus, so too has the urgent need to protect minors from any risk of additional misconduct pending trial. See, e.g., United States v. Valerio, 9 F. Supp. 3d 283, 289 (E.D.N.Y. 2014) ("As previously noted, there is a statutory presumption of detention in this instance. . . . The reason for this presumption is clear. 'No one questions that child pornography is an insidious offense since it takes advantage of a particularly vulnerable segment of society, children.'"). While the defendant is already subject to cyber monitoring and limits on his use of electronic devices pursuant to the Adam Walsh Act conditions, these are imperfect tools that cannot prevent a determined defendant, such as Walden, from utilizing the electronic devices of relatives, friends, or associates.

The serious charges returned by the grand jury also compound the risk of nonappearance. Unlike the single count of possession on which Walden was arrested on July 31, 2024, which carries no mandatory minimum term of incarceration, the defendant now faces a minimum prison sentence of 15 years if convicted of the top charges of the Indictment. See 18 U.S.C. § 2251(e). As the Court of Appeals recognizes, such a minimum prison sentence is one that may incentivize the defendant to flee, even if he is otherwise rooted in the community. See United States v. Scali, 738 F. App'x 32, 33 (2d Cir. 2018) (summary order) ("The court reasonably determined that [the defendant]'s Guidelines range of 87–108 months' imprisonment was significant enough to provide an incentive to flee."); United States v. Khusanov, 731 F. App'x 19, 21 (2d Cir. 2018) (summary order) ("[A] district court does not clearly err in concluding that a defendant facing a potentially lengthy prison sentence possesses a strong motive to flee").

Although the defendant is presently subject to home detention and electronic location monitoring by Pretrial Services, these measures are not foolproof when a determined defendant elects to flee. In light of the serious charges and his self-reported net worth of $27.9 to $30.9 million, the $200,000 bond is insufficient to reasonably assure Walden's appearance.

B. Weight of the Evidence

Corresponding to the serious charges is the overwhelming evidence in this case. Law enforcement has identified, located, and interviewed multiple minor victims, including Jane Doe #1 and Jane Doe #2, the victims identified in the sexual exploitation of children counts (Counts One and Two). These victims recall their electronic conversations with the defendant and can testify cogently about the defendant's efforts to entice them to produce CSAM for payment. The anticipated testimony of the victims corroborates the defendant's own social media messages in which Walden entices them to produce CSAM for payment. This evidence is supplemented by tens of thousands of CSAM files obtained from Walden's iPhone and cloud storage accounts pursuant to a search warrant, which is charged in the other counts of the Indictment. Detailed metadata and account records linking the defendant to the social media accounts, online payment services, and cloud storage accounts tie the other categories of evidence definitively to Walden. These account records show that Walden utilized these services to conduct his criminal conduct not only from his home address in Valley Stream, New York, but

5

also from his office address in Woodmere, New York and elsewhere. The strong weight of the evidence not only elucidates the risk of danger to minors posed by the defendant's release but also compounds the risk of nonappearance. See United States v. Millan, 4 F.3d 1038, 1046 (2d Cir. 1993) (substantial evidence of guilt "provides a considerable additional incentive to flee").

### C. History and Characteristics of the Defendant

Although the defendant has no prior criminal history, the investigation shows that Walden committed the offense conduct with perseverance and determination. As it relates to the enticement of minors, the defendant engaged in a multi-year effort from at least 2020 to 2024 to contact at least 11 minors for the purpose of obtaining child sexual abuse material upon his request and/or payment. Walden has also shown a high degree of motivation in building his collection of child pornography via purchase from online producers and distributors. For example, when a provider of cloud storage services suspended Walden's storage account to block child pornography, Walden opened four different accounts (using different email addresses) in quick succession to evade the provider's efforts to block such content. And, even after Walden was arrested and released on home detention, Pretrial Services found that the defendant was using WhatsApp to offer a visitor money for sex. Although Pretrial Services has not found any more recent violations, Walden's pattern of conduct over several years raises questions regarding his determination and ability to evade the conditions of release even on home detention. See, e.g., United States v. Blackman, No. 22 MJ 272 (GRB), 2022 WL 843735, at *5 (E.D.N.Y. Mar. 22, 2022) ("[S]erious bail violations by those charged with child pornography offenses are far from unprecedented.").

### D. Nature and Seriousness of the Danger to the Community or to an Individual that Would Be Posed by Release

The discussion above highlights why the nature and seriousness of the defendant's conduct demand his detention to assure the safety of the community. As this Court has recognized in an analogous case, "[e]ven mere possession and distribution of child pornography . . . presents serious . . . concerns." Id. at *4. The defendant's offense conduct is "more troubling" than "mere possession" where, as here, it covers "the production of this material through the predatory conduct using social media." Id. at *5. Where the laudable efforts of Pretrial Services to monitor the defendant's use of electronic devices faces inherent limits given the ubiquity of electronic devices and a defendant determined to access child pornography, the interest of community safety requires his detention.

## IV. Conclusion

For all the reasons set forth above, the government respectfully submits that no condition or combination of conditions will assure the safety of the community or the defendant's return to court, and therefore respectfully requests that that the Court order the defendant detained pending his trial.

Respectfully submitted,

CAROLYN POKORNY
Acting United States Attorney

By:   /s/ Leonid Sandlar
     Leonid Sandlar
     Trial Attorney
     (718) 254-6879

cc:    Clerk of Court (GRB) (by ECF)
       Benjamin Brafman, Esq., Counsel for the Defendant (by ECF and e-mail)
       Saul Bienenfeld, Esq., Counsel for the Defendant (by ECF and e-mail)
       Tara Sarnelli, U.S. Pretrial Services Officer (by e-mail)