LAW OFFICES OF
# JEFFREY LICHTMAN
441 LEXINGTON AVENUE
SUITE 504
NEW YORK, NEW YORK 10017
www.jeffreylichtman.com

JEFFREY LICHTMAN
JEFFREY EINHORN
MATTHEW COHAN

PH: (212) 581-1001
FX: (212) 581-4999

February 21, 2025

**BY ECF**
Hon. Gary R. Brown
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

     Re: <u>United States v. Jacob Walden</u>, 24 CR 521 (GRB)

Dear Judge Brown:

### A.    INTRODUCTION

     I am writing on behalf of defendant Jacob Walden and pursuant to 18 U.S.C. § 3142(f) to respectfully request reconsideration of the Court's January 22, 2025 order of detention, revoking the defendant's pretrial release following his indictment. See, e.g., United States v. Atomei, No. 24-cr-78 (MKB), 2024 WL 1934195, at *2 (E.D.N.Y. May 2, 2024) (recognizing "inherent authority" for district court to revisit its own bail determinations). With this letter, the defendant proposes additional conditions of release not previously before the Court, which include the defendant living alone in a home with around the clock third party video monitoring of any entry and egress, and without any access to the internet, which I believe ameliorate the Court's stated concerns from the January 22, 2025 detention hearing (the "Jan. 22, 2025 Detention Hrg") and the factors discussed by Your Honor in United States v. Blackman, No. 22 MJ 272 (GRB), 2022 WL 843735 (E.D.N.Y. March 22, 2022). Simply put, with the additional factors proposed in this letter, it can no longer be found by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the safety of any other person and the community."[1] 18 U.S.C. § 3142(f). Finally, while not a factor concerning the defendant's bail determination, pursuant to the Bail Reform Act, should he be ordered released on the conditions

---

[1] The Court previously indicated that it was not "principally concerned with the [defendant's] flight risk," and that an increased bond could address that factor. See January 22, 2025 Detention Hrg. at p. 52. Accordingly, this letter primarily discusses conditions related to the potential danger to the community posed by the defendant's re-release on bail.

that we propose, he will be permitted to restart the medical treatment noted by counsel in previous filings and discussed during the detention hearing. See, e.g., Jan. 22, 2025 Detention Hrg. at T 59.

### B. THE PROPOSED BAIL PACKAGE

In addition to the conditions set by Judge Bulsara on August 1, 2024 and modified by Judge Levy on September 20, 2024, we propose that Your Honor adopt a bail package containing the following additional conditions securing the defendant's release:

- A $50 million personal recognizance bond signed by five financially responsible persons and secured by eight Walden family properties, including the homes of defendant Walden and his wife and five children, his brother and his family, and their parents. These homes have equity of approximately $10 million:

    585 Flanders Drive, Valley Stream, NY 11581

    817 Glenridge Avenue, North Woodmere, NY 11581

    594 Diane Place, Valley Stream, NY 11581

    846 Cliffside Avenue, Valley Stream, NY 11581

    773 Golf Drive, Valley Stream, NY 11581

    19 Ellington Way, Spring Valley, NY 10977

    17 Ellington Way, Spring Valley, NY 10977

    14 Cortland Rd., Monsey, NY 10952

- Defendant Walden will be subject to home detention with GPS monitoring in a house he owns down the street (585 Flanders Drive, Valley Stream, NY) from his family home (846 Cliffside Avenue, Valley Stream, NY), just .3 miles away. He will live at this property alone, with all visitors pre-approved by Pretrial Services and the government.

- The defendant's attorneys will meet with him at the house only. His family will be permitted to visit him on Shabbat, from Friday at sundown until Saturday at sundown. The defendant will be under strict home confinement and not permitted out of the house except for pre-approved medical appointments/emergencies.

- Every entrance and egress to the Flanders Drive house shall be subject to 24/7 video monitoring by a third-party security company approved by the government and Pretrial Services who will report directly to Pretrial Services and the government if a non-permitted visitor arrives. Pretrial Services and the government will have access to this video for review when requested.

- No visitor will be permitted to bring a cellular telephone, iPad, laptop computer or any device that has the ability to access the internet into the house except for his attorneys.

- Food deliveries will be left on the front doorstep and only from approved vendors and relatives. Any other deliveries must be approved by Pretrial Services.

- There will be one single phone line in the house – a hardline, not a cellphone. There will be no SmartTV with internet access inside the house. There will be no electronic devices at all in the house which can access the internet.

- Mr. Walden will only be permitted a single air-gapped laptop, not capable of connecting to the internet, with discovery pre-loaded by the government for his review.

- Pretrial services and the government may monitor all telephone calls from the single hardline in the house, except those with Mr. Walden's attorneys and therapist. In addition, pretrial services and the government may search this house and the defendant's computer at any time without advance notice.

- The defendant may continue to work remotely but will have no access to his company's network.

- The defendant will continue his therapy via telephone.

### C. DISCUSSION

In its determination of whether the presumptions of dangerousness and flight were rebutted, the Court considered the factors contained in 18 U.S.C. § 3142(g): "the nature and circumstances of the crime charged, the weight of the evidence against the defendant, the history and characteristics of the defendant, including the family ties, employment, community ties, past conduct, and the nature and seriousness of the danger to the community or to an individual. Jan. 22, 2025 Detention Hrg. at T 53.

On the issue of dangerousness to the community, the Court referred back to its decision in Blackman in discussing the danger of a defendant possessing child pornography: "In Blackman, I spent a lot of time addressing this issue. There is -- the cases are legion concerning the possession, purchase and exchange of child pornographic images and the horrendous impact that has." T56-57. The court then cited the Supreme Court in United States v. Williams, 553 U.S. 285 (2008), pointing out that "child pornography harms and debases the most defenseless of our citizens." Jan. 22, 2025 Detention Hrg. at T 57.

Expanding on this point, and addressing an increase in dangerousness as to defendant Walden due to allegations of the production of child pornography through the use of social media, the court again referenced Blackman, 2022 WL 843735 at *6, noting a similarity between the purported conduct of that defendant and what is alleged against Mr. Walden: "the case offers something even more troubling: Evidence supporting a strong inference that the defendant engaged in the production of this material through predatory conduct, using social media." Jan. 22, 2025 Detention Hrg. at T 57. Because of this factor, the Court noted that this "aspect of the case significantly increases the risk of danger, as the defendant, afforded access to increasingly ubiquitous technologies, could continue such conduct with devastating results. Here, the proposed safeguards prove too insubstantial as measured against the potentially catastrophic risks. That was my determination in Blackman[2]." Id.

---

[2] The bail package offered in Blackman before Magistrate Judge Wicks "included property and responsible suretors." 2022 WL 843735 at *2-3. Blackman also consented to home detention and internet access only as necessary for employment and/or school purposes, if any. Id. at *2. Regarding Judge Wicks' concern about Blackman's girlfriend residing with him at the home, and the defendant's potential access to electronic devices", she ultimately appeared in court and "agree[d] to protect her electronic devices from the defendant upon his release." Id. Further, the defendant's home "also contained an iPad and a smart TV." Id. The defendant's grandmother, who lived nearby, "volunteered to stay with the defendant during the day while the other residents of the home were at work." Id.

Prior to the Court's decision, the government echoed its same concerns regarding defendant Walden's proffered bail conditions and the potential danger to the community that remained:

> There are other phones in the house. There's access to visitors to the house. Mr. Walden has a wife who presumably has her own phone. And although he's only permitted to use one mobile device that's cyber monitored and one laptop computer that's monitor[ed] by Pretrial Services, as Your Honor yourself described in the Blackman case, the ubiquity of electronic devices out there in the world and now in general and specifically in a large household permits the defendant to use another phone.

Jan. 22, 2025 Detention Hrg. at T 39.

Of course, it should be noted that by the time of the two bail modification hearings before the Magistrate on September 6 and September 20, 2024, the government had possession of defendant Walden's phone for four nearly five months following its seizure at JFK Airport on April 21, 2024. The review of the contents of the phone clearly led to the defendant's arrest on July 31, 2024. Surely by the time of the September hearings additionally, the government had reviewed the contents of the phone, which led it to claim that the defendant had contact with 11 underage females for purposes of producing child sexual abuse material – the basis for the December 18, 2024 indictment. Jan. 22, 2025 Detention Hrg. at T 11. Finally, by the September 2024 bail hearings the government was aware of the purported "WhatsApp incident" of August 16, 2024.

Nevertheless, at those September bail modification hearings the government did not ask for the defendant's detention on grounds of dangerousness and did not do so until its detention letter of January 13, 2025. What changed between September of 2024 and January 13, 2025? The indictment charging two counts of Sexual Exploitation of a Child, 18 U.S.C. § 2251 (a) along with its 15 year mandatory minimum sentence upon conviction. The 15 year mandatory minimum, however, is not a factor which impacts the dangerousness of the defendant, but rather increases a defendant's incentive to flee[3] – the flight issue, the Court noted, which was not its "principal concern" during the January 22, 2025 hearing. Jan. 22, 2025 Detention Hrg. at T 22, 52. The point here is that *at least on the ground of dangerousness*, the government did not believe Mr. Walden should be remanded for nearly six months following his arrest, despite no new exacerbating information coming to light.

---

[3] The Court indeed noted that "the increased mandatory minimums do increase that [flight] risk a little bit ...." Jan. 22, 2025 Detention Hrg. at T 22.

### D.     **CONCLUSION**

The Court's bail decisions in both <u>Blackman</u> and here on January 22, rested ultimately on, after the Court reviewed the pertinent § 3142(g) factors, the determination as to "whether the Government ... demonstrated by clear and convincing evidence that no condition or combination of conditions will reasonable assure the safety of any other person in the community." Jan. 22, 2025 Detention Hrg at T 52. Due to the ubiquitousness of electronic devices that could find their way to the defendants in both <u>Blackman</u> and here, the Court determined that the risk to the community outweighed the safeguards proposed by the defense.

Despite the severity of the charges in this case, we believe that the supplemental conditions proposed with this letter sufficiently address the Court's previously stated concerns regarding the safety of the community. With the defendant living alone in a home subject to around the clock video surveillance, and with no electronic communication devices permitted inside save a monitored telephone land-line, the lack of any electronic devices entering the defendant's home makes clear that it can no longer be found by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the safety of any other person and the community." 18 U.S.C. § 3142(f). Accordingly, for these reasons and those pressed during the January 22, 2025 detention hearing, the defendant should be granted bail.

                                               Respectfully submitted,

                                               Jeffrey Lichtman

cc:      Leonid Sandlar, Esq.
          Assistant United States Attorney (by ECF)