EXHIBIT A

# UNITED STATES DISTRICT COURT

for the

District of New Jersey

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No.    24-12238 |
| A Forensic Image Of A Silver Apple Iphone Assigned | ) | |
| The Phone Number 845-641-0543, More Particularly | ) | |
| Described In Attachment A | ) | |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____ New Jersey _____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before _____ August 20, 2024 _____ *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. James B. Clark III _____.

*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for ____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: _____ 8/7/2024 1330 hours _____      /s/ James B. Clark III _____

*Judge's signature*

City and state: _____ Newark, New Jersey _____      Hon. James B. Clark III, USMJ

*Printed name and title*

ATTACHMENT C

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A FORENSIC IMAGE OF A SILVER APPLE IPHONE ASSIGNED THE PHONE NUMBER 845-641-0543, MORE PARTICULARLY DESCRIBED IN ATTACHMENT A | :   **TO BE FILED UNDER SEAL** <br> : <br> :   Hon. James B. Clark III, USMJ <br> : <br> :   Mag. No. 24-12238 <br> : <br> : |

| | | |
|---|---|---|
| STATE OF NEW JERSEY | : | |
| | : ss. | |
| COUNTY OF ESSEX | : | |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Jaclyn Duchene, being first duly sworn, hereby depose and state as follows:

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of a forensic image obtained from a cellular phone described further herein and in Attachment A—which is currently in lawful the possession of the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI") in the District of New Jersey—and the forensic extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with HSI, currently assigned to the HSI Newark Child Exploitation investigative group.  Therefore, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure

41(a)(2)(C)—that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

3. I have been a Special Agent with HSI since December 2016. Through my employment, I have received training in the area of child sexual abuse material, as defined in 18 U.S.C. § 2256, and child exploitation, and have, as part of my daily duties as a Special Agent, investigated violations relating to child exploitation and child sexual abuse material, including violations pertaining to the possession, distribution, receipt, advertising, and production of child sexual abuse material, in violation of 18 U.S.C. §§ 2251, 2252(a), and 2252A. As part of my duties as a Special Agent, I have observed and reviewed numerous examples of child sexual abuse material in all forms of media, including computer media. I have also participated in the execution of many search warrants, including searches involving child exploitation and/or child sexual abuse material offenses.

4. The information contained in this affidavit is based upon my personal knowledge and observation during the investigation of this matter, the review of documents and records, my training and experience, and conversations with other law enforcement officers (including officers who have engaged in numerous investigations involving child sexual abuse material and computer-based crime). This affidavit is intended to show only that there is probable cause for the requested warrant and does not set forth all my knowledge about this matter. Where the contents of documents or the actions,

2

DOJ_0000018

statements or conversations of others are reported herein, they are reported in substance and in part, except as otherwise indicated.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, 2251 (sexual exploitation of children), 2252 (activities relating to material involving the sexual exploitation of children), and 2252A (activities relating to material constituting or containing child sexual abuse material) (the "Subject Offenses") have been committed by Jacob Israel Walden ("WALDEN"), and that evidence, fruits, contraband and instrumentalities will be found on the electronic device described further herein and in Attachment A. The items to searched for and seized are specifically described in Attachment B to this affidavit which is incorporated herein.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6. As described in Attachment A, the property to be searched is the forensic image obtained from a silver Apple iPhone assigned the phone number 845-641-0543 (the "SUBJECT DEVICE"). The SUBJECT DEVICE is currently in the lawful custody of HSI in the District of New Jersey. The proposed search warrant would authorize the forensic examination of the SUBJECT DEVICE for the purpose of identifying electronically stored data particularly described in Attachment B.

## STATUTORY AUTHORITY

7. As noted above, this investigation concerns alleged violations of the following statutes:

3

a.      18 U.S.C. §§ 2252(a)(1) and (b)(1), which prohibit any person

from knowingly transporting or shipping, or attempting or conspiring to

transport or ship, any visual depiction using any means or facility of interstate

or foreign commerce, or in or affecting interstate or foreign commerce, by any

means including by computer or mails, if the production of such visual

depiction involved the use of a minor engaging in sexually explicit conduct and

such visual depiction is of such conduct.

b.      18 U.S.C. §§ 2252(a)(2) and (b)(1), which prohibit any person

from knowingly receiving or distributing, or attempting or conspiring to receive

or distribute, any visual depiction using any means or facility of interstate or

foreign commerce, or that has been mailed or shipped or transported in or

affecting interstate or foreign commerce, or which contains materials which

have been mailed or so shipped or transported, by any means including by

computer, or knowingly reproducing any visual depiction for distribution using

any means or facility of interstate or foreign commerce, or in or affecting

interstate or foreign commerce or through the mails, if the production of such

visual depiction involved the use of a minor engaging in sexually explicit

conduct and such visual depiction is of such conduct.

c.      18 U.S.C. §§ 2252(a)(4)(B) and (b)(2), which prohibit any

person from knowingly possessing or accessing with the intent to view, or

attempting or conspiring to possess or access with the intent to view, one or

more books, magazines, periodicals, films, video tapes, or other matter which

contain any visual depiction that has been mailed, or has been shipped or

4

transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

      d.     18 U.S.C. §§ 2252A(a)(1) and (b)(1), which prohibit a person from knowingly mailing, or transporting or shipping using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, any child sexual abuse material, as defined in 18 U.S.C. § 2256(8), or attempting or conspiring to do so.

      e.     18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1), which prohibit a person from knowingly receiving or distributing, or attempting or conspiring to receive or distribute, any child sexual abuse material or any material that contains child sexual abuse material, as defined in 18 U.S.C. § 2256(8), that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

      f.     18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2), which prohibit a person from knowingly possessing or knowingly accessing with intent to view, or attempting or conspiring to do so, any material that contains an image of child sexual abuse material, as defined in 18 U.S.C. § 2256(8), that has been

5

DOJ_0000021

mailed, or shipped or transported using any means or facility of interstate or

foreign commerce or in or affecting interstate or foreign commerce by any

means, including by computer, or that was produced using materials that have

been mailed or shipped or transported in or affecting interstate or foreign

commerce by any means, including by computer.

**PROBABLE CAUSE**

I.    **Prior Investigation of Child Sexual Abuse Material Scheme**

     8.     Since at least in or about March 2022, law enforcement has been

investigating a large-scale child sexual abuse material production and

distribution scheme which advertised, sold and distributed child sexual abuse

material to adult male buyers located in various locations within the United

States and abroad from approximately August 2019 through in or around

September 2022. Law enforcement, utilizing various investigative measures,

has worked to identify the participants in the scheme including: (i) the

producers and distributors of the child sexual abuse material; (ii) the buyers

and recipients of the child sexual abuse material; and (iii) the minor victims

enticed to engage in sexual acts and produce images and videos of child sexual

abuse material for sale and distribution to buyers.

     9.     More specifically, law enforcement identified the leader of the

scheme, Ryan Edward Hine (who, as described below, has since been

criminally charged). The investigation showed that that, in furtherance of the

child sexual abuse material production and distribution scheme, Hine utilized

and controlled multiple text message and chat applications, electronic payment

6

applications, and email accounts with variations of usernames and monikers, including but not limited to, "Lacie Love", "Rosie Snow", and "Kandie Kae" when advertising, selling, and distributing child sexual abuse material images and videos of the minor victims to subject buyers.

10. From approximately June 2020 through September 2022, in connection with the Hine investigation, grand jury subpoena returns from Cash App demonstrated that Hine used a Cash App account registered to email "RosieSnow69@gmail.com" and identifiers "$rosiesnow69," "$laciexlove69," and "$kandiexkae69" to receive payments from buyers for the production and distribution of child sexual abuse material to the buyers.

11. In or around February 2023, Hine was arrested by law enforcement for his leadership in the child sexual abuse material production and distribution scheme. In voluntary post-arrest proffer statements to law enforcement, Hine stated that the Cash App account associated with "RosieSnow69@gmail.com" was created for the purpose of receiving payments from buyers of child sexual abuse material that Hine would then distribute to the buyers through a variety of text/chat applications.

12. From in or around August 2022 through February 2024, law enforcement identified at least six (6) minor victims whose child sexual abuse material images and videos were advertised, sold, and distributed by Hine to buyers who made payment to Hine from approximately October 2020 through November 2021 for receipt of the Hine produced child sexual abuse material.

7

DOJ_0000023

13.     Hine was indicted in the Western District of Missouri in March 2023.  See United States v. Hine, Case No. 23-cr-4012 (W.D. Mo.).   The grand jury returned a superseding indictment in February 2024.

## II.     **WALDEN Identified as Purchaser of Child Sexual Abuse Material**

14.     In or around September 2023, law enforcement, reviewing the Hine-controlled Cash App account registered to RosieSnow69@gmail.com, identified Cash App accounts "Jake W" and "JW0543," which utilized payment cards with numbers 376737811103004 and 4867428021500894, making approximately thirteen (13) payments totaling $605 to the Hine-controlled Cash App account from in or around October 2020 through in or around November 2021.

15.     Law enforcement reviewed the subpoenaed records of the "Jake W" Cash App account, which provided the following identifying information for that account: the name (Jake Walden), the date of birth, the Social Security Number, and an address in Woodmere, New York (945 Central Avenue). Additionally, records provided by Cash App for the "Jake W" account identified that the account was created in or around October 2020.

16.     The "Jake W" Cash App account was utilized to effect payments to the Hine-controlled "RosieSnow69@gmail.com" Cash App account in October 2020 and September 2021 utilizing payment methods that included J.P. Morgan Chase credit card 4867428021500894 referenced above.

17.     Through subsequent investigative steps, including a review of law enforcement databases and open-source information, law enforcement officers

8

were able to link WALDEN to the above identifying personal information of the "Jake W" Cash App account, and link the address of 945 Central Avenue in Woodmere, New York to WALDEN's place of employment, Emerald Healthcare.

18.     Because he had been identified as a possible purchaser/possessor of child sexual exploitation material, an alert was created to enable law enforcement officers to received notifications about WALDEN's travel plans.

**III.     Manual Inspection Pursuant to Border Authority**

19.     On or about April 21, 2024, WALDEN was scheduled to depart John F. Kennedy International Airport in Queens, New York aboard an international flight that was scheduled to travel to Rome, Italy.  Law enforcement was alerted of WALDEN's travel arrangements and monitored WALDEN upon his entering the airport.

20.     After WALDEN was observed scanning his airline boarding pass and entering the secure, outbound jetway for his international flight, law enforcement stopped WALDEN and conducted a border inspection and search of the property in WALDEN's possession for contraband (here, child sexual abuse material) or evidence of such contraband.

21.     During the border inspection, law enforcement located the SUBJECT DEVICE and conducted a preliminary manual search of the SUBJECT DEVICE pursuant to border search authority, based upon suspicion that WALDEN was purchasing child sexual abuse material from Hine.  During the inspection, WALDEN declared the SUBJECT DEVICE as his property and

9

provided his phone number. WALDEN also voluntarily gave law enforcement officers the password to the SUBJECT DEVICE.

22. Upon conducting a manual search of the SUBJECT DEVICE, law enforcement identified a Cash App account utilizing the display name "Jake W" and identifier "$jakewny" on the SUBJECT DEVICE. Law enforcement officers photographed this Cash App application profile, which appears below:



10

23.    Upon request of law enforcement, during the border search, WALDEN presented a wallet from his pants pocket for further inspection by law enforcement. Law enforcement photographed multiple bank cards discovered within WALDEN's wallet, which photograph appears below.



SENSITIVE                                                                      DOJ_0000027

24.     Among the cards in WALDEN's possession was J.P. Morgan Chase credit card with account number 4867428021500894, which, as described above, law enforcement had previously identified in Cash App records as a payment source for Cash App account "Jake W" held by WALDEN from approximately 2020 through 2021, that made numerous payments to a Cash App account associated with leader of the child sexual abuse material production and distribution scheme, Ryan Edward Hine, known to law enforcement as the "Kandie Kae" account with additional identifiers of "RosieSnow69 – Rosie Snow" and "Laciexlove69 – Lacie Love."

25.     In addition to Cash App, law enforcement officers observed multiple multimedia file sharing applications on the SUBJECT DEVICE including Dropbox and Telegram, which were utilized by Hine to advertise, communicate and distribute child sexual abuse material to buyers who submitted payment to the "RosieSnow69@gmail.com" Cash App account.  Law enforcement also observed an application that appears to be a calculator but is designed to store hidden photos within the application.

26.     During law enforcement's inspection and border search of WALDEN and his merchandise, WALDEN asked law enforcement to provide more information about the reason for the inspection and search during his boarding of the international flight.  Law enforcement identified to WALDEN that the nature of the investigation concerned "child exploitation" and WALDEN's past communication with individuals "Rosie Snow" and "Lacie Love."  WALDEN responded that "Rosie" and "Lacie" were not "one person" but

12

a "group that went by different names." In apparent reference to child sex-abuse material, WALDEN stated that he went to "rehab" and that his wife was aware of his "issues." WALDEN's wife, who was present during the border inspection, separately stated to law enforcement officers that she was aware of WALDEN's "issues" and that WALDEN had gone to "rehab years ago."

27. Based on multiple factors—including the discovery of WALDEN's credit card that was linked to a payment account used to make payments to Hine-controlled Cash App account, WALDEN's statements regarding the identity of Hine-controlled Cash App accounts, WALDEN's and his wife's statements regarding his "issues" in apparent reference to child sexual abuse materials, and the surreptitious photo-storage application and payment applications discovered by law enforcement during the manual search of the SUBJECT DEVICE—law enforcement seized the SUBJECT DEVICE from WALDEN following the inspection.

## IV.  **Forensic Search of the Device Pursuant to Border Authority**

28. On or about April 21, 2024, the SUBJECT DEVICE was transported to the Newark office of HSI at 620 Frelinghuysen Avenue, Newark, NJ. On or about April 22, 2024, the SUBJECT DEVICE was transferred to the HSI's Newark Computer Forensic Lab at the same address for forensic analysis to be conducted pursuant to border search authority and HSI policy interpreting its border search authority.

29. Based on my training and experience, I know that following the border inspection on April 21, 2024, the SUBJECT DEVICE was stored such

13

that its contents are—to the extent material to the above-described investigation—in substantially the same state as they were when the SUBJECT DEVICE first came into the possession of HSI.

30. By May 1, 2024, the HSI's Newark Computer Forensic Lab successfully created a forensic extraction of the data on the SUBJECT DEVICE.[1]

31. On July 30, 2024, the evening before WALDEN was scheduled to depart the country alone on an outbound flight to Mexico, the Honorable Cheryl Pollak, United States Magistrate Judge for the Eastern District of New York, signed a warrant authorizing the arrest of WALDEN upon a Complaint charging WALDEN with possession of child sexual abuse material, in violation of 18 U.S.C. § 2252(a)(4)(B). A copy of the Affidavit and Complaint in Support of the Application for an Arrest Warrant is attached as Exhibit 1 to this Affidavit. WALDEN was arrested on July 31, 2024.

32. Law enforcement now seeks a warrant for review of the forensic image of the device. Although the SUBJECT DEVICE is lawfully in HSI's possession and HSI believes it already has all of the necessary authority, pursuant to its border search authority, to continue searching the SUBJECT

---

[1] A review of the forensic extraction since May 1, 2024 confirmed the presence of multiple conversations within the SUBJECT DEVICE involving the production, distribution, receipt of images and videos of possible child sexual abuse material. Additionally, law enforcement identified images and videos containing child sexual abuse material on the SUBJECT DEVICE. This information is included only to apprise the Court of the relevant conduct by law enforcement officers; I do not rely on this evidence to establish probable cause to conduct the forensic search.

DEVICE, in an abundance of caution (in particular in light of intervening decisions in the Eastern District of New York, United States v. Sultanov, No. 22-CR-149 (NRM), 2024 WL 3520443 (E.D.N.Y. July 24, 2024) and United States v. Fox, No. 23-CR-227 (NGG), 2024 WL 3520767 (E.D.N.Y. July 24, 2024)), and to ensure that a search of the SUBJECT DEVICE would comply with the Fourth Amendment and other applicable law, I now submit this affidavit seeking a warrant to search the SUBJECT DEVICE for contraband and evidence related to child sexual exploitation.[2]

33.     Based on my training and experience, individuals involved in the commission of the Subject Offenses frequently access child sexual abuse material and save those images within applications on their cellular and mobile devices.

34.     Because the border inspection revealed that WALDEN was in possession of a credit card that was linked to a payment account used to make payments to Hine-controlled Cash App account; because WALDEN made statements to law enforcement officers confirming his knowledge of the that Hine-controlled Cash App accounts using different usernames were part of the same "group"; because WALDEN and his wife each made statements regarding

---

[2] For purposes of the Fourth Amendment, some courts have differentiated between a "manual" review of files on an electronic device during a border search on the one hand and border search-related forensic examination of the electronic device on the other hand, as well as the quantum of suspicion necessary for such searches to be reasonable under the Fourth Amendment. I am advised that neither the Supreme Court, the Second Circuit, nor the Third Circuit has yet opined on the issue. For efficiency and practicality, upon receipt of this warrant, law enforcement intends to continue searching the existing forensic extraction rather than obtaining a new, second, identical extraction from the physical phone seized at the border.

15

his "issues" in apparent reference to child sex abuse material; because law enforcement officers conducting a manual review of SUBJECT DEVICE observed multimedia file sharing applications utilized by Hine to advertise, communicate and distribute child sexual abuse material to buyers, as well as an application designed to store hidden photos—all coupled with the information obtained in the investigation of Hine—there is probable cause to believe that evidence, contraband, fruits, or instrumentalities of the Subject Offenses are present on the SUBJECT DEVICE within certain mobile and cellular device applications.

## **DEFINITIONS**

35.    The following definitions apply to this affidavit and the attachments to this affidavit:

a.    Child sexual abuse material ("CSAM"), or child pornography, is defined as "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where—(A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct." 18 U.S.C. § 2256(8).

16

b.    "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons.  See 18 U.S.C. § 2256(2).

36.    Based on my training and experience, I use the following technical terms to convey the following meanings:

a.    Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

17

DOJ_0000033

b.     Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c.     Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.     GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning

18

System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

     e.    PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

19

f.     IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g.     Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

h.     Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

20

DOJ_0000036

37.     Based on my training, experience and research, I know that the Subject Device has the capability to serve as, among other things, a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA, and to access the Internet.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

38.     Based on my knowledge, training and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

39.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Subject Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Subject Device because:

        a.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

21

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f. I know that when an individual uses an electronic device to access child sexual abuse material, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an

22

DOJ_0000038

instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

40. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

41. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

42. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Subject Device described in Attachment A to seek the items described in Attachment B.

23

DOJ_0000039

## REQUEST FOR SEALING

43.     It is respectfully requested that this Court issue an order sealing, until further order of this Court, all papers submitted in support of this application, including the application, affidavit, and search warrant, and the requisite inventory notice.  Sealing is necessary because the items and information to be seized are relevant to an ongoing investigation, and premature disclosure of the contents of this Affidavit and related documents may jeopardize the effectiveness of the investigation.

Respectfully submitted,

/s/ Jaclyn Duchene

Jaclyn Duchene
Special Agent
Department of Homeland Security
Homeland Security Investigations

Special Agent Duchene attested to this Application
by Telephone Pursuant to F.R.C.P. 4.1(b)(2)(A)
on August 7, 2024

/s/ James B. Clark III

HON. JAMES B. CLARK III
UNITED STATES MAGISTRATE JUDGE

24

SENSITIVE

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

The **SUBJECT DEVICE** is the forensic image of a silver Apple iPhone cellular phone assigned the phone number 845-641-0543, which was detained from Jacob Israel Walden on or about April 21, 2024 at John F. Kennedy International Airport. The **SUBJECT DEVICE** is depicted below. Both the phone and the forensic image are in the secure custody of U.S. Department of Homeland Security, Homeland Security Investigations, in Newark, New Jersey.



SENSITIVE

DOJ_0000041

# ATTACHMENT B

## INFORMATION TO BE SEIZED

The **SUBJECT DEVICE** shall be searched for evidence, fruits, and
instrumentalities relating to violations of Title 18, United States Code, Sections
2251 (sexual exploitation of children), 2252 (activities relating to material
involving the sexual exploitation of children), and 2252A (activities relating to
material constitution or containing child sexual abuse material) (the "Subject
Offenses"), committed by Jacob Israel Walden, Ryan Edward Hine, and others
known and unknown from June 2020 through the present day, including but
not limited to:

1. Any and all images or visual depictions relevant to the Subject
   Offenses.

2. Any and all evidence of applications, social media accounts, or
   website accounts that could be used to facilitate the Subject
   Offenses, including any and all usernames or passwords.

3. Any and all records in any format or medium (including, but not
   limited to: notes, e-mail messages, chat logs and electronic
   messages, social media accounts, peer-to-peer file sharing
   applications, online accounts or applications, or other digital data
   files and web cache information):

   a. identifying persons transmitting, through interstate or foreign
      commerce by any means, including, but not limited to the United
      States Mail, common carrier, computer, or some other facility or
      means of interstate or foreign commerce, any child sexual abuse
      material or any visual depictions of minors engaged in sexually
      explicit conduct;

   b. concerning the production, receipt, transmission, shipment,
      distribution, possession, production, order, purchase, request,
      trading, or sharing of child sexual abuse material or visual
      depictions of minors engaged in sexually explicit conduct;

26

c. concerning communications between individuals about child sexual abuse material or the existence of sites on the Internet that contain child sexual abuse material or that cater to those with an interest in child sexual abuse material;

d. concerning membership in online groups, clubs, or services that provide or make accessible child sexual abuse material to members;

e. concerning to the preparation, purchase, and/or acquisition of names, mailing lists, supplier lists, mailing address labels, or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate or foreign commerce by any means, including, but not limited to the United States Mail, common carrier, computer, or some other facility or means of interstate or foreign commerce, any child sexual abuse material or any visual depiction of minors engaged in sexually explicit conduct, including registries regarding peer-to-peer file-sharing software communications and participants in peer-to-peer file-sharing software networks;

f. concerning any accounts with an Internet Service Provider and any internet protocol addresses utilized by the device;

g. concerning online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage;

h. concerning communications concerning the commission of the Subject Offenses;

i. concerning who used, owned, or controlled the **SUBJECT DEVICE** the ownership of the **SUBJECT DEVICE**, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

j. concerning the times when the device was used;

27

DOJ_0000043

k.  concerning software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

l.  concerning the lack of such malicious software;

m. concerning the attachment to the device of other storage devices or similar containers for electronic evidence;

n.  concerning counter-forensic programs (and associated data) that are designed to eliminate data from the device;

o.  concerning passwords, encryption keys, and other access devices that may be necessary to access the device;

p.  concerning the device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

4.  Documentation and manuals that may be necessary to access the device or to conduct a forensic examination of the device.

5.  Any and all credit card and other financial information, including, but not limited, to bills and payment records, reflecting evidence of the purchase or sale of child sexual abuse material or payment for sex or sexual acts.

6.  Contextual information necessary to understand the evidence described in this attachment.

For purposes of authentication at trial, the Government is authorized to retain a digital copy of all seized information authorized by the Warrant for as long as is necessary for authentication purposes.

SENSITIVE

# Exhibit 1

SENSITIVE

**TO: Clerk's Office**
**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

_____

**APPLICATION FOR LEAVE**
**TO FILE DOCUMENT UNDER SEAL**



*********************************

United States of America

-v.-

Jacob Israel Walden

24-MJ-481 _____

Docket Number

*********************************

SUBMITTED BY: Plaintiff____ Defendant____ DOJ ✔
Name: Leonid Sandlar
Firm Name: DOJ - USAO EDNY
Address:  271-A Cadman Plaza East
          Brooklyn, NY 11201
Phone Number: 718-254-6879
E-Mail Address: leonid.sandlar@usdoj.gov

INDICATE UPON THE PUBLIC DOCKET SHEET: YES ____ NO ✔
If yes, state description of document to be entered on docket sheet:

_____

_____

_____

**A) If pursuant to a prior Court Order:**
Docket Number of Case in Which Entered:_____
Judge/Magistrate Judge:_____
Date Entered:_____

_____

**B) If a new application,** the statute, regulation, or other legal basis that
authorizes filing under seal

ongoing investigation, risk of flight_____

**ORDERED SEALED AND PLACED IN THE CLERK'S OFFICE,**
**AND MAY NOT BE UNSEALED UNLESS ORDERED BY**
**THE COURT.**

DATED: Brooklyn                    , NEW YORK
       7/30/24

                        *Cheryl Pollak*

**U.S. MAGISTRATE JUDGE**

RECEIVED IN CLERK'S OFFICE_____
                                    DATE

**MANDATORY CERTIFICATION OF SERVICE:**
**A.)** ___ A copy of this application either has been or will be promptly served upon all parties to this action, **B.)** ___ Service is excused by 31 U.S.C. 3730(b), or by
the following other statute or regulation:_____; or **C.)** ✔ This is a criminal document submitted, and flight public safety, or security are significant concerns.
(Check one)

        7/30/2024                    *Leonid Sandlar*
          DATE                          SIGNATURE

DOJ_0000046