CMM:LS
F. #2024R00485

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

JACOB ISRAEL WALDEN,

             Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

Docket No. 24-CR-521 (GRB)

THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO THE
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York
271-A Cadman Plaza East
Brooklyn, New York 11201

Leonid Sandlar
Trial Attorney
    (Of Counsel)

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS .................................................................................................... 1

    A. The Prior Investigation ....................................................................................... 1

    B. The Border Search ............................................................................................ 3

        1. The Border Inspection and Manual Search of the Defendant's Phone ........................ 3

        2. The Forensic Search of the Defendant's Phone ................................................. 5

    C. The Defendant's Arrest ....................................................................................... 6

    D. The Search Warrant Application ......................................................................... 6

    E. The Indictment ................................................................................................... 7

ARGUMENT ....................................................................................................................... 8

    A. The Border Search Exception Applies Squarely to the Search of the Defendant's Phone at JFK Airport ....................................................................................... 8

        1. Applicable Law ........................................................................................... 8

        2. The Search of the Defendant's Cell Phone was a Classic Border Search ................. 11

        3. The Defendant's Arguments Otherwise are Unavailing ........................................ 13

    B. A Warrant is Not Required for a Search of a Cell Phone at the Border ......................... 17

    C. HSI Agents Had Reasonable Suspicion to Search the Phone .................................... 20

    D. The Time Between the Seizure and Search of the Defendant's Cell Phone Was Not Unreasonable .............................................................................................. 22

        1. Applicable Law ......................................................................................... 23

        2. Smith Does Not Apply to a Border Search ....................................................... 23

        3. Any Delay in Obtaining the Warrant Here Was Not Unreasonable .......................... 24

    E. Suppression Should be Foreclosed by the Application of the Good Faith Exception ...... 27

        1. Applicable Law ......................................................................................... 27

2. HSI Agents Reasonably Relied on Binding Circuit Precedent ................................... 28

3. HSI Agents Reasonably Relied on a Valid Warrant .................................................... 30

4. The Cost of Suppression Outweighs the Benefits........................................................ 32

F. The Motion Should Be Denied Without an Evidentiary Hearing .................................... 34

CONCLUSION ............................................................................................................................... 35

TABLE OF AUTHORITIES

**Cases**

Alasaad v. Mayorkas,
  988 F.3d 8 (1st Cir. 2021) ............................................................................... 11, 18

Davis v. United States,
  564 U.S. 229 (2011) ............................................................................................... 27

Herring v. United States,
  555 U.S. 135 (2009) ..................................................................................... 27, 32, 33

Navarette v. California,
  572 U.S. 393 (2014) ............................................................................................... 20

Riley v. California,
  573 U.S. 373 (2014) ......................................................................................... 17, 18

Terry v. Ohio,
  392 U.S. 1 (1968) ............................................................................................. 20, 21

United States v. Aguiar,
  737 F.3d 251 (2d Cir. 2013) .................................................................................. 28

United States v. Alisigwe,
  No. 22-CR-425 (VEC), 2023 WL 8275923 (S.D.N.Y. Nov. 30, 2023) ................ 10, 19, 20, 29

United States v. Any and All Funds on Deposit in Account Number 0139874788,
  2015 WL 247391 (S.D.N.Y. Jan. 20, 2015) ........................................................... 15

United States v. Ashburn,
  76 F. Supp. 3d 401 (E.D.N.Y. 2014) ..................................................................... 35

United States v. Bongiovanni,
  No. 1:19-CR-227 JLS (MJR), 2022 WL 17481884 (W.D.N.Y. Aug. 5, 2022),
  report and recommendation adopted, No. 19-CR-227 (JLS) (MJR),
  2022 WL 17139489 (W.D.N.Y. Nov. 22, 2022) ................................. 12, 14, 19, 29

United States v. Cano,
  934 F.3d 1002 (9th Cir. 2019) ............................................................. 11, 13, 18, 25

United States v. Castillo,
  70 F.4th 894 (5th Cir. 2023) .................................................................................. 11

United States v. Cortez,
  449 U.S. 411 (1981) ............................................................................................... 20

United States v. Cotterman,
  709 F.3d 952 (9th Cir. 2013) ................................................................................. 22

United States v. Djibo,
  151 F. Supp. 3d 297 (E.D.N.Y. 2015) ................................................................... 16

United States v. Ezeiruaku,
  936 F.2d 136 (3d Cir. 1991) .................................................................................. 10

United States v. Flores-Montano,
  541 U.S. 149 (2004) ........................................................................................... 9, 25

United States v. Fox,
  No. 23-CR-227 (NGG), 2024 WL 3520767 (E.D.N.Y. July 24, 2024) ............. 16, 17

United States v. Franco,
  No. 23-CR-394 (DG) (E.D.N.Y. Oct. 15, 2024) ................................. 18, 19, 25, 32

United States v. Ganias,
824 F3d 199 (2d Cir. 2016)..................................................................................... 31

United States v. Gavino,
No. 22-CR-136 (RPK), 2024 WL 85072 (E.D.N.Y. Jan. 7, 2024) .................................... 14, 19

United States v. Irving,
452 F.3d 110 (2d Cir. 2006)........................................................................... passim

United States v. Kamaldoss,
No. 19-CR-543 (ARR), 2022 WL 1200776 (E.D.N.Y. Apr. 22, 2022)........................... passim

United States v. Kolsuz,
890 F.3d 133 (4th Cir. 2018) ..................................................................... 13, 15, 19

United States v. Leon,
468 U.S. 897 (1984).......................................................................................... 27, 30

United States v. Levy,
803 F.8d 120 (2d Cir. 2015).......................................................................... passim

United States v. Linarez-Delgado,
259 F. App'x 506 (3d Cir. 2007) ............................................................................. 28

United States v. Mendez,
103 F.4th 1303 (7th Cir. 2024) ............................................................. 11, 13, 14, 18

United States v. Molina-Isidoro,
884 F.3d 287 (5th Cir. 2018) ................................................................................. 18

United States v. Montoya de Hernandez,
473 U.S. 531 (1985)...................................................................... 9, 13, 20, 24

United States v. Nkongho,
107 F.4th 373 (4th Cir. 2024) .................................................................... 14, 26

United States v. Oladokun,
15 Cr. 559 (BMC), 2016 WL 4033166 (E.D.N.Y. July 27, 2016) .......................... 19

United States v. Pena,
961 F.2d 333 (2d Cir. 1992)................................................................................. 34

United States v. Ramsey,
431 U.S. 606 (1977)........................................................................................... 9

United States v. Raymonda,
780 F.3d 105 (2d Cir. 2015)............................................................................ 27, 28

United States v. Reingold,
731 F.3d 204 (2d Cir. 2013)................................................................................. 33

United States v. Rosa,
626 F.3d 56 (2d Cir. 2010)............................................................................. 27, 32

United States v. Singh,
No. 12-CR-121 (DLI), 2012 WL 2501032 (E.D.N.Y. June 27, 2012) ...................... 10

United States v. Smith,
673 F. Supp. 3d 381 (S.D.N.Y. 2023)......................................................... 10, 19, 28, 29

United States v. Smith,
967 F.3d 198 (2d Cir. 2020)............................................................... 22, 23, 24, 26

United States v. Sultanov,
No. 22-CR-148 (NRM), 2024 WL 3520443 (E.D.N.Y. July 24, 2024) ................... 19, 30

United States v. Swarovski,
592 F.2d 131 (2d Cir. 1979)..................................................................... 10, 14, 19

United States v. Tineo,
  No. 23-CR-223 (DLI), 2024 WL 2862289 (E.D.N.Y. June 6, 2024) ................................ 19, 31

United States v. Touset,
  890 F.3d 1227 (11th Cir. 2018) ............................................................... 11, 13, 22

United States v. Turner,
  639 F. Supp. 982 (E.D.N.Y. 1986) ......................................................................... 10

United States v. Vergara,
  884 F.3d 1309 (11th Cir. 2018) ............................................................................ 18

United States v. Watson,
  404 F.3d 163 (2d Cir. 2005).................................................................................. 34

United States v. Williams,
  553 U.S. 285, 307 (2008)...................................................................................... 33

United States v. Wilson,
  699 F.3d 235 (2d Cir. 2012).................................................................................. 12

United States v. Xiang,
  67 F.4th 895 (8th Cir. 2023) ............................................................................ 15, 19

**Statutes**

6 U.S.C. § 203(1) ................................................................................................ 12
18 U.S.C. § 3509(m)(1) ....................................................................................... 25
19 U.S.C. § 1401(c) ............................................................................................ 15
19 U.S.C. § 1401(i) ............................................................................................. 12
19 U.S.C. § 1589a .......................................................................................... 12, 15
19 U.S.C. § 1595a(d) .......................................................................................... 15

<u>PRELIMINARY STATEMENT</u>

The government respectfully submits this memorandum of law in opposition to the defendant's motion to suppress evidence, ECF No. 58 ("Motion" or "Mot."). The defendant seeks the suppression of evidence obtained from a manual search of his cell phone at John F. Kennedy International Airport ("JFK Airport") on April 21, 2024, and a forensic examination completed on May 1, 2024, on the basis that it was obtained in violation of the Fourth Amendment. For the reasons that follow, the defendant's arguments should be rejected, and the Court should deny the defendant's motion in its entirety without an evidentiary hearing.

<u>STATEMENT OF FACTS</u>[1]

A.    <u>The Prior Investigation</u>

Since at least March 2022, agents from the Child Exploitation Investigative Group of Homeland Security Investigations ("HSI"), the investigative arm of the U.S. Department of Homeland Security ("DHS"), located in Newark, New Jersey, investigated a large-scale scheme which advertised, sold, and distributed child pornography to adult male buyers located within the United States and abroad. DX A ¶ 8. Eventually, HSI agents identified the leader of the scheme, Ryan Edward Hine, who controlled multiple text message and chat applications, electronic payment applications, and email accounts with variations of usernames, including, but not limited to, "Lacie Love," "Rosie Snow," and "Kandie Kae" when advertising, selling, and distributing child pornography. <u>Id.</u> ¶ 9. Grand jury subpoena returns from Cash App, an

---

[1] These facts are drawn from the Complaint in this case (ECF No. 1); the search warrant and supporting affidavit of HSI Special Agent Jaclyn Duchene, attached to the defendant's motion as DX A (ECF No. 59-1); a report of investigation of HSI Special Agent Christopher Moriarty, attached to the defendant's motion as DX B (ECF No. 59-2); additional exhibits attached hereto, principally the declaration of Special Agent Moriarty (attached as Exhibit 1); materials produced to the defendant as discovery in this case; and facts that the government proffers in connection with the instant motion and would establish at an evidentiary hearing.

electronic payment application used on mobile devices, showed that Hine controlled a Cash App account registered to the email address RosieSnow69@gmail.com to receive electronic payments from buyers of child pornography. Id. ¶ 10. At various times, the Cash App account utilized public identifiers $rosiesnow69, $laciexlove69, and $kandiexkae69. Id.

In February 2023, Hine was arrested. Id. ¶ 11; see also United States v. Hine, Case No. 23-cr-4012 (W.D. Mo.). In a voluntary post-arrest interview with law enforcement, Hine acknowledged that the Cash App account associated with RosieSnow69@gmail.com was created for the purpose of receiving payments from buyers of child pornography that Hine would then distribute to the buyers through various messaging applications. DX A ¶ 11.

In September 2023, HSI agents, reviewing this Hine-controlled Cash App account, identified that Cash App accounts "Jake W" and "JW0543" made approximately thirteen (13) payments totaling $605 to the Hine-controlled Cash App account from October 2020 to November 2021. Id. ¶ 14. Subpoena returns from Cash App for the "Jake W" account provided the following identifying information for the registered user of the account: the name (Jake Walden), the date of birth, the Social Security number, and an address in Woodmere, New York. Id. ¶ 15. The returns also showed that the "Jake W" account made payments to the Hine-controlled account using a J.P. Morgan Chase credit card ending in -0894. Id. ¶ 16. Through subsequent investigative steps, including a review of law enforcement databases and open-source information, law enforcement officers were able to link the defendant, Jacob Walden, to the above personal identifying information for the "Jake W" account. Id. ¶ 17. In September 2023, HSI Special Agent Christopher Moriarty ("SA Moriarty") created a "subject record" for the defendant in HSI's computer-based reporting system, Moriarty Decl. ¶ 4, which enabled the case agent to receive notifications about Walden's travel plans. Id., DX A ¶ 18.

B.    <u>The Border Search</u>

After SA Moriarty was alerted that the defendant was scheduled to depart JFK Airport in Queens, New York on April 21, 2024 aboard an international flight to Rome, Italy, <u>id.</u> ¶ 19, SA Moriarty arranged to inspect the defendant and his property at the airport on the suspicion that the defendant possessed child pornography that he would transport across the international border.  Moriarty Decl. ¶¶ 5-6.

1.    <u>The Border Inspection and Manual Search of the Defendant's Phone</u>

On April 21, 2024, SA Moriarty and HSI Special Agent Chris Gnall responded to Terminal 7 of JFK Airport, accompanied by an officer of Customs and Border Protection ("CBP").  DX B at 2.  After Walden was observed scanning his airline boarding pass and entering the secure, outbound jetway with his family to board his international flight, the HSI agents stopped the defendant to conduct a border search of the property in his possession for contraband (here, child pornography) or evidence of such contraband.  DX A ¶ 20.  During the inspection, the defendant was accompanied by his wife and one minor child, while his other children boarded the plane with their nanny.  DX B at 2.

First, SA Moriarty asked the defendant and his wife for identification documents. <u>Id.</u>  The defendant and his wife presented their United States passports, and the defendant also presented his New York State driver's license.  <u>Id.</u>   SA Moriarty asked the defendant and his wife for their mobile phones.  <u>Id.</u> at 2-3.  The defendant declared a silver Apple iPhone as his property and provided his password to SA Moriarty voluntarily when asked, as did the defendant's wife with respect to her own cell phone.  DX A ¶ 21; DX B at 2-3.  SA Moriarty first reviewed the defendant's wife's phone and returned it to her.  DX B at 3.  SA Moriarty then conducted a manual review of the defendant's cell phone, which he placed in "airplane mode." <u>Id.</u>  During the manual review of the phone, SA Moriarty identified a Cash App account utilizing

3

the display name "Jake W" and identifier $jakewny on the device. DX A ¶ 22 (photo). SA

Moriarty also observed several file sharing applications on the phone including Dropbox and

Telegram, which SA Moriarty knew to be utilized by Hine to advertise, communicate and

distribute child pornography to buyers. Id. ¶ 25. SA Moriarty also observed an application that

looked like a calculator but appeared to be designed to store hidden photos within the

application. Id.

   Then, at the request of SA Moriarty, the defendant presented his wallet for

inspection. DX A ¶ 23. Among the cards in the defendant's wallet was a J.P. Morgan Chase

credit card ending in -0894, which SA Moriarty identified as a payment source for the "Jake W"

account that had made payments to Hine's Cash App account. Id. ¶ 24.

   During the border inspection, the defendant asked the HSI agents to provide more

information about the reason for the inspection. Id. ¶ 26. SA Moriarty stated that he worked

child exploitation investigations for HSI, and that the defendant had been identified as a subject

of interest during an ongoing investigation. DX B at 3. SA Moriarty further stated that he was

interested in the defendant's communication with "Rosie Snow" and "Lacie Love." Id. The

defendant responded immediately that "Rosie" and "Lacie" were not "one person" but a "group

that went by different names." Id. In apparent reference to child pornography, the defendant

also stated that he went to "rehab" and that his wife was aware of his "issues." Id. Walden's

wife separately stated to the HSI agents that she was aware of her husband's "issues" and that the

defendant had gone to "rehab years ago." Id.

   Based on the totality of the factors—including the discovery of the credit card

linked to a Cash App account used to make payments to a Hine-controlled account, the

defendant's statements regarding "Rosie" and "Lacie," the defendant's and his wife's statements

regarding his "issues," and the surreptitious photo-storage application and payment applications discovered during the manual search—SA Moriarty seized the defendant's phone following the manual inspection.  DX A ¶ 27.  SA Moriarty returned the contents of the wallet to the defendant and provided a seizure of property receipt for the phone, after which the defendant and his wife and child boarded their outbound flight to Italy.  DX B at 4.  SA Moriarty placed the defendant's phone in a plastic evidence bag and transported it to HSI's Newark office.  Id. at 4.

Later on April 21, 2024, Saul Bienenfeld emailed SA Moriarty to identify himself as the defendant's counsel.  Moriarty Decl., Attachment A.[2]  On the same day, SA Moriarty and Special Agent Jaclyn Duchene ("SA Duchene") spoke to counsel by phone and informed counsel that the defendant was identified as a subject in a child exploitation investigation.  DX B at 4.

### 2. The Forensic Search of the Defendant's Phone

On April 22, 2024, SA Moriarty transferred the evidence bag containing the defendant's phone to the computer forensic laboratory at HSI's Newark office to forensically analyze the device pursuant to border authority.  DX A ¶ 28; DX B at 4.  By May 1, 2024, the lab created a forensic extraction of the data on the cell phone, DX A ¶ 30, permitting the agents to search the contents of the defendant's phone as of the date of the seizure.

In May 2024, SA Moriarty reviewed the forensic extraction and identified numerous images and videos containing child pornography and conversations involving the production, distribution, receipt of the same.  Id. ¶ 30 n.1.  Between May 2024 and June 2024, in furtherance of the investigation, SA Moriarty (i) served DHS summonses on service providers,

---

[2] In the email, counsel wrote to SA Moriarty "requesting that you do not search his phone without the benefit of a warrant" but did not request its return.  Moriarty Decl., Attachment A.  In his response, SA Moriarty asked counsel to review "customs officials' legal authority to conduct inspections and searches of merchandise and persons at the functional equivalent of the border."  Id.

(ii) identified and arranged for the interview of a minor victim whose pornographic material was discovered within the defendant's phone, and (iii) conferred with the Office of the Principal Legal Advisor of Immigration and Customs Enforcement ("ICE") about HSI's border search authority.  Moriarty Decl. ¶¶ 10-13.

> ### C.    The Defendant's Arrest

On July 30, 2024, the evening before the defendant was scheduled to depart the country alone on an outbound flight to Mexico, SA Duchene applied for an arrest warrant.  See Complaint, ECF No. 1.  The Honorable Cheryl Pollak, United States Magistrate Judge for the Eastern District of New York, signed a warrant authorizing the defendant's arrest upon a Complaint charging the defendant with possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B).  Id.  The defendant was arrested on July 31, 2024, and presented the following day before the Honorable Sanket J. Bulsara, then United States Magistrate Judge for the Eastern District of New York.  See Min. Entry dated Aug. 2, 2024.

> ### D.    The Search Warrant Application

On August 7, 2024, SA Duchene applied for a warrant in the U.S. District Court for the District of New Jersey to search the extraction of the defendant's cell phone.  See generally DX A.  SA Duchene's affidavit in support of the warrant application described the Hine investigation, the identification of the defendant as the buyer of child pornography from Hine, the circumstances of the warrantless border search at JFK Airport on April 21, 2024, and the forensic extraction completed on May 1, 2024.  See id. ¶¶ 8-32.  To apprise the magistrate of the relevant conduct by law enforcement officers, the affidavit disclosed that the review of the forensic extraction had confirmed the presence of child pornography, but HSI did not rely on this evidence to establish probable cause to search the extraction.  Id. ¶ 30 n.1.  The affidavit stated that if the magistrate approved the search warrant, for efficiency, HSI would "continue searching

the existing forensic extraction" that was already created by the forensics lab "rather than obtaining a new, second, identical extraction" from the physical device. Id. ¶ 32 n.2. The affidavit disclosed that HSI believed that the phone was lawfully in HSI's possession, pursuant to its border search authority, and HSI already had all of the necessary authority to continue searching the phone, where "neither the Supreme Court, the Second Circuit, nor the Third Circuit has yet opined on the issue." Id. ¶ 32 & n.2. SA Duchene applied for a warrant "in an abundance of caution" in view of two intervening decisions in the Eastern District of New York regarding the scope of border search authority as applied to electronic devices. Id. ¶ 32

On August 7, 2024, the Honorable James B. Clark III, United States Magistrate Judge for the District of New Jersey, signed the search warrant (the "Warrant") authorizing the examination of the forensic image of defendant's cell phone and the seizure of evidence, fruits, and instrumentalities relating to child pornography offenses. See id.

Pursuant to the Warrant, the HSI agents continued to review the forensic extraction of the defendant's phone. In addition, between August 2024 and December 2024, the agents served grand jury subpoenas, identified and interviewed additional minor victims, and obtained additional search warrants for the defendant's accounts at Mega (a company that provides encrypted cloud-based storage and file hosting services) and Snapchat (a social media company).

E.    The Indictment

On December 18, 2024, a grand jury sitting in the Eastern District of New York returned an indictment charging the defendant with two counts of sexual exploitation of children, in violation of Title 18, United States Code, Section 2251(a); one count of receipt of child pornography, in violation of Title 18, United States Code, Section 2252(a)(2); one count of possession of child pornography, in violation of Title 18, United States Code, Section

2252(a)(4)(B); and two counts of access with intent to view child pornography, in violation of

Title 18, United States Code, Section 2252(a)(4)(B).  See ECF No. 31.

ARGUMENT

The defendant moves to suppress evidence obtained from his cell phone based on several alleged violations of the Fourth Amendment.  Specifically, the defendant argues (i) that the border search exception to the Fourth Amendment's warrant requirement should not apply to the searches of the defendant's phone; (ii) that the initial searches of his cell phone were unreasonable absent a search warrant; (iii) that there was an unreasonable delay in obtaining the Warrant; and (iv) that the good faith exception to the exclusionary rule should not apply.  Each of these arguments fails, and the Motion should be denied in its entirety.  Additionally, because these issues can be decided without resolving any factual dispute, the Motion should be denied without an evidentiary hearing.

A.    The Border Search Exception Applies Squarely to the Search of the Defendant's Phone at JFK Airport

First, the defendant argues that the border search exception should not apply to the manual and forensic searches of his cell phone because there was no government interest justifying the application of the doctrine (Mot. at 8-12), or else because it was a "deliberate tactical choice" to evade the warrant requirement (id. at 13-16).   These arguments should be rejected because they are directly foreclosed by Second Circuit law.

1.    Applicable Law

a.    Border Searches Generally

The border search exception is a "longstanding, historically recognized exception to the Fourth Amendment's general principle that a warrant be obtained" for a search.  United States v. Ramsey, 431 U.S. 606, 621 (1977) (explaining that the same Congress that had

proposed the Bill of Rights had already enacted the first customs statute, showing that members of that Congress did not regard border searches as unreasonable "and they are not embraced within the prohibition of the [Fourth] [A]mendment"); United States v. Irving, 452 F.3d 110, 123 (2d Cir. 2006) ("Border searches[,] from before the adoption of the Fourth Amendment, have been considered reasonable"). That longstanding doctrine reflects that the government's interest in protecting people and property is "at its zenith" at the international border. United States v. Flores-Montano, 541 U.S. 149, 152 (2004). For its part, "[t]he expectation of privacy [is] less at the border than in the interior." United States v. Montoya de Hernandez, 473 U.S. 531, 539 (1985). Consequently, the "Fourth Amendment balance between the interests of the Government and the privacy right of the individual is . . . struck much more favorably to the Government at the border." Id. at 540.

It is thus well-settled that, under the border doctrine, routine searches of a traveler's person and belongings are "not subject to any requirement of reasonable suspicion, probable cause, or warrant." Montoya de Hernandez, 473 U.S. at 538. "Routine searches include those searches of outer clothing, luggage, a purse, wallet, pockets, or shoes which . . . do not substantially infringe on a traveler's privacy rights." Irving, 452 F.3d at 123. Even non-routine border searches, such as a strip searches, do not require a warrant or probable cause. Rather, a non-routine border search is valid "if it is supported by reasonable suspicion." Irving, 452 F.3d at 124. See, e.g., United States v. Levy, 803 F.3d 120, 123 n.3 (2d Cir. 2015) (noting that "non-routine" searches require reasonable suspicion and that the Supreme Court and the Second Circuit "have suggested that the label 'non-routine' should generally be reserved for intrusive border searches of the person (such as body-cavity searches or strip searches), not belongings").

The Second Circuit applies the border search exception to travelers leaving the country as well as those entering the county.  See, e.g., United States v. Swarovski, 592 F.2d 131, 133 (2d Cir. 1979) (warrantless searches of defendant's luggage as he was about to depart United States from JFK Airport did not violate his Fourth Amendment rights); United States v. Turner, 639 F. Supp. 982, 986 (E.D.N.Y. 1986) ("The Second Circuit has clearly held that departing passengers and outgoing goods may be searched without the need for probable cause, a warrant, or even reasonable suspicion").  So does the Third Circuit, the jurisdiction in which the defendant's phone was searched forensically.  United States v. Ezeiruaku, 936 F.2d 136, 143 (3d Cir. 1991) ("[T]he traditional rationale for the border search exception applies as well in the outgoing border search context.").

It is also well-settled that an international airport such as JFK Airport is the "functional equivalent of a border and thus a search there may fit within the border search exception."  Irving, 452 F.3d at 123; see also United States v. Singh, No. 12-CR-121 (DLI), 2012 WL 2501032, at *3 (E.D.N.Y. June 27, 2012) ("[A]irports such as JFK are functionally equivalent to international borders").

b.    Border Searches of Electronic Devices

The Supreme Court and the Second Circuit have not addressed yet (i) whether a border searches of electronic devices, such as cell phones, constitutes "routine" or "non-routine" searches, or (ii) the level of suspicion, if any, required for such searches.[3]  The "consensus

---

[3] The Second Circuit may resolve this issue soon.  The issue of border searches of electronic devices is pending before the Second Circuit in three criminal cases:  United States v. Alisigwe, No. 22-CR-425 (VEC), 2023 WL 8275923 (S.D.N.Y. Nov. 30, 2023), appeal pending, No. 24-960 (2d Cir.); United States v. Kamaldoss, No. 19-CR-543 (ARR), 2022 WL 1200776 (E.D.N.Y. Apr. 22, 2022), appeal pending, No. 24-824 (2d Cir.); United States v. Smith, 673 F. Supp. 3d 381 (S.D.N.Y. 2023), appeal pending, No. 24-1680 (2d Cir.).

among the circuit courts," however, is that "brief, manual searches of a traveler's electronic device are routine border searches requiring no individualized suspicion at all." United States v. Mendez, 103 F.4th 1303, 1307 (7th Cir. 2024); see also United States v. Castillo, 70 F.4th 894, 897-98 (5th Cir. 2023) (holding that for "manual cell phone searches at the border," circuits "have uniformly held" that no warrant or reasonable suspicion is required); Alasaad v. Mayorkas, 988 F.3d 8, 19 (1st Cir. 2021) ("[B]asic border searches [of electronic devices] are routine searches and need not be supported by reasonable suspicion."); United States v. Cano, 934 F.3d 1002, 1016 (9th Cir. 2019) ("[M]anual searches of cell phones at the border are reasonable without individualized suspicion").

According to this emerging consensus, forensic searches of electronic devices require, at most, reasonable suspicion. Mendez, 103 F.4th at 1309 ("No circuit court . . . require[s] more than reasonable suspicion to support even the most intrusive electronics search at the border"); Castillo, 70 F.4th at 897-98 (same); Alasaad, 988 F.3d at 16-18 (collecting cases). Cf. United States v. Touset, 890 F.3d 1227, 1233 (11th Cir. 2018) (requiring no suspicion for forensic border search of electronic devices).

### 2. The Search of the Defendant's Cell Phone was a Classic Border Search

The defendant's argument that the border search exception does not apply to the search of his cell phone at JFK Airport flies in the face of the established law and the circumstances of this case which have all the attributes of a classic border search.

First, the search of Walden's phone took place on the outbound jetway at JFK Airport, which is unquestionably the "functional equivalent of a border" in which a search may fit within the border search exception. Irving, 452 F.3d at 123.

Second, the agents who investigated and searched the defendant were part of HSI—a component of DHS specifically focused on investigating "transnational crime" and

"violations of the customs and immigration laws of the United States."  See Homeland Security

Investigations, "What We Investigate," available at https://www.dhs.gov/hsi/investigate (last

accessed May 26, 2025).  See also United States v. Bongiovanni, No. 1:19-CR-227 JLS (MJR),

2022 WL 17481884, at *3 (W.D.N.Y. Aug. 5, 2022), report and recommendation adopted, No.

19-CR-227 (JLS) (MJR), 2022 WL 17139489 (W.D.N.Y. Nov. 22, 2022) ("HSI combats the

illegal movement of people, money, or contraband in international commerce and over the

United States' borders.").  Specifically, SA Moriarty was part of the Child Exploitation

Investigations Unit, which targets predators who "create, share, sell, purchase and view child

pornography . . . using the Internet - crossing physical and digital borders as the material moves

between people and servers from one country to another."  See Homeland Security

Investigations, "The Child Exploitation Threat," available at https://www.ice.gov/about-

ice/hsi/investigate/child-exploitation (last accessed May 26, 2025).

    Third, HSI agents, such as SA Moriarty, are authorized "customs officers."  See

19 U.S.C. § 1401(i) (authorizing the designation of "customs officers").[4]  As customs officers,

HSI agents are authorized to enforce the customs laws of the United States by searching for

merchandise at the border, functional equivalent of the border, and extended border, for, among

other reasons, to prevent prohibited merchandise from being imported into or exported from the

United States.  See 19 U.S.C. § 1589a (authorizing customs officers to investigate any violation

of federal law).

---

[4] The Homeland Security Act of 2002, Pub. L. 107–296, 116 Stat. 2135 (Nov. 25, 2002) (codified at 6 U.S.C. § 101 et seq.) transferred all functions (including legal authorities and operational programs) of the U.S. Customs Service from the Department of the Treasury to DHS.  6 U.S.C. § 203(1).  The Secretary of DHS delegated customs law authorities to ICE.  DHS Delegation Number 7030.2, Delegation of Authority to the Assistant Secretary for U.S. Immigration and Customs Enforcement § 2(A) (Nov. 13, 2004).  See United States v. Wilson, 699 F.3d 235, 240 n.2 (2d Cir. 2012)

Fourth, the search at issue involved a classic search for contraband (here, digital child pornography) transported across the international border, which is widely recognized to fit comfortably within the traditional border search doctrine. See Mendez, 103 F.4th at 1309 ("While Mendez argues that cell phone searches are untethered to the border search doctrine's justifications, this case illustrates that cell phones can contain the contraband the border search doctrine means to intercept: here, digital contraband in the form of child pornography."); Touset, 890 F.3d at 1233 (at the border, "[j]ust as the United States is entitled to search a fuel tank for drugs, . . . it is entitled to search a flash drive for child pornography"); Cano, 934 F.3d at 1014 ("Although cell phone data cannot hide physical objects, the data can contain digital contraband. The best example is child pornography.").

### 3.      The Defendant's Arguments Otherwise are Unavailing

The defendant advances several specific arguments why the border doctrine should not apply, none of which are compelling.[5]  First, the defendant argues that a proper border search must have some "nexus" to the "sovereign interests that serve the foundation for the border exception," which was purportedly lacking here. Mot. at 8-10.  In support of this argument, the defendant relies exclusively on the unique standard adopted by the Fourth Circuit, which requires searches of electronic devices at the border to be based on reasonable suspicion of an offense that bears some "nexus" to the purpose of the border search exception.  See id. at 9 (citing United States v. Kolsuz, 890 F.3d 133 (4th Cir. 2018)); id. at 9-10 (citing United States v. Aigbekaen, 943 F.3d 713, 721 (4th Cir. 2019)); id. at 10 (citing United States v. Nkongho, 107

---

[5] The defendant does not suggest that the standard customs inspection of his person or wallet presents any constitutional problem.  Nor could he: it is long established that a search of personal effects taken from or bound for an overseas flight is a routine border search that may be conducted without reasonable suspicion.  Montoya de Hernandez, 473 U.S. at 538.

F.4th 373 (4th Cir. 2024)).  The Fourth Circuit's unique "nexus" requirement, however, has not

been extended by the Second Circuit, where customs officers at the border may search for

evidence of even those criminal offenses that do not bear any nexus to the border.  See Levy, 803

F.3d at 123 (upholding a border search where customs officers inspected and copied pages from

the appellant's notebook without a warrant based on suspicion that he participated in a stock

manipulation scheme).  As district courts within the Second Circuit have observed, "Levy thus

forecloses . . . the Fourth Circuit's position that [border searches] must bear a 'nexus to the

border search exception's purposes . . .'"  United States v. Gavino, No. 22-CR-136 (RPK), 2024

WL 85072, at *5 (E.D.N.Y. Jan. 7, 2024) (citing Aigbekaen, 943 U.S. at 721); Bongiovanni,

2022 WL 17481884, at *9 (same).  Of course, even if a "nexus" were required, which it is not,

the requirement is satisfied here where the search of defendant's phone for child pornography is

consistent entirely with the border search exception's purpose of "disrupting efforts to export or

import contraband."  Aigbekaen, 943 U.S. at 721; Mendez, 103 F.4th at 1309 ("The

government's interest in detecting child pornography at the border is just as strong as its interest

in intercepting firearms, narcotics, or any other prohibited item.").

       Next, the defendant argues that the border search exception does not apply unless

a search is tethered to a government interest "that, in the past, has been regulated by specific

governmental authority."  Mot. at 11-13.  The defendant seems to argue that a search is deficient

if it does not target a list of goods "specifically delineated by statute which can be subject to exit

searches" such as biological materials, munitions, and furs.  Id. at 13.  The defendant's argument

is foreclosed completely by Second Circuit authority that (i) departing passengers and outgoing

goods may be searched without a warrant pursuant to border authority, Swarovski, 592 F.2d at

133; and (ii) border searches may not be limited to crimes that "statute or regulation specifically

authorizes [customs officers] to investigate," Levy, 803 F.3d at 124.  See also United States v. Xiang, 67 F.4th 895, 900 (8th Cir. 2023)  (in a case involving the search of a device of an outbound passenger, adopting the Second Circuit's "more sensibl[e]" position in Levy that border search authority extends to searches for evidence of criminal conduct even if the crime falls outside the primary duties of a customs officer); Kolsuz, 890 F.3d at 143 ([t]he justification behind the border search exception is broad enough to accommodate . . . the prevention and disruption of ongoing efforts to export contraband illegally").[6]

   Finally, the defendant argues that the search of his phone does not meet the justifications of the border search doctrine because it was a "deliberate tactical choice" by law enforcement to evade the warrant requirement.  Mot. at 13-21.  Here again, the defendant goes against the grain of Second Circuit authority that "the validity of a border search does not depend on whether it is prompted by a criminal investigative motive." Irving, 452 F.3d at 123; Levy, 803 F.3d at 123 (Fourth Amendment does not prohibit a border search that furthers a criminal investigation).  In the absence of appellate authority, the defendant relies on two fact-specific district court rulings that involve particularly offensive searches and adverse credibility findings.

---

[6] Of course, the constitutionality of a search does not depend on authorizing legislation or agency regulations.  Cf. Kolsuz, 890 F.3d at 146 ("That the agency has chosen to adopt these requirements, of course, does not establish that they are constitutionally mandated").  But to the extent that the defendant relies on statutes and regulations, he overlooks the broad statutory powers of customs officials—including HSI agents—to investigate any violation of federal law, see 19 U.S.C. § 1589a, and to identify contraband going outbound and to seize the contraband.  See 19 U.S.C. § 1595a(d) ("Merchandise exported or sent from the United States . . . shall be seized and forfeited to the United States"); 19 U.S.C. § 1401(c) (defining "merchandise" as "goods, wares, and chattels of every description").  See, e.g., United States v. Any and All Funds on Deposit in Account Number 0139874788, 2015 WL 247391, at *6-7 (S.D.N.Y. Jan. 20, 2015) (violations of the mail and wire fraud statutes were sufficient to bring the conduct under 19 U.S.C. § 1595a(d)).

The defendant relies on United States v. Djibo, 151 F. Supp. 3d 297 (E.D.N.Y. 2015), a singular case in which the district court suppressed evidence obtained from the defendant's cell phone after it was seized during an outbound border search at JFK Airport. The court ruled that "sufficient evidence existed to arrest Djibo outside of the airport," but law enforcement "sought to sidestep" constitutional guarantees by subjecting him to a coercive interrogation and a warrantless search of his phone at the border. Id. at 309-10. The agent's subsequent search warrant affidavit "made no mention" that law enforcement officers had already reviewed data from the phone prior to the warrant application, id., while the agent's testimony at the hearing was "evasive[ ]." Id. The unusual fact pattern and adverse credibility finding in Djibo are not applicable here, where there was no probable cause to arrest the defendant prior to the border search at JFK Airport and no colorable claim of custodial interrogation. See Kamaldoss, No. 19-CR-543 (ARR), 2022 WL 1200776, at *8 n.8 (E.D.N.Y. Apr. 22, 2022) (defendant's "heavy reliance" on Djibo was "misplaced").

The defendant also relies on United States v. Fox, No. 23-CR-227 (NGG), 2024 WL 3520767, at *9-12 (E.D.N.Y. July 24, 2024), a ruling expressly limited to its unique facts. In Fox, the law enforcement agent "became interested in seizing the phone in the month prior to [the defendant's] trip while she was located in the United States"; "the search was conducted over one thousand miles from where [the defendant] entered the country"; "the phone was not searched until days later"; and "the interest in the phone derived from a domestic crime [program fraud] without a transnational connection and which was unrelated to CBP's enforcement of border laws." Id. at *9. As in Djibo, the court in Fox found that the affidavit in support of the search warrant application "omitted key details" relating to the prior border search. Id. at *23. Under those specific facts, the district court concluded that this search was unreasonable and fell

outside the border search exception.  Id. at *12.  The court made clear, however, that it was not "attempt[ing] to establish a framework for when manual searches of cell phones seized at the border are reasonable, as other courts have done," and a warrantless border search of a device may be reasonable "[i]n a case with different facts."  Id.

The defendant strains to liken the facts of this case to the offensive searches and the insufficient disclosures in Djibo and Fox by advancing an implausible theory that the HSI agents "believed that there was probable cause for Walden's arrest" but waited to search him at the border six months later specifically to avoid the warrant requirement.  Mot. at 15.  Such conjecture is completely untethered to the facts, which show only that the search was prompted by a valid "criminal investigative motive," Irving, 452 F.3d at 123, to inspect a suspected purchaser of child pornography upon individualized suspicion that he would be transporting child pornography across the international border.  Moriarty Decl. ¶¶ 5-6.  As described further below, infra at 30-31, the background of the investigation and the circumstances of the warrantless manual and forensic searches were later disclosed comprehensively to a magistrate in a manner that is readily distinguishable from Djibo and Fox.

B.      A Warrant is Not Required for a Search of a Cell Phone at the Border

Next, the defendant argues in the alternative that the Court should follow Riley and apply the warrant requirement to an outbound search of an electronic device at the border. Mot. at 17-25 (citing Riley v. California, 573 U.S. 373 (2014)).  The defendant's position flatly contradicts the weight of the authority within the Second Circuit and its sister circuits and does not comport with the purposes of the border search doctrine.  It should be rejected.

In Riley, the Supreme Court held that officers must obtain a warrant to search a cell phone when it is recovered during a search incident to a lawful arrest that may otherwise

permit a warrantless search.  <u>Riley</u>, 573 U.S. at 403.  The Court explained that the rationales for the search-incident-to arrest exception—the risk of harm to officers and of destruction of evidence—do not apply with the same force to searches for electronic evidence.  <u>Id.</u> at 386-91. <u>Riley</u> also noted that "even though the search incident to arrest exception does not apply to cell phones, other case-specific exceptions may still justify a warrantless search of a particular phone."  <u>Id.</u> at 401-02.

Since <u>Riley</u> issued, however, no court of appeals has held that the ruling, which addressed a search of a cell phone in the domestic interior, imposes a warrant requirement for searches of cell phones at the international border.  <u>See</u> <u>Alasaad</u>, 988 F.3d at 17 ("<u>Riley</u> does not command a warrant requirement for border searches of electronic devices nor does the logic behind <u>Riley</u> compel us to impose one"); <u>Mendez</u>, 103 F.4th at 1309 ("No circuit court has read <u>Riley</u> to require more than reasonable suspicion to support even the most intrusive electronics search at the border"); <u>United States v. Molina-Isidoro</u>, 884 F.3d 287, 291-92 (5th Cir. 2018) ("[I]t is telling that no post-<u>Riley</u> decision . . . has required a warrant for a border search of an electronic device"); <u>United States v. Vergara</u>, 884 F.3d 1309, 1312-13 (11th Cir. 2018) ("Border searches have long been excepted from warrant and probable cause requirements, and the holding of <u>Riley</u> does not change this rule.");  <u>Cano</u>, 934 F.3d at 1015 (same).

So far, in the absence of specific guidance from the Second Circuit or the Supreme Court within the border context, most district courts within the Circuit have followed the consensus of other appellate courts and approved the validity of manual and forensic searches of electronic devices at the border without a warrant issued on probable cause.  <u>See</u>, <u>e.g.</u>, Tr. of Crim. Cause for Status Conf. at 12:3-6, <u>United States v. Franco</u>, No. 23-CR-394 (DG) (E.D.N.Y. Oct. 15, 2024) (enclosed as Exhibit 4); <u>United States v. Tineo</u>, No. 23-CR-223 (DLI), 2024 WL

2862289, at *5 (E.D.N.Y. June 6, 2024); Gavino, 2024 WL 85072, at *5; United States v. Alisigwe, No. 22-CR-425 (VEC), 2023 WL 8275923, at *6 (S.D.N.Y. Nov. 30, 2023); Bongiovanni, 2022 WL 17481884, at *12; Kamaldoss, 2022 WL 1200776, at *11; United States v. Oladokun, 15 Cr. 559 (BMC), 2016 WL 4033166, at *7 (E.D.N.Y. July 27, 2016).[7]

       The defendant's invitation to limit the application of Riley only to outbound border searches of electronic devices similarly contravenes Second Circuit authority that the border doctrine applies equally to travelers leaving the country as well as those entering the county. See Swarovski, 592 F.2d at 133. As the defendant acknowledges (Mot. at 12, 21), his position also conflicts with recent appellate rulings that specifically rejected the application of Riley to searches of electronic devices of outbound passengers. Xiang, 67 F.4th at 901-02 (rejecting argument that Riley required a warrant based on probable cause to search a cell phone of an outbound passenger at the border); Kolsuz, 890 F.3d at 142 (same). Further, his position is contrary to the United States's considerable national interest in preventing the export of contraband to other countries.

       In sum, the rulings of appellate courts outside the Circuit and district courts within the Second Circuit confirm that Riley "did not upend long-settled precedent governing border

---

[7] The few district court decisions within the Second Circuit to apply Riley to searches of electronic devices at the border acknowledged expressly that they departed from the holdings of every appellate court to have considered the issue. See Smith, 673 F. Supp. 3d at 396 (recognizing that "of the five federal courts of appeals to consider the question, none has gone quite this far"); United States v. Sultanov, No. 22-CR-148 (NRM), 2024 WL 3520443, at *291 (E.D.N.Y. July 24, 2024) (acknowledging that circuit courts and most district courts within the Second Circuit "did not go this far" as to require a warrant). Since the Smith opinion issued, multiple courts in this District have rejected its holding requiring a warrant to search an electronic device at the border. See Franco, Tr. at at 16:2-5 (stating that the court is "not persuaded" by Smith and Sultanov); Tineo, 2024 WL 2862289, at *6 (finding Smith unpersuasive); Gavino, 2024 WL 85072, at *6 (noting that Smith "does not seem compatible with the relatively expansive approach to border searches articulated by the Second Circuit").

searches" because "the Fourth Amendment's balance of reasonableness is qualitatively different at the international border than in the interior."  Alisigwe, 2023 WL 8275923, at *4 (quoting Montoya de Hernandez, 473 U.S. at 538-40) (internal quotation marks omitted).  This Court should adhere to the consensus that no search warrant is required for a search of a cell phone at the border.

     C.     HSI Agents Had Reasonable Suspicion to Search the Phone

     Although the Second Circuit does not require any heightened level of suspicion for a border search of electronic devices, even assuming that reasonable suspicion were necessary to support such a search, this standard is met in this case.  The defendant does not argue otherwise.

     The Supreme Court has defined reasonable suspicion as "a particularized and objective basis for suspecting the particular person stopped of criminal activity."  United States v. Cortez, 449 U.S. 411, 417-18 (1981).  The standard is met when law enforcement officers can point to "specific and articulable facts" that lead to the inference that criminal activity "may be afoot."  Terry v. Ohio, 392 U.S. 1, 21, 30 (1968).  In the border search context, the Second Circuit has instructed that the standard requires only "'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'"  Levy, 803 F.3d at 123 (quoting Navarette v. California, 572 U.S. 393, 396-97 (2014)).  The Second Circuit has cited several factors that support a finding of reasonable suspicion during a border search, including computerized information showing pertinent criminal propensity, tips from informants, travel itinerary, discovery of incriminating matter during routine searches, nervous or unusual conduct, inadequate luggage and evasive or contradictory answers.  Irving, 452 F.3d at 124.

Here, HSI agents had ample reasonable suspicion that criminal activity was afoot. Terry, 392 U.S. at 30. When they stopped the defendant on the jetway, the HSI agents were already aware of the following:

- Hine controlled a Cash App account that Hine acknowledged using to receive payments for the purchase of child pornography.

- The defendant was identified as the registered user of a Cash App account that was used to make multiple payments to the Hine-controlled Cash App account.

Based on training and experience in the Child Exploitation Investigative Group, the agents believed the electronic payment records from Cash App showed that the defendant was a collector of child pornography, who is unlikely to have ceased his conduct after several purchases. Moriarty Decl. ¶ 5. Accordingly, the agents had individualized suspicion that the defendant possessed child pornography or evidence of the purchase of child pornography on his electronic devices that he would be transporting across the international border. Id. ¶ 6.

During the subsequent border inspection, the HSI agents developed the following additional information, which added to their reasonable suspicion:

- The defendant was found to possess a credit card that was linked to the account used to make payments to the Hine-controlled Cash App account.

- After being advised that the investigation concerned "child exploitation," the defendant made statements confirming his knowledge that Hine-controlled Cash App accounts using different usernames were part of the same "group."

- The defendant and his wife each made statements regarding his "issues" in apparent reference to child pornography.

During the manual inspection of the defendant's phone, the HSI agents observed the following on the device:

- A Cash App account consistent with the account used to transmit payments to Hine.

- Multimedia file sharing applications (including Telegram) that the agents knew Hine had used to advertise, communicate and distribute child pornography to buyers.

- An application that appeared to be designed to store hidden photos.

In short, based on the HSI agents' training and experience with child exploitation investigations (Moriarty Decl. ¶¶ 2, 5), information developed in the Hine investigation (id. ¶ 3), and the additional facts developed during the defendant's border inspection (DX B at 2-4), the agents had reasonable suspicion to conclude that the defendant's phone contained contraband, evidence of contraband, and evidence of child exploitation crimes, sufficient to justify the seizure and forensic search of the device. Accordingly, even assuming that reasonable suspicion were necessary to conduct the searches of the defendant's cell phone, the standard is easily satisfied here and suppression is not warranted. See Irving, 452 F.3d at 114-15, 124 (upholding a warrantless border search of computer diskettes upon reasonable suspicion, where the appellant was identified in an investigation of pedophiles traveling to Mexico to abuse children); see also Touset, 890 F.3d at 1237 (upholding a warrantless forensic search of electronic devices upon reasonable suspicion, where the appellant "sent three low-money transfers" to an electronic payment account associated with child pornography); United States v. Cotterman, 709 F.3d 952, 968-69 (9th Cir. 2013) (similar).

D.    The Time Between the Seizure and Search of the Defendant's Cell Phone Was Not Unreasonable

Next, relying on United States v. Smith, 967 F.3d 198 (2d Cir. 2020), the defendant argues that evidence from his phone should be suppressed where HSI unreasonably delayed obtaining a warrant to search the cell phone extraction. The defendant's reliance on Smith is misplaced because the ruling applies only to searches in the country's interior, not at the border. Even if Smith applies to a border search, a consideration of the relevant factors shows that the delay was not unreasonable.

1.    <u>Applicable Law</u>

In <u>Smith</u>, a New York State Police Trooper found the defendant unconscious and apparently intoxicated in the driver's seat of a car on the side of the road near Keene, New York. 967 F.3d at 202.  On the front passenger seat there was a tablet that appeared to display child pornography.  <u>Id.</u> at 202.  The state trooper arrested the defendant for driving while intoxicated (a state law violation) and secured the tablet in an evidence bag.  <u>Id.</u> at 203.  After the defendant declined to consent to a search of the tablet, the trooper waited 31 days before applying for a warrant to search the tablet's contents, a search which yielded dozens of videos and images of child pornography.  <u>Id.</u>  The defendant was charged federally with unlawful possession of child pornography.  <u>Id.</u>  On appeal, the Second Circuit identified four factors that should be considered in assessing whether an unreasonable amount of time has passed between the warrantless seizure and the search warrant application: (1) "the length of the delay," (2) "the importance of the seized property to the defendant," (3) "whether the defendant had a reduced property interest in the seized item," and (4) "the strength of the state's justification for the delay."  <u>Id.</u> at 206.  The court held that, on the facts before it, a month-long delay between this warrantless seizure of the tablet and the search warrant application was unreasonable under the Fourth Amendment.  <u>Id.</u> at 211.  The court declined to suppress the evidence, based on the application of the good faith exception.  <u>Id.</u> at 213.

2.    <u>Smith Does Not Apply to a Border Search</u>

The defendant's argument fails because, just like <u>Riley</u>, <u>Smith</u> does not apply to searches conducted at the border.  As described above, <u>Smith</u> concerns a warrantless seizure of an electronic device by a state trooper in the domestic interior, and the border exception was not raised in that case.  Accordingly, in <u>Smith</u>, the Second Circuit articulated the general principle that law enforcement officers are permitted to seize or secure a defendant's property without a

warrant, upon probable cause that the property contains contraband or evidence of a crime, provided that agents apply for a warrant to search the property's contents. Id. at 205. The Court observed that, after Riley, a warrant was required to seize the defendant's tablet incident to his arrest, which the officers failed to obtain with sufficient diligence. Id. at 207-208.

Both the facts of Smith and the legal framework discussed by the Second Circuit in that case have no bearing at the international border, where routine searches of a traveler's person and belongings by customs officers are "not subject to any requirement of reasonable suspicion, probable cause, or warrant." Montoya de Hernandez, 473 U.S. at 538. Even invasive searches of the person at the border, such as body-cavity searches, are permitted if they are conducted upon reasonable suspicion, i.e., without a warrant. Levy, 803 F.3d at 123 n.3. As described supra at 18, no court of appeals has held that the Supreme Court's decision in Riley, which applies to the search of electronic devices in the country's interior, extends the warrant requirement to searches of electronic devices at the border. Logically, if no warrant is required to search an electronic device at the border, then law enforcement agents do not violate the Fourth Amendment when they fail to submit a warrant application at all, let alone delay it.

> 3. Any Delay in Obtaining the Warrant Here Was Not Unreasonable

Even if Smith applies to a border search, the application of the four Smith factors to the circumstances here shows that the delay in obtaining the Warrant was not unreasonable. First, although the government obtained the Warrant 108 days after the seizure of the defendant's phone, the delay is unremarkable in a case involving a border search, in which the prevailing consensus is that law enforcement agents were not required to obtain a warrant at all and afforded the defendant greater protection that he was due.

Second, as in Smith itself, the defendant fails to establish the importance of his device in a manner that suggests the delay was unreasonable. See Smith 967 F.3d at 208 (the

government is favored where the defendant's "testimony about the use and particular significance" of the device is spare, the defendant has "alternative electronic devices," and the defendant "did not request the return" of the device). In his declaration, the defendant states only that he asked the HSI agents to return the phone, shortly <u>before</u> it was seized, because it was the sole device that stored information necessary for the international trip. DX C ¶¶ 17-18. It is also evident from the record that the defendant returned safely from abroad, after which he obtained another cell phone. <u>See</u> January 22, 2025 Detention Hr'g Tr. 43:5-44:16 (describing the defendant switching from the seized iPhone to another iPhone, and later to a monitored Android device). The defendant made no subsequent requests for the return of the phone, except to ask for additional information nearly three months after the seizure. Moriarty Decl., Attachment A. In view of the defendant's spare declaration, the alternative devices actually utilized by the defendant following the seizure, and the absence of unambiguous requests to return the phone, this <u>Smith</u> factor should be afforded little weight, if any. <u>See</u> <u>Franco</u>, Tr. at 16:20-17:04 (this <u>Smith</u> factor was "at worst neutral" for the government where "the record reflects that Defendant had multiple cellphones in her possession").

   <u>Third</u>, the defendant has a "reduced property interest" in the seized cell phone. The defendant's phone was seized at JFK Airport, the functional equivalent to the international border where "the expectation of privacy is less . . . than it is in the interior," <u>Flores-Montano</u>, 541 U.S. at 154; <u>see</u> <u>also</u> <u>Franco</u>, Tr. at 17:5-8 (holding that this <u>Smith</u> factor "arguably weighs in favor of the Government in light of where the cellphone was seized, namely, at the border"). Moreover, the defendant's property interest is reduced because the device in fact contained child pornography, which is digital contraband subject to seizure at the border. <u>Cano</u>, 934 F.3d at 1017 ("The child pornography was contraband subject to seizure at the border"). Just as the

government may not return contraband such as firearms or narcotics to a defendant charged with its unlawful possession, the government is prohibited from returning the defendant's cell phone containing voluminous child pornography.  See, e.g., 18 U.S.C. § 3509(m)(1) ("any property or material that constitutes child pornography . . . shall remain in the care, custody, and control of either the Government or the court").  For these reasons, the third factor also does not weigh against the government.

Fourth, there is ample "justification for the delay," which arose from the HSI agents' reasonable attempt to address an unsettled area of the law in which the Second and the Third Circuits do not require warrants for a search of electronic devices at the border.  That the HSI agents took the step of consulting agency legal counsel (Moriarty Decl. ¶ 13) and submitting a warrant application to a neutral magistrate, even in the belief that they were affording greater protections than the defendant was due under binding appellate precedent, provides substantial justification for the delay.  Nkongho, 107 F.4th at 385 ("declin[ing] to fault the officers for affording [the appellant] greater protection than she was due" where they applied for a search warrant following a border search even though "a warrant wasn't required").  Finally, whereas in Smith the court found that the delay was not justified where "very little investigation" took place between the seizure of the tablet and the warrant application, see Smith, 967 F.3d at 210, the HSI agents in this case diligently served DHS summonses, identified and interviewed victims, and consulted agency counsel prior to obtaining the Warrant.  Moriarty Decl. ¶¶ 10-13.  For all these reasons, the fourth factor weighs strongly in favor of the government.

In short, even if the Smith ruling applies to items seized during a border search (which it does not), applying the Smith factors confirms that the delay in obtaining the Warrant was not unreasonable.

E.    Suppression Should be Foreclosed by the Application of the Good Faith
      Exception

Finally, even if the Court concludes that the searches of the defendant's phone or the delay in obtaining the Warrant violated the Fourth Amendment, the Court should forbear from suppressing the fruits of the searches through the application of the good faith exception to the exclusionary rule.

1.    Applicable Law

The Fourth Amendment "contains no provision expressly precluding the use of evidence obtained in violation" of its terms.  United States v. Leon, 468 U.S. 897, 906 (1984).  The exclusionary rule developed as "a 'prudential' remedy, crafted by the Supreme Court," United States v. Raymonda, 780 F.3d 105, 117 (2d Cir. 2015).  It is neither a "personal constitutional right" nor a means "to 'redress the injury' occasioned by an unconstitutional search," Davis v. United States, 564 U.S. 229, 248 (2011).  Rather, "[t]he rule's sole purpose . . . is to deter future Fourth Amendment violations."  Id.  Accordingly, "[a] violation of the Fourth Amendment does not necessarily result in the application of the exclusionary rule."  United States v. Rosa, 626 F.3d 56, 64 (2d Cir. 2010).  Suppression is an appropriate remedy only where it deters "deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence."  Herring v. United States, 555 U.S. 135, 144 (2009); Raymonda, 780 F.3d at 117-18 (same).  Under the good faith exception, the exclusionary rule does not apply when the challenged search was conducted with "objectively reasonable reliance" on either: (1) "binding appellate precedent," Davis v. United States, 564 U.S. 229, 249-50 (2011), or (2) a search warrant, even if the warrant should not have issued.  Leon, 468 U.S. at 922.  In both cases, a defendant whose Fourth Amendment rights were violated will not be able to exclude evidence.

2.      HSI Agents Reasonably Relied on Binding Circuit Precedent

The HSI agents reasonably relied on binding appellate precedent that an electronic device may be searched at the border without a warrant based upon reasonable suspicion. At the time of the search, "there was neither Supreme Court nor Second Circuit precedent limiting warrantless forensic searches" and "caselaw existed from both courts making clear that, in the context of border searches in general, at most reasonable suspicion was required for some more intrusive searches." Kamaldoss, 2022 WL 1200776, at *12. For its part, the Third Circuit (the jurisdiction in which the forensic analysis took place) had not addressed the question of border searches of electronic devices except to reject the application of the warrant requirement. United States v. Linarez-Delgado, 259 F. App'x 506, 508 (3d Cir. 2007) (holding that a border search of the contents of camcorder was valid without a warrant). As described supra at 18, other circuit courts had concluded that searches of cell phones at the border require at most reasonable suspicion.[8]

Furthermore, ICE regulations applicable to border searches of electronic devices reflected this binding circuit precedent.[9] See Immigration and Customs Enforcement, Directive

_____

[8] Although at the time of the search in April 2024, one district court (Smith) held that Riley requires a warrant to conduct a search of an electronic device at the border, the decision is not precedential. United States v. Aguiar, 737 F.3d 251, 261 (2d Cir. 2013) ("'binding precedent' refers to the precedent of this Circuit and the Supreme Court" existing at the time of the search); Raymonda, 780 F.3d at 119 ("a prior holding by a district court cannot establish a binding principle of law sufficient to undermine an agent's good faith"). See also Smith, 673 F. Supp. 3d at 396 (recognizing that "of the five federal courts of appeals to consider the question, none has gone quite this far").

[9] The defendant erroneously cites to CBP guidance. Although CBP and HSI is each a component of DHS, HSI is part of ICE but CBP is not part of ICE. CBP regulations and directives do not apply to ICE, and, therefore, do not apply to HSI. The CBP agency guidance on which the defendant relies expressly disclaims any application to HSI personnel. See DX D, Section 2.7 ("This Directive applies to searches performed by or at the request of CBP. With respect to searches performed by U.S. Immigration and Customs Enforcement (ICE), Homeland

No. 7-6.1, Border Searches of Electronic Devices (2009) ("ICE Directive," attached hereto as Exhibit 2), as superseded in part by Immigration and Customs Enforcement, Broadcast: Legal Update -- Border Search of Electronic Devices (2018) ("ICE Broadcast" attached hereto as Exhibit 3)), (together "ICE Policy").  The ICE Directive permits agents to search electronic devices of outbound travelers, see Ex. 2 § 1.1, while the ICE Broadcast requires only reasonable suspicion for any forensic search of electronic devices.  Ex. 3 at 1.

The conduct of the HSI agents demonstrates reasonable reliance on binding circuit authority as interpreted by ICE Policy, which permits a search of an electronic device of an outbound traveler with reasonable suspicion but without the need for a warrant.  As discussed above, the HSI agents had adequate reasonable suspicion even before they stopped the defendant for the inspection on the jetway, which developed further during the border inspection itself. Supra at 21-22.  Because the HSI agents acted in objectively reasonable good faith reliance on existing appellate precedent, as interpreted by agency guidance, there is no basis to suppress the fruits of the searches.[10]   See Alisigwe, 2023 WL 8275923, at *7 (applying the good faith exception to a warrantless border search of a cell phone based on the agents' reasonable reliance on binding circuit precedent); Bongiovanni, 2022 WL 17481884, *14 (W.D.N.Y. Aug. 5, 2022) (same); Kamaldoss, 2022 WL 1200776, at *12 (same).[11]   And, logically, in the absence of any

Security Investigations (HSI) Special Agents exercise concurrently-held border search authority that is covered by ICE's own policy and procedures.").

[10] See also Moriarty Decl., Attachment A (SA Moriarty email to counsel citing "customs officials' legal authority to conduct inspections and searches of merchandise and persons at the functional equivalent of the border").

[11] Even the cases cited by the defendant in support of his argument that a warrant is required for a review of a cell phone at the border declined to suppress the fruits of the challenged searches.  See Smith, 673 F. Supp. 3d 381, 401-03 (applying the good faith exception because "a reasonable government agent could have a good faith belief that [a warrantless border

warrant requirement in the first place, a reasonable HSI agent would believe that there is no need to obtain a warrant without delay in the manner required by <u>Smith</u> for an electronic device seized in the domestic interior.  <u>Aigbekaen</u>, 943 F.3d at 718, 725 (good faith exception applied where the government obtained search warrants "[a] few months" after the warrantless forensic searches of a laptop and a cell phone at the border).

   3. <u>HSI Agents Reasonably Relied on a Valid Warrant</u>

    Where, as here, a search takes place pursuant to a warrant issued by a neutral and detached magistrate, suppression is justified only where (1) "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;" (2) "the issuing magistrate wholly abandoned his judicial role," such that "no reasonably well trained officer should rely on the warrant;" (3) the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant is "so facially deficient" that it "fail[s] to particularize the place to be searched or the things to be seized . . . [such] that the executing officers cannot reasonably presume it to be valid."  <u>Leon</u>, 468 U.S. at 923.

    Here, the defendant does not raise any grounds for denying the application of the good faith exception to the subsequent search of the extraction pursuant to the Warrant.  Nor could he.  Critically, the agents disclosed all the relevant circumstances of the warrantless border search to the magistrate in the warrant application (DX A), including:

---

search of a cell phone] was permissible" and "because the Government ultimately obtained a search warrant"); <u>Sultanov</u>, 2024 WL 3520443, at *28 ("Law enforcement had no significant reason to believe that . . . the manual search of Sultanov's phone, was indeed unconstitutional.") (internal quotation marks and citation omitted).

- The existence of prior investigation that led to the defendant (id. ¶¶ 8-13); the manner in which the defendant was identified as a suspected purchaser of child pornography (id. ¶¶ 14-17); and the creation of an alert to enable law enforcement officers to receive notifications about the defendant's travel plans (id. ¶ 18);

- That HSI conducted a border inspection of the defendant at JFK Airport on his flight out of the country, which included a search of the defendant's wallet (id. ¶¶ 23-24), a manual inspection of the defendant's phone (id. ¶¶ 21-22, 25), and a colloquy with the defendant and his wife (id. ¶ 26).

- That HSI seized the phone at the conclusion of the defendant's border inspection (id. ¶ 27), and conducted a forensic extraction of the phone without a warrant (id. ¶¶ 28-30).

- That the agents reviewed the forensic extraction and located child pornographic materials. Id. ¶ 30 n.1. This information was included merely "to apprise the Court of the relevant conduct by law enforcement officers," without relying on these findings to establish probable cause. Id.

- That if the magistrate approved the search warrant, for efficiency, HSI would "continue searching the existing forensic extraction" "rather than obtaining a new, second, identical extraction" from the physical device. Id. ¶ 32 n.2.

- That HSI believed that the phone was lawfully in HSI's possession, pursuant to its border search authority, and HSI already had all of the necessary authority to continue searching the phone, where "neither the Supreme Court, the Second Circuit, nor the Third Circuit has yet opined on the issue." Id. ¶ 32 & n.2. The agent applied for a warrant "in an abundance of caution" and in light of recent district court decisions in the Eastern District of New York. Id. ¶ 32.

By issuing the Warrant after such comprehensive disclosure, the magistrate necessarily found that the probable cause existed to conduct a forensic search of the device. Accordingly, after the Warrant issued, it was reasonable for the HSI agents to continue the investigation utilizing the fruits of the approved search, and suppression would be inappropriate. United States v. Ganias, 824 F3d 199, 223 (2d Cir. 2016) (en banc) (where "the issuing magistrate was apprised of the relevant conduct, . . . suppression is inappropriate where reliance on a warrant was 'objectively reasonable.'"). See Tineo, 2024 WL 2862289, at *7 (good faith

exception applies to a forensic search of a cell phone seized at JFK Airport where "there is no evidence that the magistrate knowingly was misled"); see also Franco, Tr. at 18:10-25 (following a warrantless border search at an airport, law enforcement acted with objectively reasonable reliance on a later-issued warrant); Kamaldoss, 2022 WL 1200776, at *17 n.18 (same).

4.     The Cost of Suppression Outweighs the Benefits

Even if the Court concludes that a reasonable agent should not have relied on either existing circuit precedent or the Warrant, cost-benefit analysis of the manner advanced by the Second Circuit further supports the application of the good faith exception here.  As the Second Circuit has explained, "[a]pplication of the exclusionary rule depends on the 'efficacy of the rule in deterring Fourth Amendment violations in the future' as well as a determination that 'the benefits of deterrence . . . outweigh the costs.'"  Rosa, 626 F.3d at 64 (quoting Herring, 555 U.S. at 141).  Accordingly, "'[t]he extent to which the exclusionary rule is justified by these deterrence principles varies with the culpability of the law enforcement conduct.'"  Id. (quoting Herring, 555 U.S. at 143).  A reviewing court will therefore "look to whether 'police conduct [is] sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.'"  Id. (quoting Herring, 555 U.S. at 144).  "'The pertinent analysis of deterrence and culpability is objective,' and '[the court's] good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal' in light of 'all of the circumstances.'"  Id. (quoting Herring, 555 U.S. at 145).

Here, there is no credible basis for any allegation that agents acted in bad faith. See Mot. at 29-30.[12] The defendant's implausible theory that the HSI agents "believed that there was probable cause for Walden's arrest" (Mot. at 15), but they "delayed the arrest of Walden" and searched him at the border in a "calculated decision" to "us[e] the contents of the phone to demonstrate probable cause" (id. at 29) finds no support anywhere in the record. See Moriarty Decl. ¶ 5 (SA Moriarty confirming that he had no probable cause to arrest the defendant prior to the encounter at JFK Airport). The HSI agents' conduct following the search, including consulting agency counsel and obtaining a search warrant upon a comprehensive affidavit that apprised the magistrate of the relevant conduct by law enforcement officers (DX A ¶ 30 n.1), evidences a complete absence of "deliberate, reckless, or grossly negligent conduct" that may otherwise justify exclusion. Herring, 555 U.S. at 144.

Finally, even if the Court finds that the agents acted with sufficient culpability, the cost of the application of the exclusionary rule is high in this case involving the production, receipt, and possession of child pornography. As the Supreme Court has observed, "[c]hild pornography harms and debases the most defenseless of our citizens." United States v. Williams, 553 U.S. 285, 307 (2008). "Not only are children seriously harmed—physically, emotionally, and mentally—in the process of producing such pornography, but that harm is then exacerbated by the circulation, often for years after the fact, of a graphic record of the child's exploitation and abuse." United States v. Reingold, 731 F.3d 204, 216 (2d Cir. 2013). This case

---

[12] The defendant argues that SA Duchene's search warrant affidavit relied on stale information because it cited to the defendant's Cash App payments to Hine three years earlier. Mot. at 30. That argument plainly omits the substantial up-to-date evidence from the border search itself cited in the warrant application, including the contents of the defendant's wallet (DX A ¶¶ 23-24); the items found during the manual search of the defendant's phone (Id. ¶¶ 21-22, 25); and the defendant's voluntary statements demonstrating knowledge of the specific accounts used by the producer to trade child pornography in exchange for payment (Id. ¶ 26).

involves not merely the possession and receipt of child pornography, but also serious charges involving the production of child pornography through the enticement of minor victims via social media in exchange for payment. As the government has proffered previously, <u>see</u> ECF No. 33, Counts 1 and 2 of the Indictment charge the defendant with enticing two minors, Jane Doe #1 and Jane Doe #2 respectively, to produce sexually explicit materials for the defendant in exchange for payment. But the defendant's criminal conduct sweeps broader than these two counts: law enforcement agents identified at least 13 victims, whom the defendant contacted, paid, and enticed and/or attempted to entice to produce child pornography via social media from at least 2020 to 2024. <u>See</u> January 22, 2025 Detention Hr'g Tr. 53:9-11 (The Court: "[T]he nature and circumstances of the crime charged are among the most serious. They are incredibly serious."). Accordingly, there is a very strong public interest in the prosecution of this case in which the cost of suppression far outweighs the benefits.[13]

F.    The Motion Should Be Denied Without an Evidentiary Hearing

Finally, the defendant's motion to suppress evidence should be denied without a hearing. A defendant has no absolute right to an evidentiary hearing on a motion to suppress evidence. <u>See</u> <u>United States v. Watson</u>, 404 F.3d 163, 167 (2d Cir. 2005). Rather, a court must grant such a hearing only if a movant's affidavit contains specific factual allegations which, if proven, would warrant the relief requested. <u>See</u> <u>id.</u>; <u>United States v. Pena</u>, 961 F.2d 333, 339 (2d Cir. 1992) (hearing on a motion to suppress not required unless the defendant's submissions raise a "sufficiently definite, specific, detailed, and nonconjectural" factual basis for the motion). In other words, there must be a material factual dispute supported by personal knowledge for a

_____

[13] The government reserves the argument that suppression is not warranted based on other doctrines, including attenuation, inevitable discovery, and independent source.

hearing to be justified.  <u>United States v. Ashburn</u>, 76 F. Supp. 3d 401, 436 (E.D.N.Y. 2014) (collecting cases).  Here, the defendant raises no factual dispute that requires a hearing.  Indeed, the defendant's factual recitation expressly relies upon discovery produced by the government in this case—<u>i.e.</u>, SA Duchene's affidavit in support of the search warrant (DX A) and SA Moriarty's report of investigation documenting the border search (DX B)—supplemented only by a short declaration from the defendant (DX C) that does little other than establish his standing to bring the Motion.  The defendant's declaration does not raise any issue of material fact that is relevant to the Fourth Amendment question before the Court.  Accordingly, there is no genuine dispute of material fact to be resolved by an evidentiary hearing, and the defendant's motion should be denied without one.

<u>CONCLUSION</u>

For the reasons described above, the defendant's motion to suppress should be denied in its entirety without a hearing.

Dated:     Brooklyn, New York
           June 2, 2025

Respectfully submitted,

JOSEPH NOCELLA, JR.
UNITED STATES ATTORNEY
Eastern District of New York
271-A Cadman Plaza East
Brooklyn, New York 11201

By:   /s/ Leonid Sandlar_____
      Leonid Sandlar
      Trial Attorney
      (718) 254-6879