**EXHIBIT 4**


Tr. of Crim. Cause for Status Conf.
<u>United States v. Franco</u>, No. 23-CR-394 (DG)
(E.D.N.Y. Oct. 15, 2024)

1          UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF NEW YORK
2     - - - - - - - - - - - - - - X
        UNITED STATES OF AMERICA,    :    23-CR-00394 (DG)
3                                    :
                                     :
4          -against-                 :    United States Courthouse
                                     :    Brooklyn, New York
5                                    :
        EDNA FRANCO,                 :
6                                    :    October 15, 2024
                  Defendant.         :    10:30 a.m.
7                                    :
                                     :
8                                    :
      - - - - - - - - - - - - - X
9        TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
             BEFORE THE HONORABLE DIANE GUJARATI
10               UNITED STATES DISTRICT JUDGE

11

                     A P P E A R A N C E S :
12
     For the Government:        BREON PEACE, ESQ.
13                              United States Attorney
                                Eastern District of New York
14                                 271 Cadman Plaza East
                                   Brooklyn, New York 11201
15
                                BY:  RUSSELL NOBLE, ESQ.
16                                   Assistant United States Attorney

17   For the Defendant:         FEDERAL DEFENDERS OF NEW YORK, INC.
                                One Pierrepont Plaza
18                              Brooklyn, New York 11201

19                              BY:  DEIRDRE DIONYSIA VON DORNUM, ESQ.

20   Court Reporter:            JAMIE ANN STANTON, RMR, CRR, RPR
                                225 Cadman Plaza East
21                              Brooklyn, New York 11201
                                Telephone: (718) 613-2274
22                              E-mail: JamieStanton.edny@gmail.com

23

24

     Proceedings recorded by computerized stenography.  Transcript produced by
25   Computer-aided Transcription.

1          (In open court.)

2          THE COURTROOM DEPUTY:  All rise.

3          Diane Gujarati is now presiding.  You may be

4    seated.

5          United States of America versus Edna Franco.

6          Is the Government ready?

7          MR. NOBLE:  Yes.

8          THE COURT:  State appearances for the record,

9    please.

10          MR. NOBLE:  Good morning, Your Honor.

11          Assistant U.S. Attorney Russell Noble and

12    paralegal specialist Matias Burdman for the Government.

13          THE COURT:  Good morning to both of you.

14          MS. VON DORNUM:  Good morning, Your Honor.

15          Deirdre von Dornum, Federal Defenders of New York,

16    for Edna Franco.  Ms. Franco is present next to me.

17    Apologies for the delayed start time this morning.

18          THE COURT:  Good morning to both of you.

19          What was the cause of the delay?  It was something

20    about the flight?

21          MS. VON DORNUM:  Yes.  She missed her flight from

22    Oklahoma City last night, so she took the next one, but it

23    delayed everything, so we apologize, Your Honor.

24          THE COURT:  So the flight was this morning that

25    she came in on?

1      MS. VON DORNUM:  The flight was in the middle of

2  the night --

3      THE DEFENDANT:  The Uber, actually, the Uber.  The

4  flight -- I missed the flight in the morning.

5      MS. VON DORNUM:  I'm sorry, it was a travel delay,

6  Your Honor.

7      THE COURT:  Okay, but I'm trying to understand the

8  details of the travel delay.  When did she come in?

9      MS. VON DORNUM:  May I speak to her as opposed to

10  her addressing the question?

11      THE COURT:  Sure.

12      (Pause in proceedings.)

13      MS. VON DORNUM:  Sorry, Your Honor.

14      THE COURT:  That's okay.

15      MS. VON DORNUM:  She was supposed to arrive around

16  7:00 p.m. last night and she instead arrived around

17  9:00 p.m.  She was staying in the Bronx and it took

18  longer -- this is the part I wasn't aware of, that it took

19  longer for her to come from the Bronx than she was aware,

20  which is why she was delayed.

21      THE COURT:  Thank you for that clarification.

22      We are convened today for a conference.  I am

23  going to start by addressing Defendant's pending Motion to

24  Suppress, ECF number 28.  I am prepared to give the parties

25  my ruling on the Motion.

1          This will take a while and I will speak slowly for

2   the benefit of our court reporter, although we have such

3   excellent court reporters that she may not need me to speak

4   as slowly, but I think I will do that.

5          As the parties will recall, on September 16, 2024,

6   the Court held oral argument on the Motion.  It was a

7   lengthy oral argument and I found it helpful to have the

8   parties flesh out their arguments and to respond to each

9   others' arguments and to the Court's questions.

10          Familiarity with the September 16th oral argument

11   is assumed.

12          Familiarity with the parties' various submissions

13   in connection with Defendant's motion also is assumed.

14          Defendant seeks suppression of the fruits of two

15   separate warrants:  One, the luggage warrant; and, two, the

16   electronic devices warrant.

17          At oral argument, counsel for Defendant specified

18   more precisely what Defendant is seeking to have suppressed.

19          With respect to the luggage, Defendant seeks

20   suppression of everything.

21          With respect to the laptop, Defendant seeks

22   suppression of everything.

23          And with respect to the phone, Defendant seeks

24   suppression of everything other than the photographs.

25          Ms. Von Dornum, could you confirm for me that is

1    what you are seeking?

2          MS. VON DORNUM:  That is correct, Your Honor.

3    Thank you.

4          THE COURT:  And as discussed on the record at the

5    oral argument, the portion of the Motion to Suppress that

6    relates to the CD-R was deemed withdrawn in light of the

7    Government's representation that the CD-R is unreadable.

8          The luggage warrant was issued on September 22nd,

9    2023 by Magistrate Judge Pollack and the electronic devices

10   warrant was issued on October 6, 2023 by then-Magistrate

11   Judge Reyes.

12         The parties' respective arguments were addressed

13   at some length at oral argument.  I will only very briefly

14   summarize those arguments now.  I incorporate the more

15   fulsome summary I gave at oral argument, which the parties

16   confirmed was an accurate summary of their arguments.  And

17   although I am not going to repeat all of the arguments now,

18   I have considered all of the arguments.

19         Defendant argues that the luggage warrant was

20   overbroad and insufficiently particular.

21         Defendant argues that the electronic devices

22   warrant was based on the fruits of the unconstitutional

23   luggage warrant and on the fruits of an unconstitutional

24   manual review of Defendant's cellphone at the airport; that

25   the electronic devices warrant was overbroad and

1   insufficiently particular; and that there was unreasonable

2   delay in the search of the cellphone.

3          Defendant also argues that the good faith

4   exception does not apply here.

5          The Government opposes Defendant's motion in its

6   entirety.

7          The Government argues that each warrant was

8   sufficiently particularized; that each warrant was not

9   overbroad; that the manual border search of Defendant's

10  cellphone did not violate the Fourth Amendment, and, in any

11  event, the electronic devices warrant was based upon

12  probable cause irrespective of the manual review of

13  Defendant's cellphone; and that any delay in obtaining the

14  warrant was not unreasonable.

15         Further, as to each warrant, the Government argues

16  that the agents who executed the search pursuant to the

17  warrant relied in good faith on the warrant, that the good

18  faith reliance was objectively reasonable, and that even if

19  the warrant suffered from some defect, the good faith

20  exception should apply.

21         In reaching my ruling on the Motion, I have

22  considered the parties' filings as well as the arguments

23  made at the September 16th oral argument.  Neither party

24  sought a hearing in connection with the Motion and the Court

25  has determined that no hearing is necessary for resolution

1    of the Motion.

2          In giving you my ruling, I will start by setting

3    forth the general legal standards that apply.

4          The Fourth Amendment to the United States

5    Constitution provides:  "The right of the people to be

6    secure in their persons, houses, papers, and effects,

7    against unreasonable searches and seizures, shall not be

8    violated, and no Warrants shall issue, but upon probable

9    cause, supported by Oath or affirmation, and particularly

10   describing the place to be searched, and the persons or

11   things to be seized."

12         A search warrant may issue upon a showing of

13   probable cause to believe that a crime was committed and

14   that evidence of such crime will be found in the place to be

15   searched.

16         When determining whether probable cause exists,

17   the issuing Magistrate Judge must make a practical,

18   commonsense decision whether, given all the circumstances

19   set forth in the affidavit before the Magistrate Judge,

20   there is a fair probability that contraband or evidence of a

21   crime will be found in a particular place.  See *Illinois*

22   *versus Gates*, 462 U.S. 213, at 238 (1983); *United States*

23   *versus Jones*, 43 F.4th 94, at 109 (Second Circuit 2022); and

24   *United States versus DiTomasso,* 932 F.3d 58, at 66 (Second

25   Circuit 2019).  A Magistrate Judge's determination that

1    probable cause exists is owed substantial deference by a

2    reviewing court.  The duty of the reviewing court is to

3    ensure that the Magistrate Judge had a substantial basis for

4    concluding that probable cause existed.  See *Jones*, 43 F.4th

5    at 109; and *United States versus Wagner*, 989 F.2d 69, at 72

6    (Second Circuit 1993).  See also *Gates*, 462 U.S. at 238 to

7    239.

8              In addition to probable cause, the Fourth

9    Amendment requires that the scope of the authorized search

10   be set out with particularity.  In order for a warrant to be

11   sufficiently particular under the Fourth Amendment, the

12   warrant must satisfy three requirements:  First, it must

13   identify the specific offense for which the police have

14   established probable cause; second, it must describe the

15   place to be searched; and third, it must specify the items

16   to be seized by their relation to designated crimes.  See

17   *United States versus Galpin*, 720 F.3d 436, at 445 to 446

18   (Second Circuit 2013).

19             The level of specificity required depends on many

20   factors, including the nature of the crime and the type of

21   evidence sought.  See *United States versus Cioffi*, 668 F.

22   Supp. 2d 385, at 391 (Eastern District of New York 2009);

23   *United States versus Zottola*, number 18-CR-609, 2022 Westlaw

24   3682222, at one (Eastern District of New York, August 25,

25   2022); and *United States versus Nordlicht*, number 16-CR-640,

1   2018 Westlaw 705548, at six (Eastern District of New York,

2   February 2, 2018).

3           A search warrant does not necessarily lack

4   particularity simply because it is broad.  See *United States*

5   *versus Purcell*, 967 F.3d 159, at 179 (Second Circuit 2020).

6           A warrant is overbroad if it provides for the

7   seizure of specific items for which there is no probable

8   cause.  The determination of whether there was probable

9   cause sufficient to support the breadth of a warrant is

10  based on a totality-of-the-circumstances analysis.  See

11  *Nordlicht*, 2018 Westlaw 705548, at seven; and *United States*

12  *versus Hernandez*, number 09-CR-625, 2010 Westlaw 26544, at

13  eight (Southern District of New York, January 6, 2010).

14          Even where a warrant is defective, suppression

15  does not automatically follow if the good faith exception

16  applies.  Under the good faith exception, if law enforcement

17  acted with objectively reasonable reliance on the search

18  warrant, exclusion is not warranted.  The good faith

19  exception will not apply, however, in situations where the

20  issuing Magistrate Judge has been knowingly misled; where

21  the issuing Magistrate Judge wholly abandoned his or her

22  judicial role; where the search warrant application is so

23  lacking in indicia of probable cause as to render reliance

24  upon it unreasonable; and where the warrant is so facially

25  deficient that reliance upon it is unreasonable.  See *United*

*States versus Leon*, 468 U.S. 897, at 922 to 23 (1984);
*United States versus Clark*, 638 F.3d 89, at 99 to 100
(Second Circuit 2011); and *United States versus Moore*,
968 F.2d 216, at 222 (Second Circuit 1992).

The exclusionary rule is designed to deter future
Fourth Amendment violations.  Because the remedy exacts a
heavy toll on the justice system, the exclusionary rule does
not apply whenever suppressing evidence might provide
marginal deterrence.  See *United States versus Raymonda*,
780 F.3d 105, at 117 (Second Circuit 2015).  And that case
is quoting *Herring versus United States*, 555 U.S. 135, at
141 (2009).  When police conduct involves only simple,
isolated negligence, exclusion is not warranted.  See
*Raymonda*, 780 F.3d at 118.

Border searches are a long-recognized exception to
the general rule requiring that searches be supported by
probable cause and conducted with a warrant.  See *United
States versus Gavino*, number 22-CR-136, 2024 Westlaw 85072,
at three (Eastern District of New York, January 7, 2024).
And that case is citing *United States versus Ramsey*,
431 U.S. 606, at 619 (1977).

For routine border searches, there is no warrant
requirement and no requirement of probable cause or
reasonable suspicion.  See *United States versus Montoya de
Hernandez*, 473 U.S. 531, at 537 to 38 (1985); and *Tabbaa*

1   *versus Chertoff*, 509 F.3d 89, at 97 to 98 (Second Circuit

2   2007); see also *United States versus Irving*, 452 F.3d 110,

3   at 123 (Second Circuit 2006).

4          For more invasive, non-routine border searches,

5   reasonable suspicion is required.  See *Gavino*, 2024 Westlaw

6   85072, at four, collecting cases.

7          The level of suspicion the reasonable suspicion

8   standard requires is considerably less than proof of

9   wrongdoing by a preponderance of the evidence and obviously

10  less than is necessary for probable cause.  Reasonable

11  suspicion requires only a particularized and objective basis

12  for suspecting the particular person stopped of criminal

13  activity.  See *United States versus Levy*, 803 F.3d 120, at

14  123 (Second Circuit 2015).  And that case is quoting

15  *Navarette versus California*, 134 Supreme Court 1683, at 1687

16  (2014).

17         One moment, please.

18         The precise line between what is routine and what

19  is not routine has not been clearly delineated.  The

20  determining factor as to whether something is routine or

21  non-routine is not how ordinary or commonplace a search is,

22  but rather the level of intrusion into a person's privacy.

23  See *Tabbaa*, 509 F.3d at 98; see also *Irving*, 452 F.3d at

24  123.

25         The Supreme Court and Second Circuit do not appear

1  to have expressly addressed the issue of whether a warrant

2  is required for a border search of electronic devices.

3          However, the weight of authority, within and

4  outside this Circuit, supports the conclusion that a search

5  warrant is not required for a manual search of a cellphone

6  at the border.

7          The Supreme Court and Second Circuit also do not

8  appear to have expressly addressed what level of suspicion,

9  if any, is required with respect to the search of electronic

10  devices at the border.  However, some courts have held that

11  reasonable suspicion is required with respect to such

12  searches.  See, e.g., *Gavino*, 2024 Westlaw 85072 at four,

13  addressing *Riley versus California*, 573 U.S. 373 (2014);

14  stating that Riley's discussion of privacy interests

15  establishes that searches of cellphones should be treated as

16  intrusive border searches, rather than standard ones; and

17  concluding that the Fourth Amendment principles governing

18  intrusive border searches require law enforcement officers

19  to have reasonable suspicion of criminal activity in order

20  to search a traveler's cellphone, but do not require more

21  than reasonable suspicion.

22          With respect to the issue of delay in seeking a

23  warrant for a seized item:  The Second Circuit has indicated

24  that the following four factors are generally relevant to

25  the determination of whether the police have waited an

1   unreasonable amount of time before seeking a search warrant

2   for an item they have seized:  One, the length of the delay;

3   two, the importance of the seized property to the defendant;

4   three, whether the defendant had a reduced property interest

5   in the seized item; and, four, the strength of the state's

6   justification for the delay.  See *United States versus*

7   *Smith*, 967 F.3d 198, at 206 (Second Circuit 2020).

8                Defendant's Motion to Suppress, ECF number 28, is

9   denied in its entirety.

10                I note at the outset that various of Defendant's

11   arguments, particularly as to particularity and overbreadth,

12   appear to ignore relevant context and/or to construe overly

13   narrowly the relevance of certain information and evidence.

14   The Court finds particularly unpersuasive Defendant's

15   arguments about the numerous cards found in Defendant's

16   possession, about the badge, and about Defendant's

17   statements to the border officers.  The Court also notes

18   that Defendant appears to largely minimize the issue of

19   Defendant's intent as it relates to the issuance of the

20   warrants.

21                Many of Defendant's arguments are undercut by the

22   fact that the showing for obtaining a warrant is probable

23   cause, not proof beyond a reasonable doubt, and by the fact

24   that when determining whether probable cause exists, a

25   Magistrate Judge must make a practical, commonsense decision

1  given all the circumstances set forth.

2  Judged under the applicable legal standards, and

3  affording the appropriate deference to the probable cause

4  determinations of the Magistrate Judges who issued the

5  warrants, the Court concludes that neither warrant runs

6  afoul of the Fourth Amendment.

7  Starting with the luggage warrant:

8  I find that the luggage warrant is sufficiently

9  particular as to not violate the Fourth Amendment.

10  As I noted earlier, the particularity requirement

11  has three components:  A warrant must identify the specific

12  offenses for which probable cause has been established,

13  describe the places to be searched, and specify the items to

14  be seized by their relation to designated crimes.  The

15  luggage warrant fulfills each of these requirements.  And

16  that is so notwithstanding the lack of a temporal

17  limitation.

18  Suppression is not warranted on the basis that the

19  luggage warrant was insufficiently particular.

20  Further, in light of the totality of the

21  circumstances, suppression is not warranted on the basis of

22  overbreadth.  This is particularly so in light of the nature

23  of the offenses at issue.  Defendant's arguments regarding

24  overbreadth do not properly account for the totality of the

25  circumstances.

1      Moreover, even assuming *arguendo* that the luggage

2  warrant was insufficiently particular and/or overbroad, the

3  good faith exception would apply under the circumstances

4  here, precluding suppression.

5      The record indicates that law enforcement acted

6  with objectively reasonable reliance on the luggage warrant.

7      The record does not reflect that there are

8  circumstances suggesting that the good faith exception

9  should not apply here.  The record does not support a

10  conclusion that the issuing Magistrate Judge was knowingly

11  misled or wholly abandoned her judicial role; that the

12  search warrant application was so lacking in indicia of

13  probable cause as to render reliance upon it unreasonable;

14  or that the warrant was so facially deficient that reliance

15  upon it was unreasonable.

16      Turning to the electronic devices warrant:

17      As an initial matter, in light of my denial of the

18  motion to suppress the luggage warrant, Defendant's argument

19  that the electronic devices warrant must be suppressed

20  because it was based on the fruits of the luggage warrant is

21  unavailing.

22      So too is Defendant's argument that the electronic

23  devices warrant was based on an unconstitutional manual

24  review of Defendant's cellphone at the airport.

25      The Court agrees with the weight of the authority

1    in concluding that a search warrant was not required.

2    Although Defendant has pointed to two district court cases

3    in support of her argument to the contrary, the Court is not

4    persuaded by those cases, which, of course, are not binding

5    on the Court here.

6              Further, even assuming *arguendo* that reasonable

7    suspicion was required, the record reflects that in light of

8    the totality of the circumstances, there was reasonable

9    suspicion here, substantially for the reasons set forth by

10   the Government in its briefing and at oral argument.

11             As for Defendant's claim of unreasonable delay, I

12   find that the period between September 19, 2023, when the

13   Government obtained the phone, and October 6, 2023, when the

14   Government sought a search warrant, did not constitute an

15   unreasonable delay under the circumstances here.  The four

16   *Smith* factors, on balance, weigh in the Government's favor.

17             As to the first factor, the delay was 17 calendar

18   days and 13 business days.  I find that factor to be at

19   worst neutral on the facts of this case.

20             As to the second factor, courts have recognized

21   the importance of cellphones and have recognized that

22   cellphones raise special concerns.  But, as the Government

23   points out, here it is notable that Defendant has not set

24   forth, either by affidavit or otherwise, the importance of

25   the cellphone to her, even after her failure to do so was

1    highlighted.  Further, as the Government also points out,

2    the record reflects that Defendant had multiple cellphones

3    in her possession.  I find the second *Smith* factor to be at

4    worst neutral on the facts of this case.

5            I find that the third factor does not weigh

6    against the Government and arguably weighs in favor of the

7    Government in light of where the cellphone was seized,

8    namely, at the border.

9            Finally, I find that the fourth factor weighs

10   heavily in favor of the Government.  The justification for

11   the delay is strong.  As reflected in the record, the agents

12   were taking reasonable investigative steps, including

13   obtaining and executing the luggage warrant, during the

14   period after they obtained the cellphone and before they

15   sought the warrant for it.

16           Weighing the four factors together, the Court

17   cannot conclude that the delay in seeking the warrant was

18   unreasonable.

19           Turning to the warrant itself:

20           I find that the electronic devices warrant is

21   sufficiently particular as to not violate the Fourth

22   Amendment.

23           The electronic devices warrant fulfills each of

24   the three requirements that I set forth earlier.  And,

25   notably, the electronic devices warrant does contain a

1    temporal limitation.

2            Suppression is not warranted on the basis that the

3    electronic devices warrant was insufficiently particular.

4            Further, in light of the totality of the

5    circumstances, suppression is not warranted on the basis of

6    overbreadth.  Again, this is particularly so in light of the

7    nature of the offenses at issue and, again, Defendant's

8    arguments regarding overbreadth do not properly account for

9    the totality of the circumstances.

10            Moreover, even assuming *arguendo* that the

11    electronic devices warrant was insufficiently particular

12    and/or overbroad, the good faith exception would apply under

13    the circumstances here, precluding suppression.

14            The record indicates that law enforcement acted

15    with objectively reasonable reliance on the electronic

16    devices warrant.

17            And, as with the luggage warrant, here too the

18    record does not reflect that there are circumstances

19    suggesting that the good faith exception should not apply.

20    The record does not support a conclusion that the issuing

21    Magistrate Judge was knowingly misled or wholly abandoned

22    his judicial role; that the search warrant application was

23    so lacking in indicia of probable cause as to render

24    reliance upon it unreasonable; or that the warrant was so

25    facially deficient that reliance upon it was unreasonable.

1        And I note for the sake of record completeness

2   that even were the information from the manual review of the

3   cellphone omitted from the electronic devices warrant

4   application, that would not change the Court's conclusion

5   that suppression of the fruits of that warrant is not

6   warranted.

7        Finally, even if either or both warrants suffered

8   infirmities, suppression of the fruits of the luggage

9   warrant and/or the fruits of the electronic devices warrant

10  would not serve the purpose of the exclusionary rule.  It

11  would not deter future Fourth Amendment violations.

12       Again, Defendant's Motion to Suppress, ECF number

13  28, is denied in its entirety.  And that concludes my

14  ruling.

15       Let me turn to the Government for anything else

16  you would like to raise with me today.

17       MR. NOBLE:  Your Honor, we have had additional

18  discussions about a possible resolution in this case since

19  the last court date.  It seems at this point that we are not

20  reaching a resolution, so I believe that the next step is

21  that the court should schedule a trial date.

22       THE COURT:  Ms. von Dornum?

23       MS. VON DORNUM:  Yes, I agree.

24       THE COURT:  Let me ask you, and I'm sure I asked

25  you this at an earlier conference, but sometimes things

1  change over time.

2          Let me ask the Government, how long do you think

3  the trial in this matter would take?

4          MR. NOBLE:  I would anticipate two to three days

5  for the Government's Case in Chief.

6          THE COURT:  Ms. von Dornum, of course the defense

7  has no obligation to put on any case, but do you want to

8  comment on what you believe would be the anticipated length

9  of the trial overall?

10          MS. VON DORNUM:  Yes, Your Honor.  I would think

11  one to two days.

12          THE COURT:  Overall?

13          THE DEFENDANT:  Your Honor, can I speak up,

14  please?

15          MS. VON DORNUM:  No.

16          THE DEFENDANT:  I need to hire an international

17  lawyer, please.

18          MS. VON DORNUM:  Not right now.

19          THE COURT:  Let me give you a moment, Ms. von

20  Dornum, to speak to your client.

21          And, actually, I think we are going to just take a

22  five- to ten-minute adjournment.  I want to check the

23  calendar, too, now that I know you're asking for a trial

24  date.  But let me give you time to speak to your client as

25  well.

1      So we'll adjourn.  And let's give ten minutes from

2  now.  The clock is never quite right.  How about a quarter

3  to 12 we'll come back.

4      MS. VON DORNUM:  Yes.

5      THE COURT:  Okay.

6      (Recess taken.)

7      THE COURT:  We are back on the record, and

8  everybody is still here including the Defendant.

9      Go ahead, Ms. von Dornum.

10     MS. VON DORNUM:  Thank you, Your Honor.

11     Ms. Franco just told me that she would like me to

12  inform you that she wishes to go pro se beginning

13  immediately.

14     THE COURT:  We are going to have to schedule a

15  proceeding before that can happen because I have to assure

16  myself that you understand your rights and how things will

17  be moving forward.

18     So give me a moment, please.

19     MS. VON DORNUM:  Thank you.

20     THE COURT:  And I am not going to be relieving

21  Counsel, at the very earliest, at a conference.

22     You know what, give me another five minutes.  We

23  are going to adjourn.

24     MS. VON DORNUM:  Thank you, Your Honor.

25     You may already be aware of this.  I believe the

1    Government at an earlier stage had filed a letter setting

2    forth questions.

3              THE COURT:  Yes.  Thank you.  We are going to

4    adjourn for five minutes.

5              (Recess taken.)

6              THE COURTROOM DEPUTY:  Remain seated.

7              THE COURT:  Thank you.

8              My apologies, that was longer than five minutes,

9    but we are all convened again, including the Defendant.

10             Let me ask you, Ms. von Dornum -- well, I would

11   like to ask the Defendant, but I will ask through you:  You

12   are her first lawyer, right, Ms. von Dornum?

13             MS. VON DORNUM:  That's correct, Your Honor.

14             THE COURT:  Sometimes the relationship doesn't

15   work out well between a client and an attorney, for whatever

16   reason.  You've only had this one attorney.  I am willing to

17   appoint new counsel for you, somebody else, if you would

18   like to do that.  That's not something you can keep doing,

19   but I would be willing to appoint new counsel for you in

20   place of Ms. von Dornum.

21             THE DEFENDANT:  That would be great, Your Honor.

22             THE COURT:  So she would like to have counsel?

23             MS. VON DORNUM:  She is accepting your offer of

24   new CJA counsel.

25             THE COURT:  Okay.  So Mr. Karloff Commissiong is

1    counsel who is on duty today.  And I am going to appoint him

2    to represent you.

3              And I'm sorry, Ms. von Dornum, go ahead.

4              MS. VON DORNUM:  I wonder, just to try to look

5    ahead to the future problems --

6              THE COURT:  Yes.

7              MS. VON DORNUM:  -- whether, perhaps, someone with

8    experience with sovereign citizens and the like would be a

9    good idea.  I am concerned that we'll soon have a similar

10   request and I leave that in the Court's hands, but I just

11   worry.

12             THE COURT:  Well, he is the person on duty today

13   and I am going to appoint him and if there are any issues

14   that arise, we'll take them up then.  But I do think that

15   sometimes just a simple change of counsel, you know, can

16   make a difference.  And so I'm appointing Mr. Commissiong to

17   represent Ms. Franco.

18             And I do thank Ms. von Dornum.  It's been clear to

19   me that she's worked hard on this case.  So my relieving her

20   is no reflection on her, but I do understand that that's

21   what Ms. Franco, who is the Defendant in the case, wants.

22             MS. VON DORNUM:  Yes, Your Honor.

23             THE COURT:  Does the Government want to be heard

24   on any of this?

25             MR. NOBLE:  No, Your Honor.  We defer to the

1  court.

2         THE COURT:  Okay.  So I was prepared to set a

3  trial date.  I don't think that's wise to do in light of the

4  fact that there is a change of counsel.  I think it makes

5  sense to have new counsel be able to consult with his client

6  and also maybe have discussions with the Government.

7         But I think we need to set a conference relatively

8  soon so that we can keep things moving.  So I am going to

9  set the next conference down for November 1st, at 11:00 a.m.

10 And, again, Mr. Commissiong is appointed and Ms. von Dornum

11 is relieved.

12        But before I relieve you, Ms. von Dornum, we'll

13 complete the proceeding today, since you are here and

14 Mr. Commissiong is not yet here.

15        Again, I would like the Government, of course, to

16 speak to new counsel and, Ms. von Dornum, you will transfer

17 everything that you have, I take it.

18        MS. VON DORNUM:  Of course.  Do you know if he is

19 in the building, Your Honor?

20        THE COURT:  One moment.

21        MS. VON DORNUM:  Given that she lives out of

22 state.

23        THE COURT:  We don't know, but when we adjourn,

24 Mr. D'Agostino can make a call and find out.

25        I am going to put the next conference down for

1    November 1st at 11:00 a.m.

2            Is there an application for the exclusion of time

3    for Speedy Trial Act purposes between now and November 1st?

4            MR. NOBLE:  There is, Your Honor.  The Government

5    submits the interest of justice supports the exclusion of

6    time, as this adjournment will allow the Defendant to

7    resolve any issues with the representation and get the new

8    defense counsel up to speed.  I will also provide all

9    discovery that's been provided thus far to her new counsel.

10           THE COURT:  That's helpful.

11           MS. VON DORNUM:  Your Honor, one moment.

12           THE COURT:  Yes, please.

13           MS. VON DORNUM:  Ms. Franco has no objection to

14   the exclusion of time.

15           THE COURT:  I will exclude time for Speedy Trial

16   Act purposes, the time from today until November 1st, 2024.

17   I do so under Title 18, United States Code, Section

18   3161(h)(7)(A).  I find that the ends of justice served by

19   excluding the time from today until November 1st outweigh

20   the best interest of the public and the Defendant in a

21   speedy trial, primarily because that period of time will

22   allow for new counsel to get up to speed on the case, to be

23   able to consult with his client, and to be able to have

24   discussions with the Government and to review the discovery

25   that the Government, I understand, will now reproduce to the

 1   new counsel and anything else that Ms. von Dornum will

 2   transfer over to new counsel.

 3          So I find that the time is properly excludable and

 4   I exclude that time.  If for some reason there needs to be

 5   an adjournment beyond November 1st, if the parties think it

 6   would be productive after discussions with new counsel, you

 7   can certainly put in a request for an adjournment of that

 8   conference, but I think it makes sense to have a conference,

 9   you know, fairly soon on the calendar.

10          Ms. Franco --

11          THE DEFENDANT:  Your Honor, I have a very, very

12   important --

13          MS. VON DORNUM:  I am just advising her she can

14   speak to Mr. Commissiong.

15          THE COURT:  Yes.  And let me make very clear, now,

16   too, Ms. von Dornum is being relieved, a new lawyer is

17   coming on to the case, so all communications with the Court

18   and all filings should go through the new lawyer.  And I am

19   sure that that person will reach out to you very soon.

20          THE DEFENDANT:  Thank you.

21          THE COURT:  Thank you.

22          Is there anything else we need to take up?

23          MR. NOBLE:  Not from the Government.

24          MS. VON DORNUM:  No, Your Honor.  Thank you.

25          THE COURT:  With thanks to Ms. von Dornum, she is

1    relieved and we are adjourned.  Thank you.

2            MR. NOBLE:  Thank you, Your Honor.

3            (Matter adjourned.)

4

5                    *     *     *     *     *

6

7    I certify that the foregoing is a correct transcript from
     the record of proceedings in the above-entitled matter.

8

9       /s/ Jamie Ann Stanton              October 15, 2024

10  _____     _____
        JAMIE ANN STANTON                      DATE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25