LAW OFFICES OF

# Aidala, Bertuna & Kamins, P.C.

ARTHUR L. AIDALA*
MARIANNE E. BERTUNA*
HON. BARRY KAMINS (RET.)
HON. JOHN M. LEVENTHAL (RET.)
HON. DAVID L. LEWIS (RET.)
JOHN S. ESPOSITO*
MICHAEL T. JACCARINO
IMRAN H. ANSARI
DIANA FABI SAMSON**
DAVID M. SCHWARTZ*+
ANDREA M. ARRIGO*
MICHAEL F. DIBENEDETTO*
LINO J. DE MASI
ROSARIO BONA
GIOVANNI ORLANDO CONTI
CAITLYN CARMICHAEL
ALEXANDRA JO DEBENEDICTIS

*ALSO ADMITTED IN NEW JERSEY
**ALSO ADMITTED IN CONNECTICUT
+ALSO ADMITTED IN D.C

546 FIFTH AVENUE
NEW YORK, NY 10036
TELEPHONE: (212) 486-0011
FACSIMILE: (917) 261-4832
WWW.AIDALALAW.COM

8118 - 13TH AVENUE
BROOKLYN, NEW YORK 11228
TELEPHONE: (718) 238-9898
FACSIMILE: (718) 921-3292

OF COUNSEL
JOSEPH A. BARATTA
ANTOINETTE LANTERI
WILLIAM R. SANTO
PETER S. THOMAS
LAWRENCE SPASOJEVICH
SIGURD SORENSON
HON. MICHAEL C. FARKAS (RET.)

SENIOR COUNSEL
LOUIS R. AIDALA
JOSEPH P. BARATTA

June 3, 2025

Hon. Gary A. Brown
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11201

       Re: ***United States of America v. Jacob Israel Walden***
            Case No.: 2:24-cr-521 (GRB)-1
            REPLY LETTER

Dear Judge Brown,

      We respectfully submit this letter in reply to the Government's Memorandum of Law in opposition to the defendant's Motion to Suppress Evidence.

      As outlined below, the Government's arguments opposing suppression fail for several reasons. First, in applying the border search exception, the Government fails to adequately distinguish the "classic" border search of those who enter the country, from the occasional and irregular search of citizens who are merely exiting the country for a short duration, and whose cell phones are searched.

      Second, the Government fails to address the substantial arguments in United States v. Smith, 673 F.Supp.3d 381 (S.D.N.Y, 2023), *appeal pending,* No. 24-1680 (2d Cir.) which applied Riley v. California to border searches of cell phones.

      Third, the Government failed to adequately address the holding in United States v. Smith, 967 F.3d 198 (2d. Cir., 2020); rather, in conclusory terms, it merely states that Smith does not apply to border searches.

Finally, the Government's "good faith exception" argument is foreclosed by Agent Moriarity's declaration, dated June 1, 2025, and submitted as Exhibit 1 to the Government's memorandum.

I. The Border Search Exception Does Not Apply Squarely to the Search of Defendant's Phone at JFK Airport (Government's Point 1, Page 14)

The Government contends that the search of the defendant's cell phone was a "classic border search". The only similarity, however, between the search in this case and a "classic border search" was the fact that it occurred at an international airport, i.e., the functional equivalent of a border.

For example, the Government argues that "the search at issue involves a classic search for contraband (here digital child pornography) transported across the international border, which is widely recognized to fit comfortably within the traditional border search doctrine" (p. 19). It then cites to three cases in which a border search for child pornography was upheld. The searches in those cases, however, involved individuals entering the country rather than a citizen, such as the defendant, who was leaving the country for a short vacation. The search in the defendant's case is the only one in this circuit, to our knowledge, where a citizen's phone was searched for child pornography where the citizen was leaving the country.

While it is true, as the Government argues, that the United States has an interest in preventing the export of contraband such as child pornography (p. 25), the Government fails to weigh that interest against the privacy interests of those who are subjected to cell phone searches and the level of intrusiveness of those searches under the Fourth Amendment.

For example, with regard to United States v. Smith, 673 F.Supp.3d 381 (S.D.N.Y, 2023), *appeal pending,* No. 24-1680 (2d Cir.), which applied Riley v. California to border searches, other than characterizing the decision as an outlier, the Government made no effort to distinguish Smith from the defendant's case. In Smith, the court found the Government's interest in interdicting "digital contraband" to be "weak". 673 F.Supp.3d 381, at 395.

The Government cites several district court decisions within the Second Circuit (United States v. Gavino, 2024 WL 85072, United States v. Bongiovanni, 2022 WL 17481884, at p. 20) as reflecting the view that the Second Circuit has taken a broad view of the border search exception and one which would permit the type of search conducted in the defendant's case.

In the other district court decisions within the Second Circuit, however, courts have reviewed the Circuit's view of the border search exception and found, for example, "that while the contours of the exception continue to be debated, there are instances such as this where an officer claiming an exception clearly operates outside of what is permissible under the Fourth Amendment." United States v. Fox, 2024 WL 3520767

(E.D.N.Y., 2024), at 9. See also United States v. Sultanov, 742 F. Supp.3d 258 (E.D.N.Y., 2024), United States v. Smith, supra.

In addition, in the defendant's memorandum, we cited to district court cases, in this Circuit, United States v. Djibo, 151 F. Supp.3d 297 (E.D.N.Y, 2015) and United States v. Fox, 2024 WL 3520767 (E.D.N.Y., 2024), to support our argument that a warrantless search of a cell phone is unlawful. In analyzing those cases, the Government has characterized those decisions as involving "particularly offensive searches". That phrase seems rather ambiguous in that any violation of the Fourth Amendment is "offensive"; if the search in the defendant's case is also unlawful, suppression is warranted, whether or not the facts are "particularly offensive".

Finally, the Government states that the "defendant erroneously cites to Customs and Border Protection ("CBP") guidance", p. 34, footnote 9. It further states that CBP guidance and regulations do not apply to Homeland Security Investigations ("HSI"). It should be noted that, according to Agent Moriarity's report of the investigation, (Exhibit B, defendant's memorandum) both HSI agents and CBP agents responded to JFK airport on April 20, 2024 to conduct "an outbound inspection and border search" of Walden. As this was a joint operation of both Homeland Security and Customs, we argue that CBP directives were relevant in this case.

II. The Time Between the Seizure and the Search of the Defendant's Phone was Unreasonable (p. 28, Gov't memo.)

The Government argues that United States v. Smith, 967 F.3d 198 (2d Cir., 2020) "applies only to searches in the country's interior, not at the border" (p. 28, memo). Smith does not contain any language to that effect; the Government rests that argument on the theory that a search warrant is not required to search an electronic device at the border. The converse, however, is also true: if the Second Circuit should hold that a warrant is required for a cell phone at the border, then Smith would apply.

The Government also contends that if Smith does apply to border searches, there was sufficient justification for the delay of over three months, i.e., the agents were diligently serving summonses and interviewing victims. It should be noted, however, that in the affidavit for the search warrant, Agent Duchene did not mention any "activity" that caused a delay in seeking a warrant. However, Agent Duchene applied for the search warrant two weeks after two district courts judges in the same district held that a warrantless search of a cell phone pursuant to a border search was unreasonable. United States v. Fox, 2024 WL 352067 (E.D.N.Y, 2024), United States v. Sultanov, 742 F. Supp. 3d 258 (E.D.N.Y, 2024). It would seem logical that that was the real impetus for the timing of the search warrant application.

3

III. Suppression Should Not Be Foreclosed By the Application of the Good Faith Exception (p. 33, Government Brief)

On several occasions in the Government's memorandum, it argues that the defense has advanced an implausible theory: HSI agents believed they had probable cause for the defendant's arrest but that they waited to search the defendant at the border to avoid the warrant requirement (pp. 23, 39). Therefore, it was argued, there is "no credible basis for any allegation that agents acted in bad faith", at 39.

In the affidavit in support of the search warrant, there are several headings, the first of which is "Probable Cause" (p. 6). Below that there are four sub-headings: the second sub-heading is titled "Walden Identified as Purchaser of Child Sexual Abuse Material".

Under that sub-heading, Agent Duchene lists a series of events that led to the identification, in September, 2023, of the defendant as a "possible purchaser/possessor" of child sexual exploitation material.

First, law enforcement identified Cash App accounts "Jake W" and "JW0543" which utilized payment cards with two identified credit card numbers. The holder of those cards made approximately thirteen payments totaling $605 to the Hine Cash App account from October, 2020 through in or around November, 2021 (¶ 14).

Law enforcement then reviewed the subpoenaed records of the "Jake W" Cash App account which provided the defendant's name, date of birth, social security number and an address in Woodmere, New York (¶ 16).

Finally, through subsequent investigative steps, law enforcement officers linked the defendant to the above identifying personal information to the "Jake W" Cash App account and linked the Woodmere address to the defendant's business address (¶ 18).

At that point, the defendant argues that there clearly was probable cause for the defendant's arrest.

After the defendant's memorandum was filed, Agent Moriarty signed a declaration on June 1, 2025. In his declaration, he stated that, as of September, 2023, "I did not believe that I had probable cause to arrest Walden.... Based on the electronic payment records from the Cash App, I had a strong suspicion that Walden possessed pornography." (¶ 5, emphasis added.) The use of the term "strong suspicion" seems odd since that term is not one normally used by law enforcement officers; the term "reasonable suspicion" has always been used, when probable cause is lacking.

We argue that Moriarity was reluctant to state that probable cause existed as of September, 2023. Since the defendant was not arrested until after a warrantless search of his cell phone at the airport, we also argue that the delay was an improper guise used to avoid having to obtain a search warrant for the search of the cell phone.

4

For all of the above reasons, the defense seeks suppression of any evidence obtained as a result of the warrantless search of the defendant's cell phone.

Respectfully,

*Barry Kamins*

Barry Kamins

cc: To all parites via ECF/Pacer