# EXHIBIT D



August 11, 2025

AUSA Leonid Sandlar
U.S. Department of Justice
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11021

VIA EMAIL: Leonid.Sandlar@usdoj.gov


Re: Necessity of Egbert Simon's Testimony – April 21, 2024 Seizure of Walden's Phone

Dear AUSA Sandlar:

I am renewing—and strengthening—my demand that the government produce Special Agent Egbert Simon for live testimony at the August 25 evidentiary hearing. His testimony is essential to establish that the April 21, 2024 seizure of Mr. Walden's phone was **not** a lawful "border search" under any controlling authority.

## 1. Simon's Prior Testimony Proves What a Real CBP Border Search Requires

In *United States v. Robinson* (E.D.N.Y. 23-CR-192), Simon testified **solely** about CBP's protocols for seizing electronic devices during a border search. He had **no involvement** in the Robinson investigation and no personal knowledge of the facts—his value was, and is, his expertise as a former CBP officer and supervisor on **the actual, codified process CBP must follow** before seizing a phone at the border.

Those CBP-required steps are:

- Arrival on an **inbound** flight and processing at primary inspection.
- Mandatory referral to **secondary inspection** if a TECS lookout so directs.
- Device search by a CBP secondary officer, with **supervisor authorization**.
- Placement of the device in **airplane mode** before search.
- Provision of CBP's **Border Search of Electronic Devices Tear Sheet** (advising authority, rights, and potential detention/seizure).
- If contraband (including CSAM) is found, seizure with a **written custody receipt**.
- If the inspection is **negative** (no contraband found), the device is returned to the traveler.

On that last point, Simon testified:

**BIENENFELD LAW**

Admitted New York and Florida

680 Central Avenue
Suite 108
Cedarhurst, NY  11516

saul@bienenfeldlaw.com
212-363-7701
www.bienenfeldlaw.com



"…If the inspection is negative, they might want to update that record to reflect that… When they do their inspection and close it out in the system, that generates a notification to the record owner. It will either say positive or negative. And then based off that, the record owner can look at that and make a determination whether or not further inspections are necessary."

Translation: No contraband, **no seizure**.

## 2. Walden's Case Skipped Every One of These Steps

The evidence shows:

- No CBP primary inspection.
- TECS record altered from "Refer to Customs/Secondary" to a **silent hit** to keep CBP from intercepting.
- No referral to CBP secondary inspection.
- No CBP officer reviewed the phone.
- No CBP supervisor authorization.
- No airplane mode placement by CBP.
- No CBP tear sheet provided.
- No CBP custody receipt.
- Bypass of the CBP safeguard requiring **return of the phone** if no CSAM was visible in a manual review.

## 3. Why Simon Is Critical Here

As in *Robinson*, I am not calling Simon for case facts—I am calling him because his CBP protocol testimony will give Judge Brown the **yardstick** to measure what happened. There is **no** case law, and likely no policy, establishing any pre-seizure safeguards for HSI. My assumption, based on experience, is that HSI has none. That makes it all the more vital for the Court to hear directly that:

- CBP has strict, documented steps before seizure.
- HSI skipped every one of them.
- The "border search" label is being used to bypass the Fourth Amendment.

You say CBP and HSI are separate agencies. On paper, maybe. In practice here, they acted as **one**:

- All silent hit notices came from `donotreply@cbp.dhs.gov`.
- All subject records were written for CBP action ("Refer to Customs," "Refer to Immigration," "Escort to Secondary").
- HSI was riding CBP's system and branding—but not following CBP's rules.


And the CBP tear sheet (never given to Walden) bears the CBP seal: **"Department of Homeland Security."** Same department, same mission, same joint operation. For constitutional purposes, they are one arm of DHS.

Unlike CBP, HSI appears to have no protocol for a seizure at the border. Thus an HSI type seizure at the border must be scrutinized more carefully by the court. Simon's testimony is relevant to the hearing because it provides a yardstick by which the court can evaluate the lawfulness of Moriarity's conduct, an HSI agent. While Simon was a CBP agent, he can provide CBP type criteria that measure the reasonableness of a border search. Without those criteria, the court will have no basis for evaluating the seizure by an HSI agent.

### 4. Legal Significance

The "border search exception" applies only when the search is conducted **as part of CBP's border inspection process**. This seizure was not. It was a warrantless HSI criminal evidence grab on the jetway, without CBP involvement, without CBP protocols, and without traveler notice.

Simon's testimony will expose the difference between a lawful CBP border search and what actually happened—making clear that the exception does not apply and suppression is required.

For these reasons, I insist Simon testify live at the hearing. His direct, sworn explanation of CBP's actual process—unchallenged in *Robinson*—is essential for the Court to understand why this was not a border search.


Sincerely,

*Saul Bienenfeld*

Saul W. Bienenfeld