CMM:LS/MDM
F. #2024R00485

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

JACOB ISRAEL WALDEN,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Docket No. 24-CR-521 (S-1) (GRB)

MEMORANDUM OF LAW IN SUPPORT OF
THE GOVERNMENT'S MOTIONS IN LIMINE

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Leonid Sandlar
Trial Attorney

Michael D. Manzo
Assistant U.S. Attorney
(Of Counsel)

TABLE OF CONTENTS

PRELIMINARY STATEMENT ..... 1

RELEVANT BACKGROUND ..... 2

I. The Offense Conduct ..... 2

A. Walden's Purchase, Receipt, and Possession of CSAM ..... 3

B. Minor Victims Jane Does 1 and 2 ..... 4

C. Minor Victims Jane Does 3 and 4 ..... 4

D. Other Minor Victim Evidence ..... 5

II. The Search and Seizure of the Defendant's iPhone ..... 5

III. The Defendant's Arrest and Charges ..... 6

IV. Discovery of Explicit Chats with Minor Females on a Contraband Cellphone ..... 7

ARGUMENT ..... 7

I. The Court Should Issue a Protective Order Restricting Disclosure of the Victims' Identities at Trial ..... 7

A. Applicable Law ..... 7

B. Discussion ..... 10

II. The Court Should Admit Images of Minors Engaged in Sexually Explicit Conduct Subject to Certain Procedures ..... 12

III. The Court Should Admit Evidence Concerning the Defendant's Sexual Exploitation of Minors Other Than the Victims Underlying the Charged Counts ..... 13

A. Applicable Law ..... 15

B. Discussion ..... 17

IV. The Court Should Preclude Evidence and Argument Concerning the Victims' Sexual Behavior with Anyone Other Than the Defendant ..... 20

A. Applicable Law ..... 21

B. Discussion ..... 22

V. The Court Should Preclude Evidence and Argument about Punishment, Mitigation Factors, Law Enforcement Tactics, and Other Irrelevant Topics ........................................................ 24

A. Punishment and Collateral Consequences .................................................................. 24

B. Mitigating Factors ......................................................................................................... 25

C. Law Enforcement Tactics ............................................................................................. 26

SEALING REQUEST ............................................................................................................. 28

CONCLUSION ........................................................................................................................ 28

## TABLE OF AUTHORITIES

### CASES

Chambers v. Mississippi,
410 U.S. 284 (1973)....................................................................................................... 9
Delaware v. Van Arsdall,
475 U.S. 673 (1986)....................................................................................................... 9
Globe Newspaper Co. v. Superior Court for Norfolk County,
457 U.S. 596 (1982)....................................................................................................... 8
Lugosch v. Pyramid Co.,
435 F.3d 110 (2d Cir. 2006) ......................................................................................... 28
Shannon v. United States,
512 U.S. 573 (1994)..................................................................................................... 24
Taylor v. Illinois,
484 U.S. 400 (1988)..................................................................................................... 23
United States v. Alvarez,
601 F. App'x 16 (2d Cir. 2015) .................................................................................... 21
United States v. Archambault,
740 F. App'x 195 (2d Cir. 2018) .................................................................................. 15
United States v. Battaglia,
2008 WL 144826 (S.D.N.Y. Jan. 15, 2008) ................................................................ 25
United States v. Bifield,
702 F.2d 342 (2d Cir. 1983) ......................................................................................... 23
United States v. Bright,
No. 20-3792, 2022 WL 53621 (2d Cir. Jan. 6, 2022)................................................... 17
United States v. Cephus,
684 F.3d 703 (7th Cir. 2012) ........................................................................................ 21
United States v. Corley,
679 F. App'x 1 (2d Cir. 2017) ...................................................................................... 23
United States v. Daly,
842 F.2d 1380 (2d Cir. 1988) ....................................................................................... 18
United States v. Daskal,
No. 21-CR-110 (NGG) (LB), 2023 WL 9424080 (E.D.N.Y. July 12, 2023)............ 8, 9, 10, 22
United States v. Davis,
624 F.3d 508 (2d Cir. 2010) ......................................................................................... 16
United States v. Demosthene,
334 F. Supp. 2d 378 (S.D.N.Y. 2004) ......................................................................... 27
United States v. DiMarzo,
80 F.3d 656 (1st Cir. 1996)........................................................................................... 25
United States v. Downing,
297 F.3d 52 (2d Cir. 2002) ........................................................................................... 17
United States v. Elbert,
561 F.3d 771 (8th Cir. 2009) ........................................................................................ 21
United States v. Foley,
740 F.3d 1079 (7th Cir. 2014) ...................................................................................... 15

United States v. Garcia,
291 F.3d 127 (2d Cir. 2002) .................... 17
United States v. Germosen,
139 F.3d 120 (2d Cir. 1998) .................... 17
United States v. Griffith,
284 F.3d 338 (2d Cir. 2002) .................... 8
United States v. Kelly,
No. 07-CR-374 (SJ), 2008 WL 5068820 (E.D.N.Y. July 10, 2008) .................... 9
United States v. Kidd,
385 F. Supp. 3d 250 (S.D.N.Y. 2019) .................... 9
United States v. Langford,
990 F.2d 65 (2d Cir. 1993) .................... 17
United States v. Larson,
112 F.3d 600 (2d Cir. 1997) .................... 16
United States v. Levy,
731 F.2d 997 (2d Cir. 1984) .................... 17
United States v. Lewis,
110 F.3d 417 (7th Cir. 1997) .................... 25
United States v. Lights,
2016 WL 7098633 (S.D.N.Y. Dec. 5, 2016) .................... 27
United States v. Marcus,
No. 05-CR-457 (ARR), 2007 WL 330388 (E.D.N.Y. Jan. 31, 2007) .................... 9
United States v. Polouizzi,
564 F.3d 142 (2d Cir. 2009) .................... 12
United States v. Ramone,
218 F.3d 1229 (10th Cir. 2000) .................... 22
United States v. Ray,
No. 20-CR-110 (LJL), 2022 WL 729861 (S.D.N.Y. Mar. 10, 2022) .................... 22
United States v. Reese,
933 F. Supp. 2d 579 (S.D.N.Y. 2013) .................... 27
United States v. Rivera,
799 F.3d 180 (2d Cir. 2015) .................... 22
United States v. Saint Clair,
No. 22-2100, 2024 WL 413422 (2d Cir. Feb. 5, 2024) .................... 16
United States v. Sebolt,
460 F.3d 910 (7th Cir. 2006) .................... 16
United States v. Sibley,
681 F. App'x 457 (6th Cir. 2017) .................... 23
United States v. St. Rose,
No. 11-CR-349 (SJ), 2012 WL 1107659 (E.D.N.Y. Apr. 2, 2012) .................... 26
United States v. Stroming,
838 F. App'x 624 (2d Cir. 2021) .................... 15, 16
United States v. Sturm,
673 F.3d 1274 (10th Cir. 2012) .................... 15
United States v. Terranova,
750 F. Supp. 3d 15 (E.D.N.Y. 2024) .................... passim

United States v. Thomas,
116 F.3d 606 (2d Cir. 1997) ........ 25
United States v. Thompson,
178 F. Supp. 3d 86 (W.D.N.Y. 2016) ........ 9
United States v. Vickers,
708 F. App’x 732 (2d Cir. 2017) ........ 16

**STATUTES**

18 U.S.C. § 2256 ........ 2
18 U.S.C. § 3509 ........ 8
18 U.S.C. § 3771 ........ 8

**RULES**

Fed. R. Evid. 104 ........ 27
Fed. R. Evid. 401 ........ 27
Fed. R. Evid  403 ........ 27
Fed. R. Evid. 404(b) ........ 16
Fed. R. Evid. 412 ........ 21, 22
Fed. R. Evid. 414 ........ 15, 18

## PRELIMINARY STATEMENT

Trial in this matter is scheduled to begin on November 9, 2026. The government respectfully submits this memorandum of law in support of its motions in limine to:

1) preclude disclosure of the names and identifying information of the minor victims and individuals who were minors at the time of the charged conduct, including by permitting them to be identified at trial using initials, first names, or pseudonyms;

2) admit images and videos depicting minors engaged in sexually explicit conduct, subject to specified procedures concerning their publication to the jury and courtroom gallery;

3) admit, pursuant to Federal Rules of Evidence 414 and 404(b), evidence concerning the defendant's sexual exploitation of minors other than the victims underlying the charged offenses;

4) preclude, pursuant to Federal Rules of Evidence 412 and 403, evidence or argument concerning any victim's sexual behavior, sexual communications, or sharing or production of sexual images with anyone other than the defendant;

5) preclude evidence and argument concerning possible punishment or collateral consequences, mitigation factors, allegedly unlawful law enforcement tactics, and other irrelevant matters.

# RELEVANT BACKGROUND[1]

## I. The Offense Conduct

The evidence at trial is expected to show that, over a period of years, the defendant Jacob Walden ("Walden" or the "defendant") used internet-based messaging, payment, and cloud-storage services to obtain child sexual abuse material ("CSAM") in two principal ways.[2] First, Walden purchased existing collections of CSAM from online producers and distributors. Second, Walden communicated directly with minor females and paid them to produce sexually explicit images and videos of themselves for him. In carrying out this conduct, Walden used, among other services, Snapchat, Telegram, Cash App, PayPal, Venmo, and the cloud storage service Mega. Walden's communications with these victims further reflect his relentless efforts to persuade the minor females to recruit their peers—schoolmates, friends, siblings, or cousins—to produce sexually explicit images and videos for Walden.

---

[1] The proffer of facts set forth herein does not purport to provide a complete statement of all facts and evidence of which the government is aware or will seek to introduce at trial. In addition, the proffer of facts set forth in this motion as to any witness's anticipated testimony is a collection of the sum and substance of the witness's anticipated testimony and does not purport to provide a complete statement of all facts and evidence of which the government is aware or will seek to introduce through the respective witness's anticipated testimony.

[2] The term "child pornography" is defined as set forth in 18 U.S.C. § 2256(8), which, in pertinent part, states that it is "any visual depiction," such as a photograph or video, of "sexually explicit conduct, where . . . the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct." The term "sexually explicit conduct" is defined as "actual or simulated . . . (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the anus, genitals, or pubic area of any person." Id. § 2256(2)(A).

A. Walden's Purchase, Receipt, and Possession of CSAM

The investigation that ultimately identified Walden arose in part from a broader law-enforcement investigation of an online CSAM production and distribution scheme operated by Ryan Hine.[3] Hine used various online identities, including "Rosie Snow," "Lacie Love," and "Kandie Kae," to advertise, sell, and distribute CSAM to buyers. In September 2023, investigators reviewing records associated with a Hine-controlled Cash App account identified approximately thirteen payments, totaling approximately $605, made between October 2020 and November 2021 from Cash App accounts associated with Walden.

The investigation subsequently uncovered evidence that Walden purchased substantial quantities of CSAM from other online sellers. For example, on or about January 2, 2024, Walden purchased from a Telegram user operating under the name "Kris Only Sell" access to collections containing at least approximately 500 CSAM images and 5,000 CSAM videos. Walden paid the seller through PayPal and received access to the material through Mega links and a Telegram channel. Investigators later determined that Walden saved some of the material that he had purchased into his Mega cloud storage accounts.

Investigators also recovered CSAM stored on Walden's iPhone. That material included images depicting an identified minor victim, [redacted], who was 16 years old when the images were created. Investigators also recovered a Telegram conversation concerning Walden's payment for and receipt of images that another identified victim, [redacted], had produced while she was a minor.

[3] In April 2026, Ryan Hine was sentenced to 30 years in prison for enticing a minor to produce child pornography and for advertising child pornography to other individuals over the internet. See United States v. Hine, Case No. 23-cr-4012 (W.D. Mo.).

The iPhone contained additional CSAM and communications concerning Walden's acquisition and production of CSAM.

B. Minor Victims Jane Does 1 and 2

In August 2023, Walden began communicating on Snapchat with two minor female victims, [redacted] and [redacted], who are identified as Jane Does 1 and 2 in the Superseding Indictment. The evidence at trial is expected to show that Walden first found one of the victims, Jane Doe 2, on a social networking site, and used Jane Doe 2 to recruit her girlfriend Jane Doe 1.

Walden communicated with the two victims via Snapchat, including together in a group chat, in which he enticed the minors to produce sexually explicit images and videos for him in exchange for payment. The recovered Snapchat records include sexually explicit images and videos produced by the victims at Walden's request and transmitted to Walden. Among other things, investigators recovered videos depicting nudity and masturbation. The evidence at trial is expected to show that Walden encouraged Jane Does 1 and 2 to recruit other younger females.

The communications, screenshots recovered from his iPhone, and electronic payment records from Cash App reflect that Walden paid the victims for the CSAM. In total, investigators identified eight successful Cash App payments totaling approximately $615 from Walden to Jane Does 1 and 2 between August and October 2023.

C. Minor Victims Jane Does 3 and 4

Walden used a similar pattern of conduct with two additional minor female victims, [redacted] and [redacted], who are identified as Jane Does 3 and 4 in the Superseding Indictment.

Walden first contacted Jane Doe 3 through Snapchat in or about December 2023. He subsequently communicated with Jane Doe 3 through Snapchat and Telegram, paying her to produce CSAM. Walden used Jane Doe 3 to recruit her friend, Jane Doe 4. Walden then paid both Jane Does 3 and 4 to produce sexually explicit images and videos for him. The

communications further reflect that Walden asked the victims to recruit other minor females to produce sexually explicit material.

Investigators recovered at least four CSAM videos and four CSAM images produced by Jane Doe 3 and at least eight CSAM videos and one CSAM image produced by Jane Doe 4. They also identified 25 successful PayPal payments totaling approximately $4,960 from Walden to accounts used by Jane Does 3 and 4 between December 2023 and July 2024. The electronic communications recovered from Walden's iPhone extend through April 2024.

D. Other Minor Victim Evidence

The investigation also identified evidence that Walden sought CSAM from additional minors beyond the victims underlying the charged counts. Among other things, the evidence recovered from Walden's devices and online accounts includes communications concerning Walden's enticement of other minor females to produce CSAM in exchange for payment. Investigators have identified at least seven (7) minor female victims other than the six (6) described above.

II. The Search and Seizure of the Defendant's iPhone

On April 21, 2024, while Walden was preparing to depart John F. Kennedy International Airport for Rome, Italy, law enforcement officers conducted a border inspection of items in his possession, including an Apple iPhone. Walden identified the iPhone as his property and voluntarily provided his telephone number and the passcode necessary to unlock it.

During a preliminary manual inspection of the iPhone, investigators located a Cash App account bearing identifiers associated with Walden. Investigators also located in Walden's wallet a credit card that had previously been identified as a funding source for digital payment accounts used in transactions associated with CSAM.

During the inspection, investigators informed Walden that they worked on child exploitation investigations and asked him about communications with "Rosie Snow" and "Lacie Love," the online monikers used in Ryan Hine's CSAM production and distribution scheme. Walden responded, among other things, that "Rosie" and "Lacie" were not one person but rather a "group" that "went by different names."

Agents seized the iPhone. A forensic extraction of the iPhone revealed multiple images and videos containing or appearing to contain CSAM, as well as communications concerning the production, distribution, purchase, and receipt of CSAM. Law enforcement subsequently obtained a search warrant for the extraction of the iPhone on August 7, 2024.

The defendant later moved to suppress evidence obtained from the iPhone, which the Court denied following an evidentiary hearing. See ECF No. 88.

## III. The Defendant's Arrest and Charges

On July 30, 2024, Walden was arrested while again preparing to travel abroad. He was initially charged by complaint with possession of CSAM, in violation of 18 U.S.C. § 2252(a)(4)(B). See ECF No. 1.

On December 18, 2024, a grand jury sitting in this District returned a six-count indictment against the defendant. ECF No. 31. On May 6, 2026, the grand jury returned a superseding indictment, which added two additional charges. See ECF No. 97 (the "Superseding Indictment"). Counts One through Four of the Superseding Indictment charge the defendant with sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a). Count Five charges the defendant with receipt of CSAM, in violation of 18 U.S.C. § 2252(a)(2)(B). Count Six charges the defendant with possession of CSAM, in violation of 18 U.S.C. § 2252(a)(4)(B). Count Seven and Count Eight charge the defendant with access with intent to view CSAM, in violation of 18 U.S.C. § 2252(a)(4)(B).

## IV. Discovery of Explicit Chats with Minor Females on a Contraband Cellphone

On January 22, 2025, the Court entered an order of permanent detention as to Walden. ECF No. 39. Since that date, Walden has been detained at the Metropolitan Detention Center ("MDC") in Brooklyn, New York. On December 18, 2025, MDC officials conducted a protective search of Walden's jail cell and recovered an Apple iPhone from under the sheet on his lower bunk bed. At the time of the search, the cell was occupied by one prisoner, Walden. MDC officials seized the Apple iPhone, and investigators later forensically analyzed it pursuant to a warrant. During the review of the forensic extraction, law enforcement also identified evidence of the use of Snapchat to communicate with and solicit photos from multiple Snapchat accounts linked to minor females between 13 and 15 years of age. According to records obtained from Snapchat, the account was active until December 18, 2025, the date on which the Apple iPhone was seized from Walden's cell.

# ARGUMENT

## I. The Court Should Issue a Protective Order Restricting Disclosure of the Victims' Identities at Trial

The government moves, under 18 U.S.C. § 3509, for a protective order restricting disclosure of the victims' names and other identifying information. Such protections are routinely granted in proceedings involving individuals who were minors when sexually exploited, particularly where, as here, the evidence includes sexually explicit images and videos of the victims.

### A. Applicable Law

Federal law expressly authorizes courts to protect the identities of child victims. Under 18 U.S.C. § 3509, upon the motion of "any person," a court may issue an order protecting a child "from public disclosure of the name of or any other information concerning the child in the

course of the proceedings" if the court determines "that there is a significant possibility that such disclosure would be detrimental to the child." 18 U.S.C. § 3509(d)(3)(A). Section 3509 defines a "child" as a person under 18 who is or is alleged to be a victim of physical abuse, sexual abuse, or exploitation. Id. § 3509(a)(2)(A). See also United States v. Griffith, 284 F.3d 338, 342 n.1 (2d Cir. 2002).

Separately, the Crime Victims' Rights Act grants crime victims "[t]he right to be reasonably protected from the accused" and "[t]he right to be treated with fairness and with respect for the victim's dignity and privacy." 18 U.S.C. § 3771(a)(1), (8). Those protections are not limited to victims who remain minors at the time of trial.

In considering a request to restrict disclosure of a victim's identity at trial, courts weigh the victim's interest in anonymity against the rights of the public and press to access the trial and the defendant's due-process and cross-examination rights. United States v. Terranova, 750 F. Supp. 3d 15, 26 (E.D.N.Y. 2024) (granting government's request for an order restricting the disclosure of child victims' and their parents' identities at trial, including by allowing them to testify under their first names or under a pseudonym) (citations and internal quotation marks omitted). Relevant considerations include the witness's safety and need for protection from harassment, the explicit nature of the anticipated evidence or testimony, whether the victim was a child at the time of the alleged sexual abuse, the potential professional or personal consequences of disclosure, and the likelihood of significant public attention. See United States v. Daskal, No. 21-CR-110 (NGG) (LB), 2023 WL 9424080, at *3 (E.D.N.Y. July 12, 2023).

Although "the press and general public have a constitutional right of access to criminal trials," that right "is not absolute." Globe Newspaper Co. v. Superior Court for Norfolk County, 457 U.S. 596, 604-06 (1982). A limitation on access to identifying information is

permissible where it is narrowly tailored to serve a compelling government interest. Terranova, 750 F. Supp. 3d at 26. Courts have repeatedly recognized a compelling interest in protecting victims of child sexual abuse from needless anxiety, stigma, harassment, embarrassment, and invasion of privacy. See id.; United States v. Kidd, 385 F. Supp. 3d 250, 255 (S.D.N.Y. 2019) (permitting minor victims to testify under pseudonyms); United States v. Thompson, 178 F. Supp. 3d 86, 96 (W.D.N.Y. 2016) (finding a compelling interest in limiting the identification of minor victims given the potential for explicit evidence in the case to have adverse personal, professional, and psychological consequences); see also United States v. Kelly, No. 07-CR-374 (SJ), 2008 WL 5068820, at *2 (E.D.N.Y. July 10, 2008) (granting protection concerning the identities of victims of sexual exploitation, including victims who were no longer minors).

As courts recognize, a narrowly tailored restriction on public disclosure ordinarily does not interfere with a defendant's rights under the Confrontation Clause. Although a defendant has a constitutional right to confront adverse witnesses, courts have "wide latitude" to impose reasonable restrictions on cross-examination based on harassment, prejudice, confusion, witness safety, and marginal relevance. Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986); see also Chambers v. Mississippi, 410 U.S. 284, 295 (1973). Once the government identifies a legitimate need for protection, the defendant must identify a "particularized need" for otherwise protected identifying information. See United States v. Marcus, No. 05-CR-457 (ARR), 2007 WL 330388, at *1 (E.D.N.Y. Jan. 31, 2007); Terranova, 750 F. Supp. 3d at 26.

Finally, "[c]ourts in this Circuit have also acknowledged the pain and attendant social stigma that is often endured by those who come forward with allegations of sexual assault or abuse." Daskal, 2023 WL 9424080, at *3. For that reason, "courts have held that public policy considerations favor granting protective orders to alleged victims of sexual assault, and young

victims of sexual assault in particular, to encourage crime victims to testify by protecting them from the adverse consequences of testifying." Id. (quoting Thompson, 178 F. Supp. 3d at 96 (internal quotation marks omitted)). Indeed, "the practice of allowing alleged victims of sexual abuse to testify under a pseudonym has been widely permitted because requiring alleged victims to publicly provide their names could chill their willingness to testify for fear of having their personal histories publicized and may cause further harassment or embarrassment." Id. (quoting United States v. Maxwell, No. 20-CR-330 (AJN) (S.D.N.Y.) (internal quotation marks omitted)).

B. Discussion

A protective order is appropriate here. This case concerns the sexual exploitation of individuals who were minors, and the government plans to call several victims to testify at trial and to introduce highly sensitive evidence including sexually explicit images and videos of the victims, electronic communications concerning their production of that material, and associated records. Publicly connecting the victims' true identities to that evidence would create a substantial risk of embarrassment, stigma, and enduring loss of privacy for individuals who are just entering adulthood. Those concerns are particularly acute because this criminal case has received coverage from a victims' rights organization, which may continue bringing attention to the matter.

The need for protection applies irrespective of whether the victim testifies at trial. Public disclosure of the identity of a victim whose sexually explicit images are shown or discussed at trial creates the same basic privacy concerns even if the government proves the relevant offense through electronic records, law enforcement testimony, or other evidence. In particular, any identifying information disclosed publicly can persist indefinitely online.

The requested protections, described below, impose only a minimal limitation on the public's right of access to court proceedings. The public will remain able to observe the trial, hear the evidence, and understand the nature of the government's allegations and proof. The

requested order would withhold only the victims' identifying information. See Terranova, 750 F. Supp. 3d at 27. Similarly, to the extent any victim testifies, the defendant will remain free to conduct constitutionally adequate cross-examination concerning relevant matters without publicly disclosing that victim's full identity.

Accordingly, the government respectfully requests that the Court issue a protective order:

1. Prohibiting disclosure of the victims' full names and requiring that they instead be identified by an agreed-upon first name, initials, or pseudonym at trial and in other public proceedings;

2. Prohibiting disclosure of information that would tend to identify a victim, including home addresses, telephone numbers, personal email addresses, victim online-messaging or social-media usernames, and schools or places of employment;

3. Prohibiting unnecessary disclosure of the names and identifying information of victims' parents and relatives and, where appropriate, permitting any such witnesses to testify using first names or pseudonyms;

4. Requiring public trial exhibits containing such identifying information to be appropriately redacted or sealed and prohibiting publication of unredacted identifying information to the courtroom gallery;

5. Permitting appropriate redactions from publicly available trial transcripts of identifying information inadvertently disclosed during trial; and

6. Continuing these protections through the final resolution of this matter, including any post-trial and sentencing proceedings.

## II. The Court Should Admit Images of Minors Engaged in Sexually Explicit Conduct Subject to Certain Procedures

At trial, the government intends to introduce a limited number of images and videos depicting minors engaged in sexually explicit conduct. Such evidence is directly relevant to the charged offenses involving the production, receipt, possession, and access with intent to view CSAM. Among other elements, the government must prove that the relevant materials constitute visual depictions of minors engaged in sexually explicit conduct and, as applicable, that Walden knowingly produced, received, possessed, or accessed those materials.

Notwithstanding the graphic nature of the evidence, the government is entitled to present the evidence necessary to prove the charged offenses. See United States v. Polouizzi, 564 F.3d 142, 153 (2d Cir. 2009) (recognizing the government's right to present evidence establishing the "human significance" of a stipulated or otherwise contested fact and "to implicate the law's moral underpinnings") (quoting Old Chief v. United States, 519 U.S. 172, 187-88 (1997)). The government is not required to prove a child pornography offense through sterile descriptions alone.

Here, the government anticipates introducing representative images or excerpts from videos underlying the charged offenses, including material produced at Walden's request by minor victims and representative material relevant to the receipt, possession, and access with intent to view counts. Given the very large quantities of CSAM associated with certain charged conduct, the government does not intend to expose the jury unnecessarily to duplicative graphic material. The evidence published to the jury will be limited to what is appropriate to establish the relevant elements and facts.

To protect the victims' privacy while permitting both parties to present relevant evidence, the government respectfully proposes the following procedures:

1. Before publishing an image or video depicting sexually explicit conduct by a minor, the presenting party will provide advance warning to the Court and the jury;

2. The image or video will be displayed only to the jury, the Court, the opposing party, and counsel, and the courtroom display system will be configured so that it is not visible to the gallery;

3. The evidence will be displayed only for the period reasonably necessary to establish the relevant fact or element;[4] and

4. Under no circumstances will such images or videos be displayed to the courtroom gallery, including during opening statements or summations.[5]

These procedures, which are commonly utilized in CSAM trials in this District, appropriately balance the government's obligation to present its case, the defendant's trial rights, the victims' substantial privacy interests, and the desirability of avoiding unnecessary exposure of the jury and the public to sexually explicit images of children. The government respectfully requests that the Court adopt the government's proposal regarding the admission and publication of sexually explicit images.

## III. <u>The Court Should Admit Evidence Concerning the Defendant's Sexual Exploitation of Minors Other Than the Victims Underlying the Charged Counts</u>

The government anticipates offering evidence that Walden engaged in sexual exploitation of minors beyond the four victims underlying the charged production counts and the two victims whose CSAM underlies the possession count. At trial, the government intends to introduce the following testimony and/or evidence regarding other victims:

1. The government intends to present testimony from the case agent to establish that law enforcement identified Walden in September 2023 as a purchaser of CSAM from

---

[4] Where appropriate, the government may publish a shortened excerpt of a video to the jury while offering the full video into evidence under seal.

[5] The government has made these images and videos available to defense counsel for in-person review at the Newark office of HSI on several occasions, most recently on August 10, 2026. In the event that defense counsel would like to review these materials further, the government is prepared to do so at a mutually convenient time.

the Ryan Hine CSAM production and distribution ring. The government does not anticipate introducing evidence of Walden's purchases (such as electronic payment records) or the CSAM itself into evidence as it relates to this background testimony.

2. The government intends to present agent testimony and admit a limited number of exhibits to show that the defendant enticed other minor females to produce CSAM using his social media accounts. In particular, the government will seek to elicit testimony that law enforcement identified as many as 13 females whom the defendant enticed to produce or send CSAM to him. The government will also seek to introduce Snapchat chats between the defendant and at least one of these victims ([redacted]), in which the victim discusses being in school and the defendant subsequently pays the victim to produce CSAM. In the same chat, the defendant asks the victim to recruit her friends and her brother to transmit pornographic materials to Walden. The government does not anticipate admitting the CSAM as to these victims.

3. The government intends to present testimony from the case agent to establish that the analysis of the seized contraband phone shows that Walden continued to entice minor female victims from MDC. The government will also seek to introduce Snapchat chats between the defendant and two minor females in which the defendant seeks to groom the victims. In one, the defendant, having received images from the minor female, describes being "obsessed" with her. In the other, he asks to see a picture of the minor female and identifies himself as a "a random old creep" who looks like "40 year old stuck in prison." The government does not anticipate admitting photographs or videos of these victims.

As described below, qualifying evidence of Walden's sexual exploitation or attempted sexual exploitation of other minors is admissible under Rule 414 as evidence of other child molestation and, independently, under Rule 404(b) to establish, among other things,

Walden's intent, motive, knowledge, absence of mistake, identity, and common plan or pattern.

A. Applicable Law

Federal Rule of Evidence 414 ("Similar Crimes in Child Molestation Cases") provides that "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation." Fed. R. Evid. 414(a). The evidence "may be considered on any matter to which it is relevant," including a defendant's propensity to sexually abuse children. Id.; see also United States v. Stroming, 838 F. App'x 624, 625-26 (2d Cir. 2021) (summary order). For purposes of Rule 414, "child molestation" expressly includes a crime involving "any conduct prohibited by 18 U.S.C. chapter 110." Fed. R. Evid. 414(d)(2)(B). Chapter 110 encompasses the federal offenses concerning production, receipt, possession, and access with intent to view child pornography charged in this case.[6]

Evidence offered under Rule 414 remains subject to Rule 403, but the inquiry under Rule 403 must account for Congress's judgment favoring admission of qualifying child-

[6] Rule 414 defines "child molestation" and a "child" in separate subsections. It defines a "child" as a person under the age of 14, but places no specific age requirement in defining "child molestation" as including a crime involving conduct prohibited by 18 U.S.C. chapter 110 (which includes Title 18's child pornography statutes). The Second Circuit has not ruled on whether that definition of a "child" applies to cases, such as this one, involving Title 18, chapter 110. See United States v. Archambault, 740 F. App'x 195, 200 (2d Cir. 2018). It has, however, noted that other circuits to consider the issue have squarely rejected the argument that Rule 414 does not apply to cases involving violations of 18 U.S.C. chapter 110, and victims between the ages of 14 and 17. Id. at 201. The decisions in these other circuits comport with the most natural reading of the rule. As noted, the rule defines "child molestation" separately from its definition of a "child." See Fed. R. Evid. 414(d)(1), (d)(2). The definition of "child molestation" includes several subsections explicitly requiring the victim of the conduct to be a "child" as defined by the rule. See id. 414(d)(2)(A), (C)-(E). However, the relevant subsection here, 414(d)(2)(B), does not include such a limitation, and instead relates to "any conduct prohibited by 18 U.S.C. chapter 110." (emphasis added). See United States v. Foley, 740 F.3d 1079, 1088-89, n.3 (7th Cir. 2014) ("Although Rule 414(d)(1) defines a 'child' as a person below the age of 14, it defines 'child molestation' to include 'any conduct prohibited by 18 U.S.C. chapter 110' without regard to whether the chapter 110 offense was committed with a person below the age of 14, a 'child' as defined by the Rule."); United States v. Sturm, 673 F.3d 1274, 1284 (10th Cir. 2012) (finding the

molestation evidence. See United States v. Larson, 112 F.3d 600, 604 (2d Cir. 1997). Thus, the fact that evidence qualifying under Rule 414 is prejudicial does not make it unfairly prejudicial. Id.; see also United States v. Sebolt, 460 F.3d 910, 917 (7th Cir. 2006).

The Second Circuit has recognized the broad scope of Rule 414 and repeatedly affirmed the admission of "other child molestation" evidence to show a defendant's propensity for sexually abusing minors. See, e.g., United States v. Vickers, 708 F. App'x 732, 736 (2d Cir. 2017) (summary order) (testimony concerning the defendant's sexual abuse of uncharged victims "plainly admissible under Rules 413 and 414 because it was probative of [the defendant's] propensity for sexually abusing adolescent boys who were entrusted to his care"); United States v. Davis, 624 F.3d 508, 512 (2d Cir. 2010) (evidence of 19-year-old conviction for sodomy by forcible compulsion properly admitted in prosecution for sexual exploitation of a minor to prove defendant's propensity); see also Stroming, 838 F. App'x at 625-26.

Even if not admissible under Rule 414, evidence of uncharged crimes or "other acts" of child sexual abuse may be admitted pursuant to Rule 404(b) for the non-propensity purposes of proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Fed. R. Evid. 404(b)(2); see United States v. Saint Clair, No. 22-2100, 2024 WL 413422, at *5 (2d Cir. Feb. 5, 2024). To be admissible under Rule 404(b), evidence of prior bad acts must be "(1) 'introduced for a proper purpose,' (2) 'relevant to the charged offense,' (3) not substantially more prejudicial than probative, and (4) 'admitted with a limiting instruction

---

assertion that Rule 414 applies only to offenses involving victims under the age of 14 an argument "based on a gross misunderstanding of Rule 414(d)(2)"; noting that the Rule "defines 'offense of child molestation'—independent of the defined term 'child'"; and concluding that the relevant age of the victim "is determined by reference to chapter 110 of title 18, which defines 'minor' as any person under the age of eighteen").

if requested.'" United States v. Bright, No. 20-3792, 2022 WL 53621, at *2 (2d Cir. Jan. 6, 2022) (quoting United States v. Rutkoske, 506 F.3d 170, 177 (2d Cir. 2007)); see also United States v. Downing, 297 F.3d 52, 58 (2d Cir. 2002) (citing Huddleston v. United States, 485 U.S. 681, 691-92 (1988)).

The Second Circuit has emphasized that Rule 404(b) is a rule of broad reach and liberal application and applies an "inclusionary or positive approach" to admitting "other acts" evidence under it. See United States v. Garcia, 291 F.3d 127, 136 (2d Cir. 2002) (citing United States v. Pitre, 960 F.2d 1112, 1118 (2d Cir. 1992)); see also United States v. Levy, 731 F.2d 997, 1002 (2d Cir. 1984) ("We have adopted the inclusionary or positive approach to [404(b)]; as long as the evidence is not offered to prove propensity, it is admissible."). So long as the evidence is relevant for a permissible purpose other than propensity, the timing of the proffered acts—whether before or after the charged conduct—does not affect their admissibility. See United States v. Langford, 990 F.2d 65, 70 (2d Cir. 1993) ("It is within the court's discretion to admit evidence of acts committed prior to the time charged in the indictment to prove the existence of the alleged conspiracy as well as to show its background and history."); United States v. Germosen, 139 F.3d 120, 128 (2d Cir. 1998) ("'Subsequent act' evidence may be admitted under Rule 404(b)") (citing United States v. Ramirez, 894 F.2d 565, 569 (2d Cir. 1990)).

B. Discussion

The "other victims" evidence set forth above satisfies Rule 414 to the extent it demonstrates that Walden engaged in additional conduct prohibited by Chapter 110—such as using, persuading, inducing, or enticing other minors to produce CSAM or knowingly receiving or obtaining CSAM produced through those interactions—shortly before and shortly after the conduct charged in the Superseding Indictment. The charged offenses themselves are Chapter 110

offenses and therefore fall within Rule 414's definition of child-molestation offenses. See Fed. R. Evid. 414(d)(2)(B).

The first category of "other victims" evidence, testimony from the case agent that Walden was identified as a purchaser of CSAM from the Ryan Hine CSAM production and distribution ring, is unremarkable.[7] Such direct evidence is frequently introduced as background material and to provide a reasonable narrative for the fact finder. United States v. Daly, 842 F.2d 1380, 1388 (2d Cir. 1988) ("Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed."). Here, the evidence is necessary to explain the origin of the investigation and to explain the significance of the defendant's statements to law enforcements in the moments prior to the seizure of his iPhone at John F. Kennedy International Airport in April 2024, which evidence his knowledge of the online monikers used in Ryan Hine's CSAM production and distribution scheme.

With respect to the second category of proffered "other victims" evidence, testimony and exhibits showing that Walden employed materially similar methods with additional minor victims is highly probative under Rule 414 of his state of mind, his sexual interest in minors, and his consistent method and means as it relates to the charged offenses. The charged conduct reflects Walden's recurring use of social media and electronic messaging applications to communicate with minor females and entice them to produce CSAM using the incentive of substantial remuneration delivered via electronic payment platforms. Once he established a relationship of trust with a given minor female, the defendant asked to be called "daddy" and

[7] As noted, the government does not anticipate introducing evidence of Walden's purchases (such as electronic payment records) or the CSAM that he purchased from the Ryan Hine scheme.

provided direction for specific sexually explicit content to be produced. Moreover, Walden typically asked the minor to recruit her schoolmates, friends, siblings, or cousins, again incentivized by the prospect of earning money.

That pattern is evident in the pairs of minor victims underlying the four production counts of the Superseding Indictment. For example, Walden principally communicated with Jane Doe 1 and Jane Doe 2 through Snapchat (including in a group chat with both of them) and paid them via Cash App, after using one to recruit the other. Similarly, Walden principally communicated with Jane Doe 3 and Jane Doe 4 through Telegram (including in a group chat with both of them) and paid them via PayPal, after using one to recruit the other. The communications with these victims further reflect Walden's efforts to recruit still other minors to participate in the production of CSAM for Walden.

Testimony from the case agent that investigators identified as many as seven (7) additional minor females whom the defendant enticed to produce CSAM using his social media and electronic payment accounts reflects his knowing conduct, his enduring interest, and propensity, all in a manner permitted under Rule 414. The proffered Snapchat chats between the defendant and minor female victim [redacted] is illustrative. In this chat, the minor discusses being homeschooled, which is probative of the defendant's knowledge of the defendant's minor age. The defendant subsequently pays the victim to produce CSAM. In the same chat, the defendant asks the victim to recruit her friends and her brother to transmit pornographic materials to Walden, which is highly probative of the defendant's manner and means.

Finally, the third category of proffered "other victims" evidence, limited testimony concerning the discovery of Snapchat communications with minor females on the contraband phone seized from the defendant's cell at MDC, represents direct evidence of knowing and

intentional use of social media to groom minors through sexually charged chats. Snapchat chats between the defendant and two minor females evidence the defendant's enduring method and means of adding minor females through public facing social media profiles on Snapchat, followed by private chats in which Walden directed the conversation towards the production of CSAM.

The above categories of "other victims" evidence would likewise be independently probative under Rule 404(b) of knowledge, intent, motive, absence of mistake, and a common plan or method of operation. Such evidence would tend to rebut any suggestion that Walden innocently encountered the charged material, misunderstood the age of the females with whom he was communicating, or inadvertently possessed or received sexually explicit depictions of minors.

Nor would such evidence be unfairly prejudicial under Rule 403. The charged offenses already involve Walden's alleged payment of minors to produce sexually explicit material and his receipt, possession, and access of substantial quantities of CSAM. Evidence of materially similar conduct with other minors, which the government seeks to admit without showing any additional CSAM to the jury, would not be more sensational or inflammatory than the offenses the jury will necessarily consider in deciding the charged counts. Any residual concern can be addressed through a limiting instruction explaining the permissible uses of the evidence.

Accordingly, the Court should admit the "other minors" evidence proffered above pursuant to Rule 414 and, independently, Rule 404(b).

## IV. The Court Should Preclude Evidence and Argument Concerning the Victims' Sexual Behavior with Anyone Other Than the Defendant

The Court should preclude the defendant from introducing evidence that any minor victim engaged in sexual behavior with anyone other than Walden, had any purported sexual predisposition, communicated sexually with others, or produced or shared sexually explicit material for other purchasers. The defendant likewise should be precluded from referring to such

inadmissible matters during opening statements, cross-examination, summation, or otherwise before the jury. Such evidence is inadmissible under Rules 412 and 403.

A. Applicable Law

Rule 412 provides that, in a criminal proceeding involving sexual misconduct,[8] "evidence offered to prove that a victim engaged in other sexual behavior" or "to prove a victim's sexual predisposition" is generally not admissible. Fed. R. Evid. 412(a), (b). Rule 412 "aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details" and to "encourage[] victims of sexual misconduct to institute and to participate in legal proceedings against alleged offenders." Fed. R. Evid. 412 advisory committee note. As Judge Posner has explained, the policy rationale behind excluding evidence of a victim's sexual history is to encourage victims of sex offenses to come forward: "[i]f admissible, such evidence would deter many victims of sexual abuse from testifying." United States v. Cephus, 684 F.3d 703, 708 (7th Cir. 2012) (Posner, J.) (finding that evidence of victim's prior prostitution was irrelevant to charge of sex trafficking).

Rule 412 is subject to only three narrow exceptions in criminal cases, which permit the admission of sexual history evidence only (i) to prove a person other than the defendant was the source of physical evidence (such as semen or an injury); (ii) to prove consent; or (iii) to avoid

---

[8] The provisions of Rule 412 apply in a "civil or criminal proceeding involving alleged sexual misconduct," Fed. R. Evid. 412(a), including criminal prosecutions for sexual exploitation of a child under 18 U.S.C. § 2251(a). See, e.g., Terranova, 750 F. Supp. 3d at 30; see also United States v. Alvarez, 601 F. App'x 16, at *5 (2d Cir. 2015) (summary order) (applying Rule 412 to exclude evidence of other sexual behavior by an alleged victim of violations of Title 18, United States Code, Section 2422); United States v. Elbert, 561 F.3d 771, 776 (8th Cir. 2009) (applying Rule 412 to a violation of Title 18, United States Code, Section 1591 involving minor victims).

a violation of the defendant's constitutional rights. Fed. R. Evid. 412(b)(1); United States v. Rivera, 799 F.3d 180, 184-85 (2d Cir. 2015). Importantly, if a defendant intends to introduce evidence of a victim's other sexual behavior or alleged sexual predisposition under one of these exceptions, the rule requires the filing of a sealed motion no less than 14 days before trial that "specifically describes the evidence and states the purpose for which it is to be offered," with notice to the victim or the victim's guardian or representative. Fed. R. Evid. 412(c)(1). Failure to do so without good cause should result in automatic exclusion. United States v. Ramone, 218 F.3d 1229, 1235-36 (10th Cir. 2000).

Even if evidence is admissible under one of Rule 412's narrow exceptions, it "may still be inadmissible under Rule 403." Daskal, 2023 WL 9424080, at *6 n.9. Accordingly, even where an exception applies, the Court must still assess whether evidence of a victim's sexual acts with others nevertheless must be excluded because its probative value is outweighed by the risk of unfair prejudice, confusion, or harm to the victim. United States v. Ray, No. 20-CR-110 (LJL), 2022 WL 729861, at *1 (S.D.N.Y. Mar. 10, 2022) (finding evidence admissible under Rule 412 but reserving decision as to whether such evidence was nevertheless inadmissible under Rule 403 and the Crime Victims' Rights Act).

B. Discussion

Evidence concerning the victims' sexual conduct or communications with anyone other than Walden should be precluded as irrelevant to whether Walden committed the charged offenses. That prohibition should extend, in particular, to any evidence or argument that a minor victim previously created sexually explicit images, sold or provided sexually explicit material to other persons, engaged in sexual communications with others, or otherwise had a sexual history.

None of Rule 412's narrow exceptions provides a basis for such evidence to be admitted in this case. First, this case concerns online sexual exploitation and electronic CSAM,

not disputed semen, injury, or comparable physical evidence whose source might be explained by other sexual conduct.

Second, evidence concerning the victims' sexual conduct with others cannot establish a relevant defense to the conduct charged in this case because the victims were minors when the relevant CSAM was produced. As courts have recognized, minors cannot consent to their own sexual abuse or exploitation. Terranova, 750 F. Supp. 3d at 31; see also United States v. Corley, 679 F. App'x 1, 4 (2d Cir. 2017) (summary order); United States v. Sibley, 681 F. App'x 457, 461 (6th Cir. 2017) (minor victim's consent irrelevant to whether defendant used her for purposes of § 2251(a)). Accordingly, whether a minor had previously produced sexual images or accepted money for such material from someone other than the defendant does not make Walden's conduct any more or less lawful, and permitting such evidence is likely to confuse the legal elements of the offense.

Third, excluding such evidence would not violate Walden's constitutional right to present a defense. A defendant's right to present a defense does not include a right to place otherwise irrelevant or inadmissible evidence before the jury. See Taylor v. Illinois, 484 U.S. 400, 410 (1988); United States v. Bifield, 702 F.2d 342, 350 (2d Cir. 1983). Nor does Rule 412 create a general exception permitting evidence of a victim's sexual history merely to attack credibility. See Terranova, 750 F. Supp. 3d at 30.

Finally, even apart from Rule 412, such evidence should be excluded under Rule 403. Litigating the victims' sexual histories would create substantial risks of unfair prejudice, victim blaming, and confusion of the issues. Those risks dramatically outweigh any conceivable probative value. The relevant question is what Walden knowingly did, not whether any victim engaged in sexual behavior with anyone else.

The Court should therefore preclude evidence or argument concerning the victims' other sexual behavior or purported sexual predispositions unless and until Walden satisfies Rule 412(c) and the Court determines outside the presence of the jury that particular evidence is admissible.

## V. The Court Should Preclude Evidence and Argument about Punishment, Mitigation Factors, Law Enforcement Tactics, and Other Irrelevant Topics

Finally, the government moves to preclude evidence and argument on several topics, all of which would be improper or so irrelevant that any probative value would be vastly outweighed by the attendant risks of confusion, misleading, delay, and waste of time. These topics are not an exhaustive list of matters to which the government would object at trial, but rather represent the most likely topics and themes in this case that should be precluded as improper.

### A. Punishment and Collateral Consequences

First, the defendant—who faces a mandatory minimum sentence of 15 years if convicted of Counts One through Four (sexual exploitation of children) and 5 years if convicted of Count Five (receipt of CSAM)—should be precluded from offering any evidence or argument concerning the punishment or consequences that he faces if convicted of the charged offenses.

Evidence or argument concerning punishment "invites [jurors] to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." Shannon v. United States, 512 U.S. 573, 579 (1994) (quoting Rogers v. United States, 422 U.S. 35, 40 (1975)). This is especially so where, as here, the punishment includes in a significant prison sentence, which may cause the jury to base their verdict on improper considerations (such as sympathy) and/or invite jury nullification. See United States v. Lewis, 110 F.3d 417, 422 (7th Cir. 1997) (holding that district court correctly refused to permit defendant to argue about the severity of his possible punishment); United States v. DiMarzo, 80

F.3d 656, 660 (1st Cir. 1996) (district court "soundly excluded" evidence of a potentially harsh sentence because such evidence "would have necessitated an unwarranted departure from the fundamental division of responsibilities between judge and jury"); see also United States v. Thomas, 116 F.3d 606, 614 (2d Cir. 1997) ("Nullification is, by definition, a violation of a juror's oath to apply the law as instructed by the court . . . . We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent.").

Those principles apply with particular force here, where the charged offenses include serious federal child exploitation crimes carrying substantial potential terms of imprisonment. The severity of a possible sentence has no bearing on whether the government has proven any element beyond a reasonable doubt. Reference to imprisonment, mandatory minimum penalties, sentencing exposure, registration requirements, forfeiture, reputational consequences, employment consequences, or other collateral effects would serve only to distract the jury from its proper role and invite a verdict based on sympathy rather than the evidence. Accordingly, the Court should preclude any reference before the jury to the defendant's possible sentence or other collateral consequences of conviction.

B. Mitigating Factors

Second, the defendant should be precluded from offering evidence or argument—including in jury addresses—intended to elicit sympathy, such as evidence concerning his medical history, course of treatment, or other personal history to include his family, his religious observance, or his charitable acts. See United States v. Battaglia, 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008) (granting a motion in limine to preclude evidence of the defendant's personal status); United States v. St. Rose, No. 11-CR-349 (SJ), 2012 WL 1107659, at *1

(E.D.N.Y. Apr. 2, 2012) (precluding evidence concerning sympathetic personal factors of the defendant).

[redacted]

C. Law Enforcement Tactics

Third, the defendant should be precluded from arguing before the jury about the propriety of law enforcement conduct in this case, including the legality of the border search and

the seizure and forensic examination of his iPhone, matters which were the subject of the suppression litigation.

Under Federal Rule of Evidence 104(a), the Court decides "any preliminary question about whether . . . evidence is admissible." Questions concerning whether a search violated the Fourth Amendment and whether resulting evidence must be suppressed are questions for the Court—not the jury. See Fed. R. Evid. 104(a). Here, Walden litigated a motion to suppress, and the Court denied that motion following an evidentiary hearing. See ECF No. 88. Having obtained a judicial ruling on admissibility, the defendant should not be permitted to relitigate before the jury whether law enforcement violated the Fourth Amendment or otherwise acted unlawfully in obtaining the evidence the Court has ruled admissible.

Such argument would be irrelevant to the factual questions assigned to the jury and would risk confusing the jury about its role. See Fed. R. Evid. 401, 403; United States v. Lights, 2016 WL 7098633, at *1-2 (S.D.N.Y. Dec. 5, 2016) (precluding reference to alleged illegality of stop and searches after issue had been litigated and decided); United States v. Reese, 933 F. Supp. 2d 579, 583 (S.D.N.Y. 2013) (precluding argument directed at jury nullification and overall propriety of investigation); United States v. Demosthene, 334 F. Supp. 2d 378, 380 (S.D.N.Y. 2004) (defendant "may not argue before the jury issues relating to the overall propriety of the government's investigation"), aff'd, 173 F. App'x 899 (2d Cir. 2006).

The defendant remains free to cross-examine witnesses concerning investigative facts that genuinely bear on the reliability, accuracy, completeness, or credibility of the government's proof. What the defendant may not do is invite the jury to disregard admissible evidence because it believes law enforcement should not have obtained that evidence in the first place.

## SEALING REQUEST

The government respectfully requests leave to file this memorandum of law under seal, with a redacted version to be filed on the public docket. Portions of this brief contain sensitive information regarding victims in this case that is subject to the Court's January 24, 2025 protective order, see ECF No. 40, while other portions discuss [redacted]. Sealing is therefore necessary to protect these individuals' privacy. As the facts set forth above provide ample support for the "specific, on-the-record findings" required to justify sealing, see Lugosch v. Pyramid Co., 435 F.3d 110, 120 (2d Cir. 2006), the government respectfully requests that the Court permit this memorandum to be filed under seal, with a redacted version to be filed on the public docket.

## CONCLUSION

For the foregoing reasons, the Court should grant the government's motions in limine.

Dated: Central Islip, New York
October 5, 2026

Respectfully submitted,

JOSEPH NOCELLA, JR.
UNITED STATES ATTORNEY

By: /s/
Leonid Sandlar
Trial Attorney

Michael D. Manzo
Assistant U.S. Attorney